**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**207 NORTHWEST SECOND STREET**
**OCALA FLORIDA**

**CASE NO.**

NOV 12 2024 PM3:18
FILED - USDC - FLMD - OCH

5:24-CV-613 CEM PRL

FREDERICK J. KEITEL, III

  Plaintiff,

vs.

KATIE HELLER, individually
DONALD L. HARRIS individually
SHELIA KOLAR, individually
AVANLEE CHRISTINE OKRAGLY
individually and on behalf of AVANLEE CARE,
Incorporated, a professional corporation
JESSICA FEHR, individually PAUL CHOAN,
individually and behalf on behalf of FRED LAW FIRM,
AND ASSOCIATES, PLLC, a professional limited
liability company and FRONTIER LAW FIRM PLLC,
a professional limited liability company; FRED LAW FIRM
AND ASSOCIATES, PLLC, a professional limited
liability company, Montana professional limited
lability company, FRONTIER LAW FIRM, PLLC,
a professional limited liability company, a Montana
professional limited lability company, KATIE HELLER,
Individually and on behalf of FRED LAW FIRM, PLLC,
professional limited liability company and a
FRONTIER LAW FIRM PLLC, a professional limited
liability company; STEVEN STOCKDALE, individually
and on behalf of TOLLIVER LAW FIRM, PC,
a Montana professional corporate; AND
SUSAN CHAN LASK

  Defendants.

_____

1

## VENUE AND JURISDICTION

1.  This is a Federal Diversity action in excess of $250,000,000.00  action for violation of the federal RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d);  against all defendants named herein, including multiple individuals, lawyers, law firms, their clients, and judges who acted in their non-judicial capacity and judicial capacity who acted at all times as willing participants in the RICO actions to control City of Billings and Yellowstone Courts, and violation of the Plaintiff's Due Process Rights under U.S Constitutional, violation of plaintiff's Civil Rights under The Americans with Disabilities Act (ADA),

2..   Venue and jurisdiction is proper in this Court, the U.S. District Court, Ocala, Florida based upon the diversity of plaintiff and defendants, their actions in multiple states including criminal actions under Federal RICO statutes including 18 U.S. C.  § 1961, §1962, fraud, mail and wire fraud, under 18 U.S. C  § 1341 &  §1343, from New York County, New York for threats using interstate communications, and retaliations against a material witness, lying to a Federal Official, Special Agent FBI 18 U.S.C. §1001, 18 U.S.C. §  875, 18 U.S.C. § 241 and violation of plaintiff's due process

constitutional rights, violation of plaintiffs civil rights under American

Disabilities Act ("ADA") that took place in Sumter County, Marion Country,

Palm Beach County Florida, New York County, New York and Yellowstone

County Montana, including

> Katie Heller: criminal actions under State and Federal RICO statutes including 18 U.S. C. § 1961, §1962, fraud, mail and wire fraud, under 18 U.S. C. § 1341 & §1343, threats using interstate communications, April 3, 2023 Suborning perjury and Conspiracy to commit Perjury § 45-4-102; Conspiracy to file False Reports to Peace Officers § 45-7-205; September 7, 2023 Making False Statements to a Federal Agent, Special Agent of the FBI 18 U.S.C § 1001, Conspiracy to Commit Offense or to Defraud United States §18 U.S.C. 371.

> Paul Chaon: criminal actions under State and Federal RICO statutes including 18 U.S. C. § 1961, §1962, fraud, mail and wire fraud, under 18 U.S. C. § 1341 & §1343, threats using interstate communications, September 7, 2023, Making False Statements to a Federal Agent, Special Agent of the FBI,18 U.S.C § 1001 and Conspiracy to Commit Offense or to Defraud United States §18 U.S.C. 371.

> Avanlee Okragly: criminal actions under State and Federal RICO statutes including 18 U.S. C. § 1961, §1962, fraud, mail and wire fraud, under 18 U.S. C. § 1341 & §1343, threats using interstate communications,
> for Perjury § 45-7-201 False Swearing § 45-7-202, Conspiracy to commit Perjury § 45-4-102; False Reports to Peace Officers § 45-7-205; Unsworn falsification to Authorities §45-7-203;  Making False Statements to a Federal Agent,  Special Agent of the FBI 18 U.S.C § 1001, Conspiracy to Commit Offense or to Defraud United States §18 U.S.C. 371; Tamper with and destroying physical evidence §45-7-207; Obstruction §45-7-303.

3.  The Americans with Disabilities Act (ADA), which was amended by the

ADA Amendments Act of 2008 ("Amendments Act" or "ADAAA"), is a

federal law that prohibits discrimination against qualified individuals with disabilities. Individuals with disabilities include those who have impairments that substantially limit a major life activity, have a record (or history) of a substantially limiting impairment, or are regarded as having a disability.[1]

4.  Venue and jurisdiction are proper in this Court, the U.S. District Court, Ocala, Florida based upon the diversity of plaintiff and defendants.

4-1.  Plaintiff Frederick J. Keitel, III, is a Florida resident of Florida

5.  Defendants Susan Lask is a resident of New York County, New York doing business in New York, and Florida.

6.  Defendant Avanlee Okragly is a resident of New York County, New York, doing business in New York, Florida and other states, including Montana.

7.  Defendant Avanlee Care, Inc is a corporation doing business in Florida, New York, California and 30 other states, with offices in New York, Montana and other states.

8. Defendant Avanlee Okragly used her New York office and corporate telephone and computer to threatened plaintiff on September 2, 2023 and other dates. Criminal conduct.

9. Defendants used interstate communications from New York, including mail and wire fraud to threaten plaintiff.

4

10. Defendants Katie Heller, Paul Chaon, Donald Harris and Shelia Kolar are residents of Montana.

11. All conditions precedent to this action have occurred, have been performed, or have been waived.

12. This action is brought not as a collusive action to confer jurisdiction, that the court would otherwise lack.

## PLAINTIFF

13. Plaintiff Frederick J. Keitel, III, ("Keitel"), is an individual residing in Sumter County, Florida and is otherwise sui juris.

## DEFENDANTS

14. AVANLEE CHRISTINE OKRAGLY ("Okragly"), is an individual, residing and doing business in New York County, New York, has offices and conducts financial transactions in New York, Florida and also resides in Yellowstone County, Montana and is otherwise sui juris.

15. AVANLEE CARE ("AvanleeCare"), is a corporation doing business in Florida, New York and Montana, and has offices and conducts financial transactions in New York, Florida and Montana and is otherwise sui juris.

16. FRED LAW FIRM, PLLC (dba) FRONTIER LAW FIRM PLLC, ("FrontierLaw"), is a Montana Professional Limited liability partnership,

licensed to practice law in the State of Montana located and doing business

Yellowstone and Gallatin County, Montana and is otherwise sui juris.

17. DANELLE MILLIGAN is an individually and as Clerk of Court, Billings in the State of Montana residing in Yellowstone County, Montana is otherwise sui juris.

18. JESSICA FEHR ("Fehr"), is an individual, attorney at law, licensed to practice law in the State of Montana, located in Yellowstone County Montana, is being sued in her "non-judicial capacity", and is also as Yellowstone District Court Judge residing in Yellowstone County, Montana and is otherwise sui juris

19. JOSEPH RAFFIANI ("RAFFIANI"), is an individual, attorney at law, licensed to practice law in the State of Montana, residing in Yellowstone County, Montana, and is otherwise sui juris.

20. KATIE HELLER ("Heller") is an individual, who at all times was an attorney at law, licensed to practice law in the State of Montana residing in Yellowstone County, Montana is otherwise sui juris.

21. DONALD L. HARRIS (Harris"), is an individual, attorney at law, licensed to practice law in the State of Montana, is being sued in his non-judicial capacity, is also a Yellowstone State District Court Judge, residing in Yellowstone County, Montana. and is otherwise sui juris.

22.  PAUL CHOAN ("Chaon") is an individual, attorney at law, licensed to practice law in the State of Montana, residing in Yellowstone County, Montana, and is otherwise sui juris.

23.  SHELIA KOLAR ("Kolar") is an individual, attorney at law, licensed to practice law in the State of Montana, located in Yellowstone County Montana, is being sued in her "non-judicial capacity", and is also a Billings Municipal Court Judge residing in Yellowstone County, Montana and is otherwise sui juris.

24. STEVEN STOCKDALE ("Stockdale") is an individual, attorney at law, licensed to practice law in the State of Montana, residing in Yellowstone County, Montana, and is otherwise sui juris.

25. SUSAN CHAN LASK ("Lask"), is an individual, attorney at law, licensed to practice law in the State of New York, residing in New York County, New York, and is otherwise sui juris.

### UNNAMED DEFENDANTS PENDING STATUTORY NOTIFICATION

26.  Plaintiff will amend this action to include the following defendants pursuant to Montana R. Civ. P., Rule 7-6-4038, filing of claims against local government entity -- disposition by department as prerequisite to my

lawsuit against the City of Billing, Montana and Yellowstone County, Montana and certain employees.

27. DANELLE MILLIGAN is an individually and as Clerk of Court, Billings in the State of Montana residing in Yellowstone County, Montana is otherwise sui juris.

28. CITY OF BILLINGS MONTANA,

29. CITY OF BILLINGS CLERK OF COURT DANELLE MILLIGAN, individually and as an employee of City of Billings, Montana

30. YELLOWSTONE COUNTY MONTANA

31. SCOTT TWITO, YELLOWSTONE COUNTY ATTORNEY

32. JESSICA MCKEE, CITY OF BILLINGS, MONTANA DEPUTY ATTORNEY

33. DONALD HARRIS ("Harris") is an individual, attorney at law, licensed to practice law in the State of Montana, located in Yellowstone County Montana, is being sued in her "non-judicial capacity", and is also aa Yellowstone District Court Judge residing in Yellowstone County, Montana and is otherwise sui juris.

35. KIM ANDERSON ("Anderson"), is an individual, judicial assistant to Donald Harris located in Yellowstone County Montana, and is otherwise sui juris

36. SHELIA KOLAR ("Kolar"), is an individual, attorney at law, licensed to practice law in the State of Montana, located in Yellowstone County Montana, is being sued in her "non-judicial capacity", and is also a Billings Municipal Court Judge residing in Yellowstone County, Montana and is otherwise sui juris

37. JESSICA FEHR ("Fehr"), is an individual, attorney at law, licensed to practice law in the State of Montana, located in Yellowstone County Montana, is being sued in her "non-judicial capacity", and is also a Yellowstone District Court Judge residing in Yellowstone County, Montana and is otherwise sui juris

## FACTS

38. On March 29, 2023 Defendants Okragly, Heller and others committed perjury (MCA 45-7-201)obstruction of justice MCA 45-7-303) , filed false and fraudulent statements to law enforcement (MCA45 7-202) and fraudulent petition for order of protection against Sebastian Keitel ("SK") to gain an advantage in a custody case and tampered with and damaged physical evidence in violation MCA 45-7-207, that would have exonerated Sebastian Keitel from false allegations).

39. On April 10, 2023 I notified Donald Harris that he had an obligation to report the criminal conduct by Heller and Okragly under Montana Code

Annotated (*See* exhibit "1', Letter to Donald Harris), unaware Heller was

Judge Haris protégées, handpicked by multiple power judges (defendants

Harris, Kolar, Fehr) and Yellowstone County Attorney, defendant Scott

Twito  to be Billings Municipal Court Judge ("BMCJ") (*See* exhibit "1', Letter

to Donald Harris).

40.  Instead of honoring his obligations under Montana Judicial Code of

Conduct, Judge Harris ("Harris"), retaliated against plaint and his son SK,

acted in his non-judicial capacity covered-up criminal conduct by Katie

Heller ("Heller") and Avanlee Okragly ("Okragly"), including 45-7-207,

Tampering with or fabricating physical evidence.

41.   Defendant Avanlee Okragly's own father, Bryan Okragly described his

daughter in a sworn affidavit as "dishonest", manipulative, who held her

minor son as a "hostage" and "pawn" to extort money, and when her father

refused Ms. Okragly would scream, yell and swear at him in public using

her minor 1 year son as a hostage to while screaming using the F-ck" word

to embarrass him (see Bryan Okragly's sworn affidavit exhibit" 3").

42.  Witnesses Lori Wurtz ("Wurtz"), SK, Ashley Zachem (Zachem") and

plaintiff also filed sworn affidavits that Okragly has mental health issues,

was a pathological liar, abusive who used minor 1 year old child as a

hostage to extort money (see sworn affidavits).

**43**. Plaintiff caught defendants in a massive criminal conspiracy to cover-up evidence because Katie Heller a protégés of powerful individuals, including Yellowstone District Court Judges, Billings Municipal Court Judge and Yellowstone County Attorney's Office all had a vested interest in controlling the Billings Municipal Court and Yellowstone legal system.

44.  Defendants overlooked Okragly's filing false and fraudulent allegations to police, false swearing MCA 45-7-202, perjury 45-7-210 on July 14, 2023. Okragly was unaware that the false allegations were all caught on video, even though she had her own doorbell ring video system (see July 14, 2024 videos and text message from Okragly).

45. Defendants named herein, in positions of power, conspired to cover up Ms. Heller's criminal conduct, including but not limited to lying to a Special Agent of the FBI in telephone call(s) and an email on September 7, 2023, knowing drafting and filing false and fraudulent sworn statements and petitions for Okragly as retaliation (see Heller, Chaon, Okragly September 7, 2023 email to FBI agent Cialella.

46.  Defendants Heller, Chaon, FrontierLaw lawyers, Kolar, Harris and others, including Okragly [who fled Montana to avoid service of process] designed a detailed scheme to retaliate and discredit plaintiff [as a material witness], who filed criminal complaints against Heller, Okragly and Harris.

47.  Defendants actions including Kolar and Harris were to have Okragly accuse and file false and fraudulent allegations, sworn statements and petitions against plaintiff and his son, Sebastian Keitel ('SK"), in multiple Courts that defendant controlled, falsely stating that plaintiff threatened the safety and lives of Okragly and her minor son (plaintiffs' grandson).

48.  At all times the allegations were false, a September 2, 2023 FaceTime video is proof that defendants filed the false and heinous allegation to discredit plaintiff as a material witness in federal and state criminal charges against defendants was running for Billings Municipal Court Judge.

49.  Defendants acted individually and as a group and enterprise, participated in an on-going criminal scheme over the last 20-months to cover up criminal conduct, which has intensified after plaintiff filed numerous legally recorded video before multiple judges, Harris and Fehr, and Yellowstone County Attorney and Billings City Attorneys. Who have engaged in and participated in suppressing all evidence to cover up defendants' criminal actions.

50.  Okragly's threats were meant as retaliation against plaintiff who filed a criminal complaint and allegations against Heller, that jeopardized Heller's election as Judge of Billings Municipal Court (see Complaint No 23-715547 Yellowstone District Attorney and Sheriff's office)

51.  Following through on the threats, Heller, Chaon and FrontierLaw knowingly drafted false and fraudulent allegations to discredit plaintiff as a material witness against Heller, had Okragly sign the sworn statements and petition and handed it to Shelia Kolar, as Judge of Billings Municipal Court to sign.

52.  Judge Kolar then violated plaintiff's constitutional right to due process and plaintiff's civil rights in violation of the American Disabilities Act when she as Judge of Billings Municipal Court refused to allow plaintiff a 2-week continuance or to appear via ZOOM.

53.  Judge Kolar refused to reschedule a hearing for two weeks, knowing that plaintiff was recovering from cancer surgery, respiratory infection, suffering from lung cancer and unable to travel 12-14 hours to Billings Montana from North Florida.

54.  Defendants participated in and associated with and/or engaged in an illegal enterprise and pattern of criminal racketeering activities to influence and control the election and judicial system in City of Billings, Yellowstone County, Montana through a series of criminal predicate acts, including but not limited to fraud, intimidation, fear, threats and other corrupt actions, State and Federal RICO statutes including 18 U.S. C.  § 1961, §1962, fraud, mail and wire fraud, under 18 U.S. C.  § 1341 & §1343, threats using

interstate communications, and retaliations against a material witness, lying to a Federal Official, Special Agent FBI 18 U.S.C. §1001, 18 U.S.C. § 875, 18 U.S.C. § 241.

55.  Defendants actions continues up to and including today in violation of multiple state and federal criminal codes under title 18 conspiring with each other and others to retaliate against plaintiff and punish plaintiff others close to plaintiff after plaintiff filed notice and complaints against Katie Heller [Avanlee Okragly, Donald Harris and others], Katie Heller, candidate for Billings Municipal Court Judge (see exhibits "1" letter to Donald Harris, exhibit "2" letter to Scott Twito Yellowstone County Attorney and "3" Bryan Okragly's sworn affidavit of his daughter, defendant Avanlee Okragly's dishonesty, manipulation, unstable actions and using minor child as a hostage, pawn to extort money).

56.  At all times defendants individually and as a group knew their actions were criminal, but continued to cover-up their actions and actions by fellow defendants using certain judges in Yellowstone District Court, Yellowstone Justice Court, Billings Municipal Court  and the Yellowstone County Attorney's Office in their non-judicial capacities, judicial capacity and official capacities for the sole purpose to advance Katie heller to Billings Municipal

Court Judge on November 7, 2023, while covering-up Ms. Heller's criminal conduct before during and after her election from April 2023 until present.

57.  Unknown to plaintiff, Judge Kolar was having secret and nefariously ex parte communication with defendants Okragly and Heller, who made wild and false allegations to discredit plaintiff prior to the November 7, 2023 election for Billings Municipal Court Judge.

58.  Ms. Heller and Shelia Kolar (in her non-judicial capacity August and September 2023, conspired with and had Okragly threatened plaintiff in a Yellowstone District Courthouse on September 25, 2023 to instill fear, anxiety and intimidation during his testimony before Judge Harris, Cause No DR 56-2022-627, WHILE that Judge Harris admonished plaintiff's testimony:

### September 2, 2023 FaceTime Video is Uncontroverted Evidence that Defendants Lied and Participated in a RICO Scheme

59.  Defendants actions are and have been to cover up evidence and criminal conduct detailed herein. Defendants conspired to and sent false and fraudulent allegations against plaintiff using interstate mail and wire fraud, and communications to threaten and intimidate plaintiff and his son, as witnesses.

Rick,   "You just called me on Sebastian's phone and you are now emailing me through Sebastian's email again. "I will not be responding to any communication. Stop contacting me."


"9/2/23". "Saturday September 2nd I was contacted by his son, Sebastian Keitel via FaceTime call. I answered the FaceTime call the camera was covered so I could not see anyone, and two men were yelling at me threatening my safety.  I believe Rick Keitel was with him.  Fredrick Keitel will not stop contacting me through his son, via his email and phone. (see attachment)."

60.  Defendants Harris and Fehr refuse to enforce legally served

subpoenas on Okragly, Heller and others because they know, and have

evidence that Okragly's sworn testimony is false:

9/2/23 ". . . two men were yelling at me  threatening my safety".
9/12/23 "I am terrified for my safety and the safety of my son . . I am a single mom`. I am very scared. I need protection and help right now"
"I am afraid for my life and the life of my son's life'.
October 2, 2023, transcript, p..9 & 11. L, Ms. Okragly:
A; ". . . And he started to shout at me. It was clearly not a call for AMOK-
A: "I heard another male voice". A: I was being I was avoiding service. That they were going to have me arrested".
A: "That I was avoiding service.  I was going- they were – he was going to have me arrested and brought back to Montana in Cuffs" [T.p.10, L. 4-8]
A: I was in New York
A: I am met with biweekly threats they're going to take my son from me.
Q: Okay, so you're talking about court filings?'
A.    The Court filings, yes". [p.15, L.17-23]

61.  On October 2, 2023, while Rick Keitel was preparing for multiple

cancer operations in Florida, Judge Harris held another hearing on OOP

against Sebastian Keitel and Ms. Okragly made no allegations against

plaintiff (see Transcript 10/2/23 T.p. 18. L.3-10)

> Q: And you don't make any allegations of verbal abuse?
> A: No, I did. On that call That FaceTime call.
> **A: He told me that I was avoiding service, that they were going to take AMOK, and that they were going to bring me back in handcuffs" (10/2/23 p. 18., L. 25).**
> Q: So, your issue is with Rick Keitel, Sebastian's father"
> A: "oh, no. The issue is with Sebastian and his father plays a role in this"? 10/2/23 T.p.24, L.10-12).
> Q: "Ms. Okragly, have you been put in reasonable apprehension of bodily harm?
> A: "Yes, we have. We already filed an Order of Protection in March of- [3/29/23]
> Q: "And you dismissed that action, correct?'.
>> A: "Yes"

62.  Yet, Ms. Okragly's (and Heller secretly, nefariously sent 30+ false *ex*

*parte* emails to Judge Kolar, Judge Kolar's clerk of court, relied on by

Judge Kolar), falsely accusing plaintiff who was revering from his 6th and 7th

cancer operation in Florida Ms. Milligan relied on by Judge Kolar.

> "This guy is nuts". "He's a very dangerous"
> There is court orders against him that Rick Keitel cannot be unattended with A.M.O.K."
> Rick is hiding in Bozeman, Rick will not come to the door and will hide but they can surely try".
> "Can they arrest him or have him removed".

"Just a forewarning, Rick is really nuts you should have law enforcement present Frederick has made threats against me my family and our Judge, Donald Harris. I would have them prepared. The last hearing law enforcement had to escort them out of the court room during a hearing".[Oct 30, 2023 2 9;16 AM
"Danelle Milligan" Clerk of OOP states:
"I have advised the judge . . . if she wants additional security".

63.  At all times, it was orchestrated and strategized by Defendants Katie Heller, Donald Harris, Shelia Kolar, Paul Chaon and others on behalf of Avanlee Okragly who signed false and fraudulent order of protections with over 20 false material statement of facts, (including by Susan Lask), that defendants knew were false to retaliate and discredit Keitel as a witness.

69.  Defendant Okragly then perjured herself September 25th, October 2nd and 31st. 2023.

70.  Defendants, and others including the Billings Montana City Attorney, Deputy Attorneys, Yellowstone County Attorney and Judges in Yellowstone District Court, Including the Chief Judge, Jessica Fehr have acted and conspired together to cover up undisputed, uncontroverted evidence of defendants knew of the scheme by Okragly Heller, Chaon, FrontierLaw lawyers, Kolar, Harris and others  knew that all of Okragly's allegation in her September 12, 2023 sworn statements and petitions for order of protection were false when made.

71.  Shelia Kolar participated in the fraud with Donald Harris in their non-judicial capacities, then later signed the orders of protection in their judicial capacities, as retaliation against plaintiff and his family for whistle blowing type allegations against Heller, Okragly, Harris and others named as defendants herein.

72.   On October 31, 2023, knowing that plaintiff was recovering from multiple surgeries for cancer, was unable to travel, accused of conspiring with Katie Heller, denied plaintiffs appearance via ZOOM, after receiving 30+ secret nefariously ex parte emails, telephone calls by Okragly and Heller [who nefariously represented Okragly days before the November 7, 2023 election for Billings Municipal Court Judge,

73.  Judge Kolar violated plaintiff's due process rights and rights under the American Disabilities Act refused to give plaintiff evidence and issued a 20-year restraining order based on Okragly's false and fraudulent t emails, petition and testimony, September 25, October 2nd and October 31, 2023.

74.  Then Judge Kolar, the City of Billings, its attorneys and Yellowstone District Court Clerk's Office and Judges conspired to and did interfere with plaintiff's appeal by refusing to turn over transcripts and video recording of September 25, 2023 and October 31, 2023 hearings for over 5 months to sabotage plaintiff's appeals.

75. As of November 12, 2024, Yellowstone District Court Judge Fehr, Chief Judge Yellowstone District Court has refused to rule on plaintiffs' motions, including motion and appeal to disqualify Shelia Kolar filed almost 12 months ago, Motion for Rule 35 Independent Examination of Okragly.

75. Upon information and belief Jessica Fehr in her non-judicial capacity conspired with other defendants including Donald Harris and Scott Twito and others o refuse to rule on motion for months so defendant Okragly, Raffiani and Heller could and did conspire to have Okragly file additional false orders of protection in fourth court before a fourth friend judge for an immediately hearing to punish and retaliate against plaintiff's family members.

77. As a co-conspirer and defendant in her non-judicial capacity, Jessica Fehr has slow walked motions as a Yellowstone District Judge so defendants can file and have the Justice Court rule on the evidence and whether its admissible, despite it being before Judge Fehr, Judge Harris and others for over 6 months.

78. Jessica Fehr, Donald Harris, Shelia Kolar, Katie Heller and all defendants know that if the September 2, 2023 FaceTime video that Avanlee Okragly [heller, Chaon, Kolar, Harris and others] based her false

allegations on, is introduce into evidence, that all defendants are guilty of all count's charges and allegations, including RICO herein.

79.  Despite substantial uncontroverted evidence that Rick Keitel was 2,400 miles away, filed telephone records, receipt showing he didn't use  phone 9/2/23, never used Sebastian Keitel's phone or computer, and that  Sebastian Keitel was in Bozeman MT working for ABC Fox as a reporter, Heller, Kolar, Harris Chaon Okragly and others schemed and filed Okragly's false swearing affidavits and sworn petition for order of protections, drafted by Heller, signed by Judge Harris and Judge Kolar.

80.  On September 25, 2023 Judge Harris refused to allow plaintiff to testify about Okragly's threats:

> THE COURT: All right. Go ahead.
> BY MR. [Sebastian] KEITEL:
> Q. Are you aware that she's continuously accused you of threatening her?
> A. Yes. In the latest motion she filed, which I have in front of me, Exhibit 4, she says right here on 9-2-23 I was contacted by Sebastian via FaceTime. When I answered, the Facetime it was covered up and two men were yelling and threatening me, my safety.
> I believe Rick Keitel was one of them.
> Your Honor, if it helps, it's number four. It's about [about] eight pages in.
> THE COURT: So that, I take it, has to do with a misstatement that you believe that she made. . .
> **THE WITNESS: And the threats, again, were against me. There are multiple threats**.
> THE COURT: Well, this order of protection doesn't involve you, sir.
> [T.p.18, 1-25]

THE COURT: It involves Sebastian. So that's what I want to hear about, is threats against Sebastian. **I don't want to hear about threats
against you, Mr. Keitel [T.p.19, L.14-17].**

81.  Judge Harris had undisputed sworn testimony by me, Rick Keitel of

Ms. Okragly's criminal threats on September 25, 2023.  Instead of raising

series questions, Judge Harris interrupted my testimony, prevented me

from continuing, attempted to discount AO's criminal felony threats for the

sole purpose to protect Katie Heller prior to the election for Billings

Municipal Court Judge.

82.  Judge Harris went so far as to object to direct question proposed to

Ms. Okragly, [as if Harris was AO's lawyer], then refused to allow Sebastian

Keitel cross examined AO about her criminal conduct and

threats. *See* Sebastian Keitel's direct question to me, September 25, 2023:

**The September 2ˑ2023, July 14, 2033 Video Recordings are
Uncontroverted Evidence that Defendants Okragly, Heller, Harris
Kolar, Chaon and others Including Fehr Participated in a Criminal
Enterprise Conspired to Cover Up Evidence**

**Unfortunately for Okragly and all defendants, Mr. Twito, Ms. McKee,
Judge Harris and Judge Fehr have the real evidence, the best
evidence, Okragly's own voice and words as uncontroverted evidence
that she lied, on the September 2, 2023 FaceTime video, to prove
fraud and criminal intent.**

83.  All defendants were provided with substantial compelling, undisputed

uncontroverted evidence that Okragly lied, filed false and fraudulent

allegation that cause serve emotional pain and suffering to plaintiff, who has stage four lung cancer.

84. Defendant Kolar evaded 11 attempts by a Montana licensed process server to be served. Kolar and heller used Billings City employee's ti interfere and obstruct service.

85. Defendants used interstate communications to falsely accuse plaintiff of impersonally law enforcement.

86. At all times, defendants were covering up defendants' involvement in criminal offenses under federal and state criminal statutes and to retaliate without any evidence, other than a false statement in violation of federal and state criminal statutes.

87. Defendants, including the Yellowstone County Attorney Office [pending notification, pursuant to MRCP], had ever opportunity, to mitigate the damages.

88. All defendants refused to move for an Expediated Dismissal and to Vacate all claims in Yellowstone District Court, Cause No DR 56-2023-1224, Cause No DV 56-2023-1231, and Billings Municipal Court Cause No. CV-925-2023-224-OP against Frederick Keitel and Cause No. DR 2022-627 against Sebastian Keitel including restraining order and orders of protection based on false and fraudulent sworn statements and petitions

for orders of protection, perjury, tampering with physical evidence,

conspiracy and filing false sworn statements and petitions for order(s) of

protection and Conspiracy by Katie Heller, Avanlee Okragly, Paul Chaon

and others.

89.  Defendants continued to intentionally and maliciously covered up their

heinous criminal conduct, instead of moving to vacate and dismiss all the

false charges.

## COUNT I
## FEDERAL RACKETEERING AND INFLUENCED CORRUPT ORGANIZATIONS ACT (RICO) PURSUANT TO THE FEDERAL RICO STATUTE INCLUDING 18 U.S. C.  § 1961, §1962, AGAINST ALL DEFENDANTS

90.  Plaintiff Keitel (re-alleges repeats and incorporates by reference herein

all the allegations in paragraphs 1-38, 39-89 and above 90-112 and 113-

142 specifically to this Cause of incorporates them as if fully alleged herein.

91.  This is an action against all defendants for violation of Civil RICO

under federal statute 18 U.S.C §1962, 1962(c), and plaintiff was injured as

a result, despite uncontroverted evidence of fraud by Okragly, Heller and

others.

92.  Each Defendant is a "person" capable of holding legal or beneficial

interest in property within the meaning of 18 U.S.C. §1961(3).

24

93.   Each defendant violated 18 U.S.C. §1962(c) by the acts described in the prior paragraphs, and further described below.

94.   The Enterprise. All Defendants individually and together formed an association-in- fact for the common and continued purpose described herein and constitute an enterprise within the meaning of 18 U.S.C §1961(1) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

95. Alternatively, the defendants-controlled actions in the Courts, each constitute a separate enterprise with the meaning of 18 U.S.C. §1961(4)

96.   Each enterprise has engaged in, and their activities have affected multiple persons in different states.

97.   Pattern of Racketeering Activity. Defendants, each of whom are persons associated with or employed by the enterprise did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(1) 18 U.S.C. §1961(5) 18 U.S.C. §1962(c). ---

98. The racketeering activity was made possible by Defendants' regular and repeated use of false and fraudulent affidavits, sworn statements and petitions for false order of protections, pleadings, mail and wire fraud.

Defendants had the specific intent to engage in the substantive RICO violation(s) alleged herein.

99. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(1)(A); 18 U.S.C. §1961(1)(B); as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

100.  This is an action for violation of the federal RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); against all defendants named herein, including multiple individuals, lawyers, law firms, their clients, corporation(s), and partnerships and the Trustee, named herein, who acted at all times as willing participants in the RICO actions;

101.  All defendants named herein engaged in RICO enterprise activities as individuals, associations and any union or group of individuals associated-in-fact although not a legal entity (see 18 U.S.C. § 1964(4) engaging in the six elements of RICO, (1) that defendants operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that include at least two predicate acts of racketeering, which (5) caused (6) injury to the plaintiff Keitel, individually and to his family, including his son SK.

102.  All defendants acted together and with each other for the common purpose of to cover up Katie Heller (and Okragly's) criminal conduct so Heller would become Billings Municipal Court Judge, and they controlled the Court systems in yellows County and City of Billings Montana. by discrediting and defaming Keitel personally and as a material witness in the on-going investigations, complaint no 23-715547 and complaint under 18 U.S.C §1001

103.  The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of repeated conduct during a period of time beginning in July 2022 and continuing to the present time, and there is a continued threat of repetition of such conduct.

104.  The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.

105.  Plaintiff specifically alleges that certain Defendants, Heller, Chaon, FrontierLaw, Okragly, Harris and Kolar participated in the operation and management of the association-in-fact enterprise and the alternative enterprises and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

106.  Predicate Acts: (i) Use of Mails and Wire to Defraud Plaintiffs in Violation of 18 U.S.C. §1341 and 1343; (ii) Obstruction of Justice in violation of 18 U.S.C. §1503: (iii) Extortion in violation of 18 U.S.C. §1961(1)(A); (iv) Tampering with a witness, victim, or an informant in violation of 18 U.S.C. 1512; (v) Tampering with or Harassing Witness or Victim; (vi) Perjury in violation of 18 U.S.C. §1621, and (vii) Perjury in violation of MCA 45-7-201; (ix) Suborning Perjury in violation of 18 U.S.C. §1622;

107.  All Defendants committed acts constituting indictable offenses under 18 U.S.C. §1341 and 1343, in that they devised or intended to devise a scheme or artifice to defraud plaintiff Keitel, his son Sebastian Keitel and other family member including Ashley Zachem, causing significant damages.

108.  All defendants engaged in an enterprise involving predicate criminal conduct including 18 U.S. C.  § 1341 & §1343 and making threats using interstate communications and/or covered up evidence of the criminal conduct.

109.  Defendant primary goal was initially to get Katie Heller elected Billings Municipal Court Judge, after destroying the creditability of plaintiff and Sebastian Keitel, but then Defendants engaged in criminal activities named

herein, to cover up their illegal activities, (see Letter to Scott Twito, Judge Jessica Fehr, Jessica McKee.

110. Based upon the diversity of plaintiff and defendants, action in excess of $250 million, criminal actions including Federal RICO actions under 18 U.S. C § 1961, §1962, mail and wire fraud under 18 U.S. C § 1341 & § 1343, that took place from New York County, New York direct to Florida and other places.

111. This is an action for violation of the federal RICO under statute 18 U.S.C § 1962, 1962(c), and conspiracy to violate of the federal RICO under statute 18 U.S.C § 1962,(d); against all defendants named herein, including multiple individuals, lawyers, law firms, their clients, and named judges named herein, who acted at all times as willing participants in the RICO actions;

112.  All defendants participated in a pattern of racketeering engaging multiple illegal predicated acts described herein, conducted with the same or similar interest, results,

113.  WHEREFORE, Plaintiff's Keitel respectfully requests judgment against all defendants named in this count herein for RICO under federal statute 18 U.S.C §1962, 1962(c), against plaintiff Keitel in excess of $250,000,000.00 million in damages, plus legal fees, costs, plus pre-

judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT II
## MAIL & WIRE FRAUD IN VIOLATION OF 18 U.S.C. §1341 AND 1343 BY AVANLEE OKRAGLY AGAINST PLAINTIFF FREDRICK J. KEITEL

114.  Plaintiff Keitel (re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 38, 39 – 89 and 90-112 and 114-123 specifically to this Cause of incorporates them as if fully alleged herein.

115.  Defendant Okragly's actions devising a scheme and materials sent from New York County, New York using interstate communication transmitted on September 2, 2023 and her actions on September 12, 2023 were purposeful or reckless intended to and did defraud and mislead plaintiff to others.

116.  The defendant Okragly's displayed extreme, outrageous conduct intentionally misrepresenting the truth in sworn statements and petitions for order(s) of protection against plaintiff Frederick J. Keitel, III [and his son Sebastian Keitel and Ashley Zachem knowing that the following statements were false when signed filed and sent

> Rick,   "You just called me on Sebastian's phone and you are now emailing me through Sebastian's email again. "I will not be responding to any communication. Stop contacting me."

"9/2/23". "Saturday September 2nd I was contacted by his son, Sebastian Keitel via FaceTime call. I answered the FaceTime call the camera was covered so I could not see anyone, and two men were yelling at me threatening my safety.  I believe Rick Keitel was with him.  Fredrick Keitel will not stop contacting me through his son, via his email and phone. (see attachment)."

117.  Defendants Okragly's heinous lies, false and fraudulent allegations that plaintiff threaten her life and the life of the minor child's, was so heinous especially because she knew it was false and intended as retaliation to defame, discredit and injure plaintiff.

118.  As a result of defendant's intentional act, plaintiff has suffered damages in an amount in excess of $250,000,000.00.

119.  WHEREFORE, Plaintiff's Keitel respectfully requests judgment against defendant Avanlee Okragly named in this count herein for mail and wire fraud in violation of 18 U.S.C. §1341 AND §1343 against plaintiff Keitel in excess of $250,000,000.00 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT III
### FRAUD AND RELATED ACTIVITIES CONNECTION WITH ELECTRONIC MAILIN VIOLATION OF 18 U.S.C. §1037 BY AVANLEE OKRAGLY AGAINST PLAINTIFF FREDRICK J. KEITEL

120.  Plaintiff Keitel (re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1- 38, 39 – 89 and 90-119 and 120-123.  and specifically to this Cause of incorporates them as if fully alleged herein.

121.  Defendant Okragly's actions devising a scheme and materials sent from New York County, New York using interstate communication transmitted on September 2, 2023 and her actions on September 12, 2023 were purposeful or reckless intended to and did defraud and mislead plaintiff to others.

122. The defendant Okragly's displayed extreme, outrageous conduct intentionally misrepresenting the truth in sworn statements and petitions for order(s) of protection against plaintiff Frederick J. Keitel, III [and his son Sebastian Keitel and Ashley Zachem knowing that the following statements were false when signed filed and sent

> Rick,   "You just called me on Sebastian's phone and you are now emailing me through Sebastian's email again. "I will not be responding to any communication. Stop contacting me."
>
> "9/2/23". "Saturday September 2ⁿᵈ I was contacted by his son, Sebastian Keitel via FaceTime call. I answered the FaceTime call the camera was covered so I could not see anyone, and two men were yelling at me threatening my safety.  I believe Rick Keitel was with him.  Fredrick Keitel will not stop contacting me through his son, via his email and phone. (see attachment)."

123.  Defendants Okragly's heinous lies, false and fraudulent allegations that plaintiff threaten her life and the life of the minor child's, was so heinous especially because she knew it was false and intended as retaliation to defame, discredit and injure plaintiff.

As a result of defendant's intentional act, plaintiff has suffered damages in an amount in excess of $250,000,000.00.

WHEREFORE, Plaintiff's Keitel respectfully requests judgment against defendant Avanlee Okragly named in this count herein for mail and wire fraud in violation of 18 U.S.C. §1341 AND §1343 against plaintiff Keitel in excess of $250,000,000.00 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

### COUNT IV
### Intentional infliction of Emotional Distress by Avanlee Okragly Against Plaintiff

124.  Plaintiff Keitel (re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1-38, 39-123 and above 123 and 142 and specifically to this Cause of incorporates them as if fully alleged herein.

125.  Defendant Okragly's actions were purposeful or reckless.

The defendant Okragly's displayed extreme and outrageous conduct. The claimant's severe emotional distress is the result of the defendant's conduct.

126.  Defendant Okragly's action were (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

127.  Defendants Okragly's heinous false and fraudulent allegations that plaintiff threaten her life and the life of the minor child's, was so heinous especially because she knew it was false and intended as retaliation to defame, discredit and injure plaintiff.

128.  As a result of defendant's intentional act, plaintiff has suffered damages in an amount in excess of $250,000,000.00.

WHEREFORE, Plaintiff's Keitel respectfully requests judgment against defendant Avanlee Okragly named in this count herein Intentional infliction of Emotional for against plaintiff Keitel in excess of $250,000,000.00 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT V

## Intentional infliction of Emotional Distress by Katie Heller Against Plaintiff

130. Plaintiff Keitel (re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1-38, 39-128 and above 129 and 142 and specifically to this Cause of incorporates them as if fully alleged herein.

Defendant Katie Heller's actions were purposeful or reckless.

131. The defendant Katie heller displayed extreme and outrageous conduct. The claimant's severe emotional distress is the result of the defendant's conduct.

132. Defendant Katie Heller's action was (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

133. Defendants Katie Heller heinous false and fraudulent allegations that plaintiff threaten her life and the life of the minor child's, was so heinous especially because she knew it was false and intended as retaliation to defame, discredit and injure plaintiff.

134. As a result of defendant's intentional act, plaintiff has suffered damages in an amount in excess of $250,000,000.00.

WHEREFORE, Plaintiff's Keitel respectfully requests judgment against defendant Katie Heller named in this count herein Intentional infliction of Emotional for **against plaintiff Keitel in excess of** $250,000,000.00 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## COUNT VI
**Conspiracy to Commit Intentional infliction of Emotional Distress by Defendants Katie Heller and Avanlee Okragly Against Plaintiff**

135.  Plaintiff Keitel (re-alleges repeats and incorporates by reference herein all the allegations in paragraphs 1-38, 39-134 and above and 135-142 and specifically to this Cause of incorporates them as if fully alleged herein.

136.  Defendant's Katie Heller's and Avanlee Okragly's actions working together with each other were purposeful or reckless and intended to cause severe pain and damages.

137.  The defendant Katie Heller and Avanlee Okragly conspired together with each other and others to displayed extreme and outrageous conduct. The claimant's severe emotional distress is the result of the defendant's conduct.

138.  Defendant Katie Heller and Avanlee Okragly's join actions were (1) the defendants must act intentionally or recklessly; (2) the defendant's

conduct must be extreme and outrageous; and (3) their conduct must be the cause (4) of severe emotional distress.

140. Defendant Katie Heller and Avanlee Okragly's actions and involvement in a fraudulent retaliation against Keitel and his son, Sebastian Keitel.

141. Defendants Katie Heller and Avanlee Okragly's heinous false and fraudulent allegations that plaintiff threaten her life and the life of the minor child's, was so heinous especially because she knew it was false and intended as retaliation to defame, discredit and injure plaintiff.

142. As a result of defendant's intentional act, plaintiff has suffered damages in an amount in excess of $250,000,000.00.

WHEREFORE, Plaintiff's Keitel respectfully requests judgment against defendant Katie Heller and Avanlee Okragly named in this count herein for Conspiracy for Intentional infliction of Emotional for against plaintiff Keitel in excess of $250,000,000.00 million in damages, plus legal fees, costs, plus pre-judgment interest, attorney fees and costs, punitive damages and for other such relief as the court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL ON ALL COUNTS SO TRIABLE**

The Plaintiff hereby demands a trial by jury on all issues in this matter so triable by law

Submitted this the 12th day of November 2024.

/s/Frederick J Keitel, III, pro se
Frederick J Keitel, III
c/o 11962 CR-101
The Villages, FL 32162
Ph: (561) 310-6864
Email: rickkeitel@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 12st of November 2024, the foregoing true and correct copy of Complaint filed via CM/ECF with the federal court electronic filing system "Temporary_Pro_Se_filing@uscourts.gov for filing with the Clerk of Court, US District Court, Middle District, 207 Northwest Second Street Ocala, Florida.

/s/Fredrick J. Keitel, III

**EXHIBIT "1"**

April 10, 2023
via email - kanderson7@mt.gov

Honorable Donald L. Harris
Montana Thirteenth Judicial District Court
Yellowstone County
217 N. 27th Street, Rm 605
Billings, Montana 59107

Dear Judge Harris:

Re:  Court obligation to review attached video evidence [t recordings, total 2 minutes], of March 29, 2023 false and fraudulent complaint for order of protection in Case No. DR 22-627, and obstruction of justice by petitioner Avanlee Okragly, during an official proceeding and on-going investigation and tampering and destroying evidence in violation of Montana Criminal Code 45-7-207:

I understand that neither Ms. Heller or Mr. Stockdale notified the Court during the April 3, 2023 hearing on order of protection, that Ms. Okragly tampered with and destroyed material evidence of the March 29, 2023 incident, after she signed the complaint.

While Ms. Heller had personal knowledge and was aware of Ms. Okragly's tampering of evidence, and might not report her client's criminal offense to this court, she had an obligation to (i) demand Ms. Okragly drop the complaint, (ii) refuse to allow Ms. Okragly or her mother to perjure themselves and testify knowing it was a fraud on the court or (iii) immediately withdraw as counsel.

The Office of the Montana Code of Judicial Conduct referred me to you, Judge Harris, as presiding judge, Case No. DR 22-627, to respectfully view and investigate the following video evidence of petitioner's violation of Montana Criminal Code 45-7-207, withheld from this court during the April 3, 2023.

Ms. Okragly erased and tampered with evidence at the exact moment before she began shouting, threatening and abusing the father and endangering the minor child. See the tampered doorbell video recording (attached as exhibit "1") , in violation of Montana Criminal Statute 45-7-207:

45-7-207.   Tampering with or fabricating physical evidence. (1) A person commits the offense of tampering with or fabricating physical evidence if, believing that an official proceeding or investigation is pending or about to be instituted, the person:

(a)   alters, destroys, conceals, or removes any record, document, or thing with purpose to impair its verity or availability in the proceeding or investigation; or

(b)   makes, presents, or uses any record, document, or thing knowing it to be false and with purpose to mislead any person who is or may be engaged in the proceeding or investigation.

(2)   A person convicted of tampering with or fabricating physical evidence shall be imprisoned in the state prison for a term not to exceed 10 years or be fined an amount not to exceed $50,000, or both.

1

On March 29, 2023, Judge Harris signed a Temporary Order of Protection based upon false written statements (below), which intentionally omitted that there was a video of the incident, proving Sebastian Keitel showed up for court ordered visitation, waited outside, was calm, respectful, handed the baby bag, then cut to prevent video evidence of Ms. Okragly, shouting, threatening and abusing the father.

Unfortunately, Ms. Okragly was sure the court would view her and her mother as credible and the father as abusive and cancel visitation.

However, when Ms. Okragly tampered with the video, she missed destroying one-two (1-2) seconds of the video showing the minor child was calm, ready to be handed over to his father. Critical sections of the video were then destroyed and the father never received his son only inches away. The video contradicts Ms. Okragly sworn statement, shows the baby perfectly well and almost reaching for his father.

"I was holding my 9 month old son, when he [respondent] became aggressive with me after I told him that he was not doing well. I asked him to calm down and stop yelling and shouting. He started to become aggressive towards me and screamed profanities at both me and mother... he tried to come at mom and tried to pull Adam out of her arms & shoved me aside. I was afraid of bodily injury when things escalate. In January he also grabbed Adam away violently . . ." I am very fearful for my son's physical safety and mine . . I would like visitation to end . . ."

On April 6, 2023 Ms. Okragly and Ms. Heller demanded that the Sebastian Keitel "personally pick up and drop minor child at her home" in exchange for dropping the false complaint temporary order of protection, despite the courts oral orders and instructions to counsel in chambers, that the court would assign pick up, drop off at a neutral location. The father refused to be threatened by petitioner, feared that petitioner was demanding pick up at her home, so she could file other false allegations. The father wanted pick up and drop off outside the Sheriff's Office, with cameras, to protect himself from false allegations.

Despite this Court's specific oral order, instructions to counsel in chambers, *that the court would assign pick up, drop off at a separate location (according to Mr. Stockdale)*, this court ignored its own instructions and oral orders, prejudiced the father by forcing him to stay 1,500 feet away, forcing him to hire a third party to pick up his son, while he waits 1,500 feet away.

The father, Sebastian Keitel, refused to agree to pick up, drop off at the mother's house on April 6th, for fear of continued false allegations, citing Judge Harris oral order and instructions to counsel in chambers, that the Judge Harris would specifically assign an independent location for pick up, drop off.

The video is the "best evidence" that the Father was calm, respectful, said hello, accepts the baby bag, with the baby calm and healthy in full view. Ms. Okragly tampered with the evidence to edit out her own abusive threats towards the father to obstruct the investigation. There is no distress to the baby and no reason not to hand the baby one (1) foot away to respondent father.

Montana Code of Judicial Conduct: RULE 2.16

"Rule 2.16. (B) A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority. (D) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action".

COMMENT

"[1] *Taking action to address known misconduct is a judge's obligation*" . . . Ignoring or denying known misconduct among . . . members of the legal profession undermines a judge's responsibility to participate in efforts to ensure public respect for the justice system. . . [2] A judge who . . . . receives information indicating a substantial likelihood of such misconduct, is required to take appropriate action . . . (D). Appropriate action may include, but is not limited to . . . reporting the suspected violation to the appropriate authority or other agency or body".

I also request this court report Ms. Okragly tampering of evidence and obstruction to the Yellowstone County District Attorney because she intentionally and maliciously tampered with, destroyed and fabricated physical evidence for the specific reason (i) *to prevent an order of protections from being issued against her personally, and* (ii) *with the knowledge that her false statement, tampering of evidence would and did result in an (a) order of protection,(b) loss of visitation and (c) possible criminal charges against the father during an official proceeding and investigation after she filed false and fraudulent criminal charges under penalty of perjury to gain an advantage in the custody-parenting case (d) is prejudiced, required to stay 1,500 feet away, forced to hire 3d parties to pick his son/drop off wasting almost 1 out of only 3 hours visitation.* I also request this court to refer this case to the Montana Bar for investigation.

Ms. Heller and Ms. Okragly intentionally conspired to go ahead with false charges, when they both knew that the video evidence to clear the father was tampered with, withheld and destroyed.

I hope that the transcript (when received), will give light to why the court never got the chance to review the videos of the father's innocence, the arguments made by counsel, why Mr. Stockdale never brought the criminal violation of statute 45-7-207 before the court and why order of protection wasn't dismissed with prejudice immediately due to petitioner's tampering and destroying evidence.

Mr. Stockdale was sent emails outlining the tampered recording, missing videos, time gaps and was apprised that it was malpractice not to request a continuance, or go ahead without a court order to turn over missing recordings, especially since he was unavailable and unprepared for the previous four days:

| | | | |
|---|---|---|---|
| 12:38 pm. | To. | 12:00:52. | 21 seconds |
| 12:00:53 pm | to | 12:16:13; | [15 minutes of critical video is missing] |
| 12:16:53 pm | to | 12:20. . . | [3 minutes 27 seconds missing] |
| 12:20 pm | to | 12:223 | [1 min, 20 seconds missing] |
| 12:22 pm | to | 12:39  . | [6+ minutes missing] |
| 12:40:05 pm | to | 12:42. . . | [1 min 25 seconds missing] |

There were least 27 minutes, in separate segments of the doorbell video have been erased, withheld, destroyed in violation of 45-7-207, that would prove Sebastian's innocence.  The initial 21 seconds of the video prove that Sebastian Keitel was calm and respectful.  One of the 6 , 20 second videos, shows the

3

father waited to speak with the police when they exited the house, only to find out whether Ms. Okragly would turn over the minor child for court ordered visitation.   She refused.

I have great concerns about the "ineffective counsel of Mr. Stockdale", who was unprepared, office closed, unavailable for 4-5 days prior to two hours before the hearing, refused to take the order of protection seriously, didn't prepare the father or witnesses, didn't properly introduce the video recording, failed to address the petitioner's tampering, destroying evidence and obstruction of justice by Ms. Okragly to interfere with a fair hearing and due process (and stated that Judge Harris in chambers, (without a court reporter), stated he won't allow either counsel off the case).

In her petitioner for custody/parenting and January 9, 2023 testimony,  Ms. Okragly testified that she feared for minor child as a result of my correspondence (drafted by lawyers).  I have attached an email from Ms. Okragly's father , Bryan Michael Okragly, who read he correspondence, and couldn't believe that his daughter would deny my request  to meet my grandson on September 13-15, 2022. I flew to Billings, stayed at the Northern Hotel September 13-15, 2022 for the specific reason to meet my grandson. Not only was I denied visitation accompanied by Bryan Mike Okragly at a neutral location, but  Ms. Okragly/Ms. Heller made a continuous written request for the father, Sebastian Keitel  to give up parental rights. I was denied visitation even if escorted by her Ms. Okragly's father to a neutral location.

"From: Bryan Okragly <bmokragly@gmail.com>
Subject: Re: Adam Michael Okragly
Date: September 8, 2022 at 11:43:20 PM EDT
To: FREDERICK KEITEL <rickkeitel@aol.com>

I read all emails I'm hoping the outcome is in your favor.
Your only trying your best to meet your grandson I think that speaks volumes.
Avanlee has to look at this moment for you a different way.
If her lawyer and her try to prevent this from happening.. You have every legal right and I would hope your successful!
This is a perfect time for her and her mother to exhibit there Christian faith and values...
Hopefully this meeting happens.
I apologize I do not have her mother's email."

Thank you for your consideration in advance, and I trust that this court will refer this matter to the appropriate law enforcement officials and agencies for criminal and civil investigations.

*/s/Frederick J. Keitel, III*
Frederick J. Keitel, III
P.O. Box 3243
Palm Beach, Florida 33480
CC: via email to Ms. Heller, Mr. Stockdale, Scot Twito, Yellowstone County Attorney's Office,
Doorbell videos recordings attached as Exhibit "1",   [approx., 6,  20 second videos]

FRED LAW FIRM & ASSOCIATES, PLLC IS NOW DOING BUSINESS AS FRONTIER LAW FIRM. PLEASE UPDATE YOUR CONTACT LIST TO REFLECT THIS CHANGE - MY NEW EMAIL IS KHELLER@FRONTIERLAWFIRM.COM.

This message, including any attachments, may contain confidential information protected by the attorney-client privilege or work product doctrine. If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately. Thank you.

From: Sebastian Keitel <skcards1525@gmail.com>
Sent: Tuesday, August 1, 2023 1:05 PM
To: Katie Heller <kheller@frontierlawfirm.com>
Cc: Avanlee Christine <avanlee@avanleecare.com>
Subject: August Visitation + Vacation

Mrs. Heller,

In addition to my previous email to you please let Avanlee know that I will be taking Adam for one week of vacation for the week of August 22 through August 29, 2023 pursuant to the family plan.

As you know, Avanlee advised me that she was taking Adam out of state for the later part of July and that she had family coming in to celebrate her birthday and Adam's birthday. Regardless if she left the state or not, she had the time, and I expect the same. I will provide full contact information prior to my vacation time with Adam.

I am also confirming that my 2 additional overnights for visitation this month that I am entitled to in the final parenting plan will be August 14th and August 15th. **I am also entitled to two additional overnight visits for the two nights that I was denied by Avanlee in July.**

I am also confirming that my regular visitation for this month will be August 4th, 5th and 6th and August 18th, 19th and 20th.

Please confirm these dates immediately as I have family and friends that are planning to come into town to meet Adam and spend time with him.

Also, I have not received a response from you confirming that my girlfriend Ashley can pick Adam up for me if necessary this Friday. As you can see from my contempt motion, your client has violated the terms of the final parenting plan on numerous occasions. I do not see where we agreed, or that it was ordered, that I have to personally pick Adam up. The final parenting plan controls. It seems that only my being able to pick Adam up is a rule that Avanlee has made up herself, and if she fails to allow Ashley to pick Adam up for me, that is another contempt by her which interferes with my parental rights and time with Adam. If I am wrong, please tell me where in the final parenting plan it states that only I can pick up Adam.

I am hopeful that mediation will work and that Avanlee and I will be able to co-parent and work together as that is my preference. If not, I believe that it would be in Adam's best interests to have a guardian ad litem to represent Adam's interests in this case and would expect your cooperation in starting that process.

Lastly, I also believe that sunday drop off should be extended until 6: 00 pm, so I can take my son to church on Sundays and spend more time with him. Please let me know if Avanlee agrees and if not, why not.

Sebastian Keitel

**EXHIBIT "2"**

**FREDERICK J. KEITEL, III**
**P.O. Box 3243**
**Palm Beach, FL**
**33480**
**(561) 310-6864**
**rickkeitel@aol.com**

October 25, 2024

Via email:
countyattorney@yellowstonecounty.gov
Scott D. Twito
Yellowstone County Attorney
217 N. 27th Street,
Billings, MT 59101

Via email: maharris@mt.gov
Jessica Fehr
Chief Judge
Yellowstone District Court
217 N. 27th Street,
Billings, MT 59101

Via email: mckeej@billimngmt.gov
Jessica McKee
City of Billings Deputy Attorney
Billings, MT 59101

---

### SWORN AFFIDAVIT OF FREDERICK J. KEITEL, III, IN SUPOORT OF CRIMINAL CHARGES AGAINST KATIE HELLER AND AVANLEE OKRAGLY

STATE OF FLORIDA
COUNTY OF SUMTER

BEFORE ME, the undersigned authority, this day, personally appeared, Frederick J. Ketel, III, to be known to be the person herein, or who produced passport as identification and who, after being duly sworn, deposes and states the following.

My name is Frederick J. Keitel, III, I am over the age of 21 years, competent to make this sworn statement and I have personal knowledge of all the facts and opinions

1

contained in herein.

Mr. Twito

>Re:  My formal sworn notarized affidavit for criminal charges complaint(s) against Katie Heller and Avanlee Okragly, based on recently discovered evidence.

I'm requesting the Yellowstone County Attorney Office move for an Expediated Dismissal and to Vacate all claims in Yellowstone District Court, Cause No DR 56-2023-1224 and Billings Municipal Court Cause No. CV-925-2023-224-OP against Frederick Keitel and Cause No. DR 2022-627 against Sebastian Keitel based on Fraud, perjury, tampering with physical evidence, conspiracy and filing false sworn statements and petitions for order(s) of protection and Conspiracy by Katie Heller and Avanlee Okragly.

The substantial evidence including separate FaceTime video and multiple other videos proving false and fraudulent sworn statement to falsely obtain order(s) of protection filed September 12, 2023, and other false sworn statements orchestrated and conspired by Katie Heller, Frontier law firm, Avanlee Okragly and others, who knowingly drafted false and material statement of facts, got Ms. Okragly to falsely signed and testified to the false allegation in violation of multiple violations of Montana Code Ann., perjury, tampering with evidence, obstruction, and lying to an FBI agent.

I have a list of all evidence, including uncontroverted FaceTime Video dated 9/2/23, and other uncontroverted video's from 9/14/23 and 10/4/2024 as the best substantial evidence of Ms. Okragly ("AO") criminal conduct, including conspiring with Ms. Heller to knowingly filing false sworn statement under penalty of perjury.

Mr. Twito, you have a mess to clear up. Two Judges Kolar and Harris caught lying about evidence, ex parte communications, corruption, Katie heller a lawyer running for and elected as Billings Municipal Court Judge while she committed multiple felonies. Paul Chaon your former disgraced deputy County Attorney who conspired to and lied to a Special Agent of the FBI.  Abd Avanlee Okragly who made false and fraudulent sworn

statements, perjured herself and filed false petitions for OOP committing multiple felonies, conspiring with Heller and Chaon.

I clerked for a federal judge, the county prosecutor's office, all my friends and family are judges, prosecutors and lawyers. It's always the cover-up that bring down Judges, prosecutors and elected officials.  You have all the evidence, exhibits and sworn testimony, and affidavits, including Ms. Heller (and Mr. Chaon's) own emails and telephones calls to an FBI agent, to charge Ms. Heller, Ms. Okragly and Mr. Chaon will multiple felonies.  You have a chance to mitigate my damages, clear my name and the name of my son Sebastian Keitel and move for expungement of charges in the national data base.

Mr. Twito and the Yellowstone County Attorney's office can review the video recording  [some of which are currently filed with the Yellowstone District Court Clerk, Judge Fehr and Judge Harris] in less an 30 minutes to understand the severity of Ms. Okragly false allegations, mental illness [as attested to by her own father Bryan Michael Okragly's March 17, 2024 affidavit filed in Cause No. DR 56-2022-627 (Judge Harris),and in Motion for Rule 35 Examination of Avanlee Okragly, Cause No DV 56-2023-1231 and DR 56-2023-1224.   The motions include personal, firsthand observations and quotes from multiple affidavits and sources previously filed with the Court.

As you will read from Mr. Okragly's sworn testimony in his affidavit, AO was screaming at her father in a public restaurant while holding her 1 year old son, demanding money and holding her son as a hostage and pawn to extort money [exactly the same allegations made and witnessed by Sebastian Keitel, myself and others].

The Substantial evidence will prove that while I was unable to attend a hearing on false and fraudulent charges against me, order of protection on October 31, 2023, that Judge Kolar relied on over 30+ false *ex parte* emails, telephone calls from Ms. Okragly, refused to reschedule the hearing due to my two recent cancer operations October 2023, (6th and 7th operation) including problems related to my lung cancer, problems lung infection, breathing and recent cardioversion.

3

Instead of rescheduling the hearing 2 weeks later, Judge Kolar attempted to and did lie, give a false proffer on the record that I never requested to appear via ZOOM. The substantial evidence is that Kolar deliberately lie. Judge Kolar then attempted to force her clerk of court to commit perjury. Judge Kolar was unaware that her Clerk of Court OOP, Danelle Milligan memorialized that Kolar refused to allow me to appear via ZOOM, October 30, 2023 in an email, and that the email is the best evidence that Judge Kolar is a liar, who tried to force her clerk Danelle Milligan to perjury herself [see October 30, 2023 email and transcript],

Both Mr. Twito and Ms. McKee have an obligation to correct the false and fraudulent allegations, false sworn statement and sworn petitions for OOP and testimony under oath by Avanlee Okragly ("AO') and to further mitigate the damages that you have personal knowledge of.

I was denied due process under Montana and U.S. Constitution, including violation of my civil rights under the American Disabilities Act, after Judge Kolar refused to continue my hearing on October 31, 2023 for 2 weeks after I was served October 18, 2023 in Florida, due to recovery from my 6th and 7th cancer surgeries while I was suffering from breathing problems due to my lung cancer.

Judge Kolar also refused to allow me to appear via ZOOM on October 31, 2023 and I have never had the opportunity to present evidence, videos, sworn testimony, including recently discovered evidence proving beyond a reasonable doubt that Avanlee Okragly conspired with Katie Heller and other to file false and fraudulent sworn statement, sworn petitions for order for protection based on sworn statement and testimony that I threatened Avanlee on September 2, 2023.

The evidence proves that Ms. Okragly and Ms. Heller lied about the threats to retaliate against me and my son Sebastian Keitel, for my criminal compliant No. 23-715547 filed in July 2023 against Ms. Okragly and Ms. Heller

Judge Harris refused to read my motions and ruled on a false procedural premise, and Judge Fehr has sat on motions, sworn affidavits, testimony video evidence and exhibits for months which will be detailed in a federal lawsuit.

Both Mr. Twito and Ms. McKee have an obligation to correct the false and fraudulent allegations, false sworn statement and sworn petitions for OOP and testimony under oath by Avanlee Okragly ("AO') and to further mitigate the damages that you have personal knowledge of.

I was denied due process under Montana and U.S. Constitution, including violation of my civil rights under the American Disabilities Act, after Judge Kolar refused to continue my hearing on October 31, 2023 for 2 weeks after I was served October 18, 2023 in Florida, due to recovery from my 6th and 7th cancer surgeries while I was suffering from breathing problems due to my lung cancer.

Judge Kolar also refused to allow me to appear via ZOOM on October 31, 2023 and I have never had the opportunity to present evidence, videos, sworn testimony, including recently discovered evidence proving beyond a reasonable doubt that Avanlee Okragly conspired with Katie Heller and other to file false and fraudulent sworn statement, sworn petitions for order for protection based on sworn statement and testimony that I threatened Avanlee on September 2, 2023.
Mr. Twito and Ms. McKee should review my sworn affidavit, Motion to Disqualify Judge Shelia Kolar, October 28, 2023, as substantial evidence that AO and Katie Heller conspired to get Rick Keitel. That heller had AO file in 2 different courts, because heller knew that Harris was her mentor and Kolar was her co-conspirator, and both would act to protect heller, and therefore AO. As proof of the corruption, Judge Kolar, Judge Kolar's OOP clerk of Court, Danelle Milligan and AO and Katie heller, who was nefariously representing, advising and preparing AO for testimony [after Judge Harris signed an order allowing Heller to withdraw (Sept 12, 2023) over 30+ ex parte, unethical and illegal communications were sent to Judge Kolar to falsely defame and prejudice Rick Keitel:

A small sample of Ms. Okragly's false allegations in ex parte emails to the Court relied on by Judge Kolar, detailed in Appellant's Motion to Dismiss and Vacated based on Fraud . . . and withheld from me, for 5 months by Judge Kolar.

5

"This guy is nuts". "He's a very dangerous"
There is court orders against him that Rick Keitel cannot be unattended with
A.M.O.K."
Rick is hiding in Bozeman, Rick will not come to the door and will hide but they
can surely try".
"Can they arrest him or have him removed".

Avanlee Okragly's email to the Court:

"Just a forewarning, Rick is really nuts you should have law enforcement present
Frederick has made threats against me my family and our Judge, Donald Harris.
I would have them prepared. The last hearing law enforcement had to escort
them out of the court room during a hearing".[Oct 30, 2023 2 9;16 AM

"Danelle Milligan" Clerk of OOP states:
"**I have advised the judge . . . if she wants additional security**".

Oct 30, 2023 at 9:30 AM Danelle Milligan responded:

"Yes, ma'am, we a go for tomorrow. He has been served. Mr. Keitel tried to have
a continued for 2 weeks but the **Judge denied his request and is requiring his**
**appearance to be in person".**

Judge Kolar's clerk of court, Danelle Milligan advised me, Rick Keitel that Judge

Kolar refused to allow me to appear via ZOOM on 2 different occasions and sent AO (&

Katie Heller?) an email, confirming that the Judge refused to allow Rick Keitel to appear

via ZOOM, stating **"Judge denied his request and is requiring his appearance to be**

**in person".**

Judge Kolar deliberately and malicious violated my right to due process, obstructed

justice, lied to the court on the record, because she didn't know that her OOP clerk of

Court had memorialized her order denying that Rick Keitel could appear via ZOOM.

After Judge Kolar denied Rick Keitel's request(s) to appear via ZOOM, Judge Kolar

attempted to force and suborned Danelle Milligan's perjury under oath (see 10-31-2023

Billings Municipal Court transcript).

During the same time that Judge Kolar accused Rick Keitel of hiding to evade SOP, The Palm Beach Sheriff's Deputy ("PBSD") 10/10/2023 voice mail, confirming a conversation with Rick Keitel and multiple voicemails by me beginning on September 29, 2023:

> **UNIDENTIFIED MALE VOICE: Hey, Mr. Keitel, how you doing? I got your message. I know you're not, uh -- you're not in Palm Beach, so I guess you're in Tampa or in the hospital. I can't recall. But, uh, as we discussed before that, the prior conversation that we had when you told me you weren't here, uh, you need to go to the County of (unintelligible) now to pick -- pick that paperwork up (unintelligible)".  (End of voicemail.)**

The voice mail is the best evidence that Judge Kolar is a liar, who falsified the court record/transcript, lied to the court after she refused to continue the hearing for 2 weeks while I was recovering from my 6th and 7th cancer surgeries, was having breathing problem and suffering from lung cancer all known to Judge Kolar's clerk of court.

Mr. Twito and Ms. McKee.  I was in Yellowstone District Court on September 25, 2023, before Judge Harris testifying against AO, seven (7) days prior to my cancer operations, yet no one, not AO, not Judge Harris or anyone else informed me that there was an outstanding summon against me filed 13 days earlier on September 12, 2023 for order of protection.   I even notified Judge Harris, the Court and AO that I was having surgery the week of October 2, 2023, *see transcript Sept 25, 2023:*

[Transcript September 25, 2023, page 103, L. 16-25, hearing before Judge Harris]:
THE COURT: We could do it almost any time Monday or Tuesday or Wednesday morning.
MS. OKRAGLY: I could do Wednesday morning, the fourth.
THE COURT: Wednesday morning the fourth? Will that work for you?
MR. FREDERICK KEITEL: Your Honor, I'm sorry again. I'm a witness and I have surgery.
THE COURT: No. I just said that you can't talk. [T.,P.17, L.1-18].

The transcript and substantial evidence prove that I informed Judge Harris and AO knew I was having surgery the week of Oct 2nd, so AO knew she was lying when she

sent multiple *ex parte* emails to Judge Kolar (and Judge Harris?), that I was hiding out in Montana evading SOP.

The Palm Beach Sheriff's Deputy is uncontroverted evidence that Judge Kolar and Milligan are lied, refused to reschedule a hearing in violation of my constitutional due process rights to a fair hearing under Montana and U.S Constitution, and violation of my civil rights under the American Disabilities Act, as a protected individual.

I wasn't served with the Order of protection until October 18, 2023 and Ms. Milligan, refused to give me any details or that there was an order of protection against (see Milligan's testimony, I never told him what he was being served with).

The evidence proves that Ms. Okragly and Ms. Heller lied about the threats to retaliate against me and my son Sebastian Keitel, for my criminal compliant No. 23-715547 filed in July 2023 against Ms. Okragly and Ms. Heller

Judge Harris refused to read my motions and ruled on a false procedural premise, and Judge Fehr has sat on motions, sworn affidavits, testimony video evidence and exhibits for months which will be detailed in a federal lawsuit.

On September 12, 2023 AO and Katie Heller conspired to file two of Ms. Okragly, ("AO"), Petitioner's Sworn Petition for Temporary Order of Protection and Request for Hearing in different Courts against me and my son Sebastian, knowing the allegations were false, because Katie Heller received an email from me (Aug 29, 2023) that I was coming to Montana for Sebastian's Court ordered visitation Sept. 1-3, 2023 and wanted to know if AO who fled Montana in violation of MCA 45-5-631 and Court ordered visitation would produce AMOK.

Instead, Heller and AO conspired with what they though was a brilliant fraudulent legal strategy by Katie Heller, after (i) AO fled Montana to avoid SOP by Yellowstone County Sheriff's Officers, (ii) to go on the offensive (iii) accused Sebastian and Rick Keitel of threats to harm AO's safety (iv) the safety of the minor child (see AO's OOP drafted by Katie Heller dated September 12, 2023) (v) discredit Rick Keitel in his complaint against Heller and Okragly, Complaint No. 23-715547.

Instead, the video records and uncontroverted evidence proves that Katie Heller and Avanlee Okragly committed multiple felonies for false swearing, perjury, conspiracy and making heinous false allegations to get an order of protection, etc.

When you listen to the FaceTime video [September 2, 2023], and hear/understand the demeanor of Avanlee Okragly, you will immediately be shocked to compare her false sworn statements to Judges Kolar, Judge Harris, law enforcement and her sworn testimony Sept 25, October 2nd and 31st, 2023 of the heinous allegations made with the knowledge and intent of AO, Katie Heller and others to falsely discredit and retaliate against Sebastian and me.

When you read the following emails from AO, remember they are all lies, so AO could use the false allegations in her OOP: Attached is AO's September 2, 2023 email:

> From: Avanlee Christine avanlee@avanleecare.com
> Date: Sat, Sep 2, 2023 at 8:39 AM
> Subject: Re: New York Address + Itinerary
> To: Sebastian Keitel <skcards1525@gmail.com> CC: Katie Heller
> <kheller@frontierlawfirm.com>
>
> **Rick,   "You just called me on Sebastian's phone and you are now emailing me through Sebastian's email again. "I will not be responding to any communication. Stop contacting me."**

Despite substantial uncontroverted evidence that Rick Keitel was 2,400 miles away, didn't use my phone 9/2/23 and never used Sebastian phone or computer, and that Sebastian Keitel was in Bozeman MT working for ABC Fox as a reporter, Heller and AO schemed and filed AO's false swearing affidavit in her sworn petition for OOP, knowing it was false when drafted by Heller and signed and delivered to by Judge Harris and Judge Kolar.  The sworn petition for OOP and statement:

> "9/2/23". "Saturday September 2nd I was contacted by his son, Sebastian Keitel via FaceTime call. I answered the FaceTime call the camera was covered so I could not see anyone and two men were yelling at me threatening my safety.  I believe Rick Keitel was with him.  Fredrick Keitel will not stop contacting me through his son, via his email and phone. (see attachment)."

The attachment referred to in Ms. Okragly false allegations was her own screenshot of her FaceTime call to Sebastian which showed nothing but screenshot call but was intended as a diversion and as evidence of threats to her safety.

The FaceTime video recorded Sept 2, 2023 is undisputed evidence and proof that AO and Katie Heller lied, that they are the "Jussie Smollett's" of Billings Montana and their heinous false allegations should be treated as a felony hate crime, for which they deserve to serve jail time.

In both of Petitioner's Sworn Petition for Temporary Order(s) of Protection against me and my son Sebastian Keitel should be treated as hate crimes.

Ms. Heller drafted Ms. Okragly's false allegations, knew were false when drafted and signed and filed in separate Courts, Billings Municipal Court against me [and Yellowstone District Court against Sebastian], as retaliation for my criminal complaint against them July 2023

Katie Heller orchestrated and conspired with AO and others including Paul Chaon and Frontier lawyers, while she was running for BMC Judge.  Ms. Heller had AO sign the prepared false sworn petitions for orders of protection with allegations they knew were false.

Katie Heller, AO and others prepared the premediated sworn statements as an excuse and diversion *after* AO fled Montana with the minor child in violation of MCA 45-5-631, *and after* the FBI ordered Ms. Okragly to return the minor child AMOK to Montana *and after* Ms. Keller, Paul Chaon and Avanlee conspired to and did give intentional false and fraudulent information  and omission of the truth to mislead  a federal agent, FBI special agent Cialella in violation of 18  U.S.C. 1001.

Katie heller, Paul Chaon and Avanlee Okragly planned the criminal actions, lied about each and every detail in the OOP against me, with general unsubstantiated lies that, Frederick Keitel impersonated law enforcement and harassed a Billing restaurant in January 2023.

10

This is a perfect easy way for Mr. Twito to prove they all lied.  Call Joe Raffiani, Ms. Okragly's lawyer a get an affidavit, with the date, time, threats to whom and list the name of the witness, so I can turn over my telephone records and prove they lied-again.

**Unfortunately for AO, the real evidence, the best evidence, her own voice and words is uncontroverted evidence that she lied, and Mr. Twito, Ms. McKee and Judge Fehr can hear her own word on the September 2, 2023 FaceTime video**

The video is undisputed evidence that Avanlee is a liar, a pathological mentally ill liar who conspired with Katie Heller to use heinous false allegations and false swearing to get Katie Heller's buddy, Shelia Kolar to sign the false and fraudulent order of protection in Billings Municipal Court.

Ms. Heller then had AO go to her other mentor, Heller's rabbi, Donald Harris who signed an almost identical order of protection against Sebastian Keitel in Yellowstone District Court for making threats against the safety of Avanlee and her minor son AMOK, all based on false and fraudulent sworn statement.

> 9/2/23 ". . . two men were yelling at me   threatening my safety".
>
> 9/12/23 "I am terrified for my safety and the safety of my son . . I am a single mom`. I am very scared. I need protection and help right now"
> "I am afraid for my life and the life of my son's life'.

October 2, 2023, transcript, p..9 & 11. L, Ms. Okragly:

> A; " . . . And he started to shout at me. It was clearly not a call for AMOK-
>
> A: "I heard another male voice". A: I was being I was avoiding service. That they were going to have me arrested".
>
> A: "That I was avoiding service.  I was going- they were – he was going to have me arrested and brought back to Montana in Cuffs" [T.p.10, L. 4-8]
>
> A: I was in New York
>
> A: I am met with biweekly threats they're going to take my son from me.
>
> Q: Okay, so you're talking about court filings?'
>
> A.  The Court filings, yes". [p.15, L.17-23]

The substantial uncontroverted evidence is that Rick Keitel was in Florida, 2,400 miles away recovering from a lung infection, and previously provided hotel records and

document to Katie Heller denying the allegations.   My phone records from September 2, 2023, previously filed before Judges Fehr and Harris prove I made no calls September 2nd, while I was recovering.

On October 2, 2023, while Rick Keitel was preparing for multiple cancer operations in Florida, Judge Harris held another hearing on OOP against Sebastian Keitel.

Ms. Okragly makes no allegations of physical threats, sexual misconduct of sexual harassment (10/2/23 T.p. 18. L.3-10)

> Q: And you don't make any allegations of verbal abuse?
>
> A: No, I did. On that call That FaceTime call.
>
> **A: He told me that I was avoiding service, that they were going to take AMOK, and that they were going to bring me back in handcuffs" (10/2/23 p. 18., L. 25).**
>
> Q: So, your issue is with Rick Keitel, Sebastian's father"
>
> A: "oh, no. The issue is with Sebastian and his father plays a role in this"? 10/2/23 T.p.24, L.10-12).
>
> Q: "Ms. Okragly, have you been put in reasonable apprehension of bodily harm?
>
> A: "Yes, we have. We already filed an Order of Protection in March of- [3/29/23]
>
> Q: "And you dismissed that action, correct?'.
>
> A: "Yes"

Ms. Okragly felt comfortable continuously lying in front of Judge Harris, because as Ms. Heller's mentor, he wouldn't allow any charges against Ms. Okragly to piggy-back onto Ms. Heller before the November 7, 2023 election for Billings Municipal Court Judge.

Judge Harris covered-up multiple past felonies by Katie Heller (his protégés) including lying to a federal agent September 7, 2023.

Ms. Okragly continuously lied and perjured herself in her sworn testimony during OOP hearings on September 25, October 2nd (before Judge Harris) and on October 31, 2023 before Judge Kolar.

Judge Harris had undisputed sworn testimony by me, Rick Keitel of Ms. Okragly's criminal threats on September 25, 2023.  Instead of raising series questions, Judge

Harris interrupted my testimony, prevented me from continuing, attempted to discount AO's criminal felony threats for the sole purpose to protect Katie Heller prior to the election for Billings Municipal Court Judge.

Judge Harris went so far as to object to direct question proposed to Ms. Okragly, [as if Harris was AO's lawyer], then refused to allow Sebastian Keitel cross examined AO about her criminal conduct and threats. *See* Sebastian Keitel's direct question to me, September 25, 2023:

THE COURT: All right. Go ahead.
BY MR. [Sebastian] KEITEL:
Q. Are you aware that she's continuously accused you of threatening her?
A. Yes. In the latest motion she filed, which I have in front of me, Exhibit 4, she says right here on 9-2-23 I was contacted by Sebastian via Facetime. When I answered, the Facetime it was covered up and two men were yelling and threatening me, my safety. I believe Rick Keitel was one of them.
Your Honor, if it helps, it's number four. It's about about eight pages in.
**THE COURT: So that, I take it, has to do with a misstatement that you believe that she made.**
MR. KEITEL: Correct.
THE COURT: In connection with her order of protection, correct?
**THE WITNESS: And the threats, again, were against me. There are multiple threats.**
THE COURT: Well, this order of protection doesn't involve you, sir.
[T.p.18, 1-25]
THE COURT: It involves Sebastian. So that's what I want to hear about, is threats against Sebastian. I don't want to hear about threats
against you, Mr. Keitel [T.p.19, L.14-17].

As I have testified previously in affidavits, and motions filed with Judge Harris and others, that he is a lying piece of shit, who should be investigated by Mr. Twito for corruption and interference with an election. Ever since I sent Judge Harris a letter April 10, 2023 detailing Katie Heller and Avanlee's Okragly's fraudulent OOP, tampering with evidence obstruction and perjury, Judge Harris retaliated against my son Sebastian Keitel, in an effort to cover-up Katie Heller criminal actions, so she could run for Billings Municipal Court Judge. My concern is that you and your office twice neglected to follow up allegations, and that maybe you should join me in referring this matter to the U.S Department of Justice for a federal investigation into corruption in Yellowstone County.

Avanlee and Katie Heller conspired to commit perjury, filed false and fraudulent t sworn statements.  Under penalty of perjury, I swear that:

1. Rick Keitel was not on the Sept 2, 2023 video [because he wasn't in MT]
2. There was never any threat against AO by anyone
3. The FaceTime video is evidence that AO was calm, her voice was clear, there was no shouting, she has no reason to be in fear and AO lied about each and every allegation;
4. There was no threat to AO, and AO lied when she testified on October 2, 2023 that, Sebastian Keitel threatened her that she would be handcuffed and transported from New York to Montana (see AO's testimony before Judge Harris 10/2/23).
5. There weren't two men on the FaceTime video call, only Sebastian;
6. There weren't two men yelling at AO
7. Heller thought Rick Keitel was in Montana Sept 1-3 for visitation, so Heller and AO conspired to falsely accuse Rick Keitel of threats also; [see RK email to Heller, 8/29/23]
8. Rick Keitel never used contact AO through Sebastian's email and/or phone and only spoke with AO once on July 14, 2023 and it was videoed [see video 7/14/23]
9. No one threatened AO's safety ever
10. AO intentionally fabricated threats against Sebastian and Rick Keitel, because Heller, an experienced family lawyer, advised AO that it's the easier way to get an OOP against the father and his family, and limit visitation against a father.
11. Sebastian was with his fiancée Ashley Zachem on Sept 2nd
12. Ashley Zachem did not speak, and she certainly doesn't sound like a man
13. The video is uncontroverted proof that AO lied, there was no threats and AO never feared for her life
14. The video is uncontroverted proof that AO wasn't threatened and never fear for her life or the life of her son, AMOK.
15. The video is the best evidence and proves that AO made up heinous false allegations, false swearing, knowing the statements were false when made., that Rick Keitel was a danger to the minor child and would abuse him.
16. The video is the best evidence and proves that AO and Katie Heller conspired and made up heinous false allegations, false swearing, knowing the statements were false when made as retaliation against Rick and Sebastian Keitel
17. The only reason Sebastian put his figure over the FaceTime call, was that early, he wasn't fully dressed during the call.
18. The video is the best substantial evidence that AO lied, made the entire scenario up as retaliation against Sebastian and Rick Keitel.

To file false allegations signed under oath by AO, drafted by Katie Heller, accusing or implying sexual abuse by a grandparent is one of the most heinous, sick and demented actions a mother can take.

14

It is further proof that AO is a pathological liar who is mentally ill, unstable, and will lie about anything and everything to use the minor child as a hostage and pawn, all charges AO's own father sworn to in his affidavit, March 17, 2023.

Mr. Twito and Ms. McKee need to review Rick Keitel's Motion for Rule 35 Examination of Avanlee Okragly filed with Judge Fehr 9and Judge Harris but never ruled on.  The motion quotes sworn affidavits from Bryan Okragly, Sebastian Keitel, Ashley Zachem, Lori Wurtz and Rick Keitel of firsthand personal accounts of Avanlee mental illness, lying, manipulation, and holding AMOK as hostage and pawn for money.

AO and Heller sent a false and fraudulent email to Sebastian Sept 2, accusing Rick Keitel of contacting AO, when both Heller and AO knew the statements were false.

AO and Heller knew that I never received a 'stalking letter" so they conspired to and did send false and fraudulent allegations in an email, so I would deny the false claims, so they could use the denial as "a forbidden contact":

> From: Avanlee Christine avanlee@avanleecare.com
> Date: Sat, Sep 2, 2023 at 8:39 AM
> Subject: Re: New York Address + Itinerary
> To: Sebastian Keitel <skcards1525@gmail.com> CC: Katie Heller <kheller@frontierlawfirm.com>
>
> **Rick,  "You just called me on Sebastian's phone and you are now emailing me through Sebastian's email again. "I will not be responding to any communication. Stop contacting me."**

The substantial compelling, uncontroverted evidence is that AO and Katie Heller committed multiple felonies when they acted together and wrote, drafted and filed false and fraudulent typed allegations in different courts against Sebastian and Rick Keitel.

Mr. Twito and Ms. McKee should review my sworn affidavit, Motion to Disqualify Judge Shelia Kolar, October 28, 2023, as substantial evidence that AO and Katie Heller conspired to get Rick Keitel.  That heller had AO file in 2 different courts, because heller knew that Harris was her mentor and Kolar was her co-conspirator, and both would act to protect heller, and therefore AO. As proof of the corruption, Judge Kolar, Judge Kolar's OOP clerk of Court, Danelle Milligan and AO and Katie heller, who was

15

nefariously representing, advising and preparing AO for testimony [after Judge Harris signed an order allowing Heller to withdraw (Sept 12, 2023) over 30+ ex parte, unethical and illegal communications were sent to Judge Kolar to falsely defame and prejudice Rick Keitel:

I'm not accustom to using bad language, but it's important in this case to stress the corruption by Judge Harris and Judge Kolar.  I also have serious questions concerning the Yellowstone County Attorney's Office, Billings Municipal Court ("BMC")and Yellowstone District Court [who withheld transcripts and audio recordings of hearings] and did everything possible to look the other way to substantial evidence of Katie Heller's criminal conduct while running for BMC judge.

A Montana license process servicer has tried on over 11 occasions to serve Shelia Kolar who uses her judicial position to evade service.  However, while I was recovering from 2 surgeries, Judge Shelia Kolar accused me of evading service, when I didn't even know there was a OOP signed against me, while I was testifying before Judge Harris., and a Palm beach County Deputy's voicemail is evidence that Judge Kolar lied.

Every fucking word and allegation in AO's *ex parte* emails sent between AO, Judge Kolar and her OOP court clerk, Danelle Milligan is a lie, fraud on the court, false swearing and bullshit, intended to and did prejudice me, defraud me and violate my civil rights to prevent me from seeing my grandson without due process, while they covered up criminal behavior by AO and KH.

I expect based on the video evidence, that Mr. Twito and Ms. McKee will move to expediate a motion to dismiss and vacate Judge Kolar and Judge Harris orders based on fraud and act immediately after reviewing the FaceTime video and other videos to MITIGATE MY DAMAGES AND RESTORE MY REPUTATION.

As Ms. McKee is aware, The Billings Municipal Court (BMC"), Judge Kolar, Ms. Milligan and others including Ms. McKee withheld my sworn affidavit attached to my Motion to Dismiss Judge Shelia Kolar during the transfer of document from Billings Municipal Court to Yellowstone District Court.  Both the Yellowstone District Court and BMC withhold audio recordings for over 6 months to prevent me and Sebastian Keitel

from getting transcripts to use in multiple cases, including my appeal to the Montana Supreme Court, Cause No DA 23-0466 and Rule 59 and 60(b) motions.

I expect Mr. Twito and Ms. McKee to review the sworn affidavit of AO's father Bryan Michael Okragly, dated March 17, 2023 Cause No DR 2022-627 (Judge Harris), testifying to AO's dishonesty, manipulative unstable behavior using her minor son AMOK as a hostage and pawn to extort money from her own father, including refusing to allow Bryan Okragly to see his grandson for over eleven (11) months. Bryan Okragly affidavits recounts and details how AO started screaming at him in a public restaurant in from the of his grandson, screaming the "Fuck" word at her own father to embarrass him when he denied her money.

I have copies of the recently discovered multiple video recordings, FaceTime video, sworn testimony, Bryan Michael Okragly's sworn affidavit (that supports my allegations) and other substantial compelling evidence, that proves beyond a reasonable doubt, that Katie Heller ("KH"), Paul Chaon ("PC"), Avanlee Okragly ("AO"), conspired to and did violate federal and state laws, including false swearing, perjury, suborning perjury, conspiracy, tampering with physical evidence, obstruction, as retaliation against me as a material witness in Yellowstone County Sheriffs complaint No. 23-715547

The following persons have filed sworn notarized affidavits attesting to Ms. Okragly's dishonesty, manipulative, dishonesty, lying false statement to law enforcement, and unstable mental health: (1) Bryan Michael Okragly [Ms. Okragly's own father, the minor child's AMOK maternal grandfather] (2) Sebastian Keitel, (3) Ashley Zachem, (4) Lori Wurtz and (5) myself.

I have a succinct outline of multiple criminal actions and violations of Montana Code Annotated by Katie Heller and Avanlee Okragly on March 29th, April 3rd, July 14th, September 2nd, September 3rd, (& Mr. Chaon) September 7th, September 12, 2023.

Ms. Okragly continued her pattern of false swearing and perjury in court on September 25, October 2nd and October 31, 2023 in sworn testimony before Judge

Harris Yellowstone District Court and Judge Kolar Billings Municipal Court to obtain OOP based on fraud.

My complaint is for criminal charges, false swearing, and perjury of material facts and false evidence resulting in a 20-year restraining order against me. including perjury, that and this is not a custody, visitation or parental issue. It's false statement of material; facts and charges as retaliation for filing my complaint with the Yellowstone County Sheriff's Department ("YCSD"), against her and Katie Heller) and for Sebastian Keitel and Ashley Zachem's filing sworn affidavits for Order of Protection in Bozeman against Avanlee Okragly for stalking, violation of parent-child contact MCA 45-5-631 in mid-August 2023, before Ms. Okragly fled Montana with the minor child AMOK, to interfere with court ordered visitation (see complaint against Katie Heller, Paul Chaon and Avanlee Okragly for 18 U.S.C 1001, lying and making false statement of material facts and misrepresentation and omission of material facts to an FBI special agent September 7, 2023, who ordered Ms. Okragly to return the child to Montana immediately (see Ms. Heller and Mr. Chaon's self-incriminating emails as proof beyond a reasonable doubt of violating 18 U.S.C 1001, with exhibits, including VIRTUAL SUMMONS for ZOOM appearance).

I am also filing multiple counts of false swearing, perjury and other charges against Ms. Okragly based on March 29th, April 3rd, July 14, September 2, 7th and 12, 2023 false police report after AO interfered with parent child contact and her allegations that in January 2023, I impersonated law enforcement to harass a Billings restaurant.

I have recently discovered an additional 4 video recordings of July 14, 2023 that will provide uncontroverted evidence that AO never fear for her life, lied continuously and filed false and fraudulent statement to the police, when she was caught interfering with court ordered visitation, and lied in her OOP September 12, 2023.

I have stage four untreatable lung cancer, after having undergone surgery chemotherapy Immunotherapy and Radiation, so I want to expedited my complaints,

18

that will have all the evidence, exhibits, affidavits and court testimony as substantial compelling evidence, beyond a reasonable doubt, that Avanlee Okragly and Katie heller conspired to and did orchestrated fraud on the court, Judges Harris and Kolar as retaliation for my criminal complaint filed July 2023.

I would also like Mr. Twito to investigate the disappearance of evidence, exhibits and document from my complaint, that was cleansed from the report.

I have attached a July 14, 2023 incident in which Ms. Okragly caught interfering with visitation and parent-child contact, MCA 45-5631 retaliates with a false swearing after Sebastian Keitel shows up with the police to enforce visitation.  The evidence is 4 video recordings, AO's text message to pick up the minor child at 4:20 pm, and when the police escort Sebastian to the house, AO files another false police report - -all of AO's criminal actions are captured on video.

I will provide all videos, evidence and exhibit within 24 hours of your call to me and appointment of your senior deputy to review all evidence. I filed a complaint with you and your office on December 14, 2023 and never heard back from you to mitigate my damages. I hope to receive a phone call from you Monday, October 28, 2024 by 3:00 PM est..

GOVERN YOURSELF ACCORDINGLY!

*/s/Frederick J. Keitel, III*

Frederick J. ("Rick") Keitel, III

_____

FREDERICK J. KEITEL, III

STATE OF FLORIDA
COUNTY OF SUMTER

Before me, the undersigned authority, personally appeared Frederick J. Keitel, III, who produced a passport as identification and who being duly sworn deposes and says that the Affidavit hereto is true and correct to the best of my knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me this __25__ day of OCTOBER   2024.

_____
NOTARY PUBLIC, State of Florida
At Large

___Lisa Graddy_____
Print Name

___HH 094439_____
Commission No.

My Commission expires:

LISA M. GRADDY
Commission # HH 094439
Expires February 17, 2025
Bonded Thru Budget Notary Services

**EXHIBIT "3"**

Frederick J. Keitel, III
P.O. Box 3243
Palm Beach, FL 33480
Pro Se Appellant
(561) 310-6864
rickkeitel@aol.com

**MONTANA THIRTEENTH JUDICIAL DISTRICT COURT**

**COUNTY OF YELLOWSTONE**

AVANLEE OKRAGLY

**JUDGE FEHR**

     Petitioner/Appellee,     **CAUSE NO. DR 56-2023-1231**

**MOTION FOR RULE 35 INDEPENDENT
EVALUATION OF AVANLEE OKRAGLY
AND BRIEF IN SUPPORT**

vs.

FREDERICK J. KEITEL, III

     Respondent/Appellant.

COMES NOW, Fredrick J. Keitel, III, pro se, ("Appellant" or "Keitel") and respectfully

files Motion for Rule 35 Independent Evaluation of Avanlee Okragly and Brief in Support

and for the following reasons:

Appellant has shown "good cause that" Appellee, Avanlee Okragly ("Appellee" or

"Okragly"), has a long history of lying, false swearing and fraudulent allegations,

unresolved mental health issues "at the center of this case" that are having a negative

impact, affecting the minor child A.M.O.K., that requires immediate investigation.

1    Appellee has exhibited the same narcissistic abusive behavior towards her father

2    Bryan Okragly, (see exhibit "1"), Sebastian Keitel, Ashely Zachem, Rick Keitel and Lori

3    Wurtz, who have all filed sworn affidavits, while holding the minor child hostage.  The

4    affidavits all swear under oath that Petitioner Okragly shows signs of being mentally

5    unstable, narcissistic, disrespectful, screams, swears, including using the F-word in

6    public while holding the minor child as a hostage, using and weaponizing him against

7    the grandfather, Bryan Okragly, the father Sebastian Keitel (and others), in exchange

8    for money and support.

9    According to Bryan Okragly's March 17, 2024 sworn affidavit, Avanlee Okragly

10    verbally attacked her father in public, embarrassing him, swearing at him, using the F

11    word in front of everyone in a public restaurant because she didn't get her way (Exhibit

12    "1").

13    Appellee punished her own father, the baby's grandfather, by cutting off all contact

14    with for as long as 11 months, (exactly like Sebastian), because Bryan Okragly told her

15    no.  Ms. Okragly has a narcissistic personality disorder, is a control freak, attacks

16    anyone who disagrees with her, or says no to her, since she was a child (see exhibit "1"

17    Bryan Okragly's Affidavit in Support of Petition to Establish Grandparent Visitation With

18    Minor Child, filed March 8, 2024).   **Bryan Okragly's Affidavit:**

19    5. "My daughter, the Petitioner, Avanlee, is now 33 years old.
20    6. From when Avanlee was in Jr high to today a pattern has emerged. If I told her "No",
21    she has a fit and cuts off communication with me.
22    7. These periods of her not communicating with me lasted anywhere from two weeks to
23    11 months. This cutting off communication by Avanlee happened approximately 6 to 8
24    times over the course of her life from junior high to today.
25    8. It seems to me that when she would choose to come back into my life, it would be

2

when she needed something from me. Most often it was money.

9. Often times when she would ask me for money, she would be dishonest and say she needed it for a particular thing. Later, I would find out it was for something totally different.

10. For instance, one time she asked for money for rent and ended up spending it on a summer in Montauk. Another time she said she needed money for a doctor to treat a nasal infection. She ended up spending it on something else.

11. After she got pregnant, she wanted to borrow money for legal action against the baby's father, Respondent Keitel. When I told her no, she was rude to me and abruptly got up and left the restaurant. Later, I felt sympathy, and I ended up giving her money as a loan. I told her it was not to fight Keitel, but it was for the baby's needs. I told Avanlee that I felt she should do everything she could to allow AMO to have a relationship with his father, provided he was found to be fit".

12. "Avanlee decided to move back from New York City towards the end of her pregnancy. She asked me if she and her mother could host a baby shower at our house. I told her that she would have to ask my wife, Kim. She never asked Kim, . . ." Kim told Avanlee, "I would like to have the house to myself Friday . . . to myself to prepare for the party." 30 to 35 woman were invited."

13. Avanlee got extremely annoyed, she took me into the bedroom. **She swore and pitched a disrespectful fit in the privacy of the bedroom away from Kim**.

14. The baby shower went forward as planned. Avanlee left our house and started a period of no communication. **Because of her disrespect, I held her accountable and told her that she owed Kim and me an apology**. When she was ready to apologize, our door was open we would love to sit down and solve the issue.

15. **Soon thereafter AMO was born. Even though Avanlee was not speaking to me,** I called and talked to her on the phone and told her we would come up and see the baby at the hospital. Kim and I met my dad, his wife, my mom, my sister and we all went up to the hospital to see the baby. . .

16. **After that day, the period of no communication resumed for a total of 11 months.** She did finally come to my front door. . . she asked to meet me her and go to lunch.                                                          17. I met her and AMO for lunch thinking that it was just going to be a pleasant lunch together, but **she verbally attacked me.** Bringing up the whole situation that I thought we solved the day before at my house. **She embarrassed me in public, saying the F word in front of everyone more than once. I told her that I did not want her using her baby as a pawn to hurt me and keep him from me.**

18. I was very hurt and upset. But I decided to just drop it and put it behind us so that I could have a relationship with my grandson.

19. "After the 11-month silent treatment ended, we began a relationship with Avanlee

21. At the end of January [2024], my sister Courtney, her husband, Jamie, and my mother came to town from Missouri.

22. The day of the family get together . . .

23. When Avanlee arrived at our house at 6 o'clock, she obviously was upset. **"She**

3

1  began to complain and act disrespectfully". . . ."Avanlee . . acted mad and
2  **grabbed a second bottle of wine, shoved it at Kim and demanded "open this!"** . . .
3  Avanlee got up to go to the garage to speak with me privately. **She told me, "We need**
4  **to talk alone!" I told her to stop being disrespectful, . . .She refused, went into the**
5  **house, scooped up AMO, and said she was leaving.**
6  24. **Again, she again cut off communication.** She also took me out of the family
7  group chat where I would get daily photos and videos of AMO.
8  25. The next day was the Superbowl. I asked her again if she would like to bring AMO
9  over because I was free. She ended up responding by telling me that if I want to see
10  AMO from here forward, I will have to come to my ex-wife's house to do
11  so.                                                                              26. I feel
12  that I cannot build a relationship like the one I envision with my grandchild by
13  occasionally imposing on my ex-wife and her husband to see him. I would like to be
14  able to see him one on one, at my house so that we can build a loving relationship. . . . I
15  do not believe that I can build this kind of relationship at my ex-wife's house.
16  Additionally, it is uncomfortable for Kim to have to go to my ex-wife's house to see AMO.
17  27.I don't think it's fair that we are subjected to these rules in order to see AMO. **28.I**
18  **have come to realize that in order to see my grandchild on a consistent basis for**
19  **the rest of his childhood. I have to get a grandparent visitation plan in place. If I**
20  **don't go to court and get a plan in place, whenever Avanlee decides she does not**
21  **want me to see him, I will likely miss years of my grandson's life.**
22  ___29. "I will not allow her to be dishonest, manipulate, or disrespect my wife and me___
23  ___when it comes to this matter with my grandchild. In the past, I have tried to___
24  ___believe that she would change as she grew older, but it is now clear to me that___
25  ___this is who she is. I can't let it come between myself and AMO".___

26  ___30. "Avenlee punishes me with cutting off contact when I tell her no or___
27  ___when she does not get her way. I can't let her hinder my relationship with___
28  ___AMO".___

29  **FREDERICK J. KEITEL, III'S AFFIDAVIT IN SUPPORT OF RULE 59 MOTION FOR**
30  **NEW TRIAL AND RULE 60(b) ALTER AND AMEND JUDGMEMT BASED ON FRAUD**
31  **[attached and incorporated in 60(b) motion filed with the court]**

32       "Ashley Zachem, Lori Wurtz and Sebastian Keitel have all filed sworn affidavits
33       that Avanlee is verbally, emotionally and psychologically abusive to minor child
34       and Sebastian and that they all fear for the safety of minor child and Sebastian in
35       Aug.  2023, 2-3 weeks prior to Avanlee's false and fraudulent OOP filed as
36       retaliation against Respondent for his criminal complaint and without evidence".

37       **See Ashley Zachem's Sworn Affidavit notarized, dated August 23, 2023:**

38  para 25: **"I believe that Avanlee is capable of physical harm to the baby to blame**
39  **Sebastian**"
40  Para. 26: unless and until this court switches custody and orders supervised visitation
41  for the mother . . . that the baby will be in danger of continued emotional
42  abuse";

4

1   para 28., drunk phone calls to abuse Sebastian on multiple occasions;
2   Para. 29: abusive behavior  . . grabbed the minor child out of Sebastian's hand . .
3   para. 30 to exert power over Sebastian;
4   Para. 37 **Avanlee is mentally unbalanced, who uses their child to taut and abuse**
5   **Sebastian;**
6   Para. 43 Avanlee threatens Sebastian's personal space, causing him to fear Avanlee,
7   and I'm afraid for the baby and Sebastian's safety;;
8   Para 65; I have seen Sebastian's father, Mr. Keitel's previous affidavit regarding Mr.
9   Stockdale intentionally lying to Mr. Keitel, Sebastian and myself . . . before the
10  temporary hearing on parenting, and I agree with Mr. Keitel's affidavits and allegations
11  under oath;
12  Para. 66, I personally witnessed Steven Stockdale lie to Sebastian, myself and
13  Sebastian'sfather"
14  Para. 93: I have seen, read and observed Mr. Keitel's allegations about Avanlee, Katie
15  Heller and Steven Stockdale, and they are all true to the best of my knowledge".

16  <u>**See Lori Wurtz's sworn affidavit notarized, dated August 14, 2023:**</u>

17  Para 2: I have consistently driven Sebastian Keitel and Ashley Zachem to every pick up
18  and drop off;                                                                    para.
19  3; **I have firsthand witnessed the shocking abuse by Avanlee Okragly to**
20  **Sebastian Keitel and Ashley Zachem on a constant basis;**
21  6 **Avanlee, has screamed at me with such an abusive tone that I was fearful of**
22  **being attacked;**
23  Para. 9**, I have witnessed Avanlee shouting at Ashley and suddenly barged over**
24  **to the car, aggressively swing open my right vehicle door, and began screaming**
25  **verbally abusing Sebastian";**                                              On
26  July 14, 2023 I drove Sebastian to pick up his son, and no one was home at 4:00 pm. . .
27  Sebastian called the police Department to file a complaint";
28  Para 11;  Avanlee showed up around 4:45 pm on July 14th and the police went up to the
29  house, but she returned to turn  over A.M.O.K. to Sebastian;
30  Para. 12:  The police officer told Sebastian there was nothing they could done . . except
31  file a police report.
32  Para. 13: I was shocked that Mr. Keitel traveled 14 hours each way, for thousands of
33  dollar and Avanlee refused visitation . . ."
34  Para. On August 4, 2023, I drove to Bozeman to pick up Sebastian para. 15: I drove him
35  to Billings  . . ."
36  Para. 16: Sebastian was denied visitation since July 2, 2023;
37  Para. 18 Sebastian went to the Sheriff's Department, filed a report . . never got visitation
38  against . . . August 4-6, 2023".
39  Para.  Avanlee wants to punish Sebastian,
40  Para:  **Avanlee's actions are not the behavior of someone that seemed frightened .**
41  **Para. 24: Avanlee's behavior appears malicious and demonstrates little respect**
42  **for a father that does everything in his power to be active and caring in his son's**
43  **life . . .".**
44  **Para. 25   as an independent third party, this is an abusive situation, abuse of**
45  **power,**

1 Para. 30 "I have personally witnessed. . . and heard almost all the telephone
2 conversations where she is extremely abusive to Sebastian'.;
3 Para 31: On August 4ᵗʰ Avanlee threatened Sebastian . . "I am going to send someone
4 to watch you! You'll  be watched the whole time".;
5 **Para. 35 "I believe the court should assign guardian ad litem to protect A.M.O.K.'s**
6 **best interest**

7 ## Sebastian Keitel's Sworn Affidavit August 2023

8 Para. 3:  **I have read the affidavit of Ashley Zachem, Lori Wurtz and my father**
9 **Frederick J. Keitel, III (filed in Motion(s) to Intervene) and I agree with all their**
10 **allegations**
11 Para. 7: **Avanlee is emotionally unstable,** and both myself and girlfriend Ashley
12 Zachem are afraid of her and that she might harm us".;
13 Para.  Avanlee's stalking got so bad that we signed a stalking complaint in Gallatin
14 County for fear of her motives
15 **Para. 10: "The Court should order and appoint a Guardium ad litem immediately**
16 **protect my son from his abusive mother Avanlee and prevent her from leaving the**
17 **state".**
18 Para. 11. **"I believe Avanlee is dangerous, capable of harming/hurting our son to**
19 **blame it on me".**

20 Para. 13. I have honest fears that she will do anything, say anything to hurt me, my
21 girlfriend Ashley and or my son".

22 Para. 14: **"I believe Avanlee has mental health issues".**

23 Para. 15: "I am aware that after all the information, threats, by Avanlee and verbally and
24 emotionally abuse toward me, Ashley and the baby, and my father was correct and had
25 a duty to report Avanlee to Montana Children and family Services".

26 Para. 16; "I spoke with them and expressed my concerns about Avanlee's abusive
27 nature . .
28 Para. 17: "I have read my father's letter to the court dated April 10, 2023, and I agree
29 that Avanlee intentionally lied in her statements to the police, tampered with, destroyed
30 sections of the doorbell video and obstructed the investigations".

31 **Para. 19: I'm have very serious concerns for the health and emotional well-being**
32 **of my son, due to Avanlee's actions. . . for fear she would harm him and continue**
33 **the abuse".**
34 Para. I have personally seen, read and observed my father's allegation about Avanlee,
35 Katie Heller, Steven Stockdale. . . and they are all true to the best of my knowledge".
36 Para. 87: " I recently found out  . . my lawyer and Avanlee had an affair. ."
37 Para. 88: "Avanlee has continuously threatened me on number occasions, and I'm
38 afraid she'll sign false allegations against me".
39 Para. 89: I have spoken with a lawyer and law enforcement . . who advised me to sign a

1 criminal complaint Avanlee for parental interference under Montana Criminal Code".
2 Para 91: **"I continuously fear for my safety and the safety of my son . .".**

3 **Sebastian Keitel's sworn affidavit September 25, 2023 Motion [Exhibit "1"]:**

4 "Avanlee is mentally unstable, a danger to the minor child.
5 Avanlee had denied me 40 days visitation since June 4, 2023
6 Avanlee fled Montana to avoid service of the Orders of Protection.  She refused to allow
7 Sebastian court ordered visitation",
8 "Avanlee fled the state without consent by the father, knowingly and purposely without
9 lawful authority, secretly holding the minor child in isolation and refusing to divulge the
10 location or whereabouts of the minor child, while continuously lying to the father".
11 **"Avanlee is mentally unstable and continuously make false and fraudulent**
12 **allegations without any basis in fact or law".**
13 **"Avanlee in a pathological liar, who needs serious psychiatric help".**
14 "Avanlee was retaliating against me and my father for filing criminal complaints against
15 her, by  falsely invoking  my father's name to prejudice the Court after my father filed a
16 letter with Judge Harris dated April 10, 2023 questioning his judicial conduct and
17 outlining Avanlee's criminal conduct, proving beyond a reasonable doubt that Avanlee
18 and Katie Heller conspired to tamper with, destroy evidence obstruct justice  and
19 commit perjury and suborn perjury on April 3, 2023 (which is currently under
20 investigation)".
21 **FREDERICK J. KEITEL, III, SWORN AFFIDAVIT, MAY 3, 2023 (SEE MOTION TO**
22 **INTERVENE HEREIN AS AN EXHIBIT AND MONTANA SUPREME COURT BRIEF**
23 "I read Ms. Okragly testimony January 10, 2023, and she repeatedly lied about me.
24 My text messages to Ms. Okragly dated November 23, 2021, will prove that she lied
25 about me. . . to extort money. .
26 I was in touch with Ms. Okragly's Father, Bryan "Mike" Okragly since December 2021 to
27 try and reduce any tense, as per our emails. Mike Okragly and I had a good
28 relationship.  Any allegations by Ms. Okragly that I threatened her family in any way, are
29 false without any basis in fact
30 Judge Harris either knew at all times, or should have known from the emails that
31 Respondent Rick and Sebastian Keitel repeatedly stated and notified Okragly in one
32 form or another that petitioner Avanlee Okragly

33 "if you continue to violate court orders, deny visitation, parental rights be verbally,
34 emotional and psychologically abusive to the minor child and father, give false
35 information to the child's pediatrician to interference with visitation, parental rights
36 and flee Montana with the minor child, A.M.O.K., Sebastian will be forced to go
37 for sole custody and supervised visitation and has already request a Guardium
38 ad litem and mediation

39 **BACKGROUND**

40    Avanlee Okragly ("Okragly") is a 33-year-old, narcissist, mentally unbalanced
41 pathological liar, with a history of stalking wealthy guys, who had a one night stand with
42 Sebastian Keitel. . .. then held the child hostage for months, refusing visitation, while
43 suing for money.

1   Okragly has repeatedly lied, made over 50 false and fraudulent sworn statements in
2   affidavits, testimony and order of protection ("OOP"), detailed herein below..

3   **JUDGE HARRIS' CONDONING CRIMINAL CONDUCT BY HELLER AND OKRAGLY**

4   "On September 25, 2023, Judge Harris obstructed justice, interfered with an on-going
5   investigation. . . knowing that Mr. Okragly's playing her doorbell ring video for 1 minute,
6   20 seconds, proving Ms. Heller intentionally suborn perjury and proffered false and
7   fraudulent information to Judge Harris" [April 3, 2023]
8
9   Appellant Frederick "Rick" Keitel believes based on Judge Harris bias and prejudice,

10   that he would subject the minor child to abuse by his mother, Appellee Okragly, rather

11   than holding her responsible for her conduct, because to do so, would be to admit that

12   Bryan Okragly, Sebastian Keitel, Rick Keitel Ashley Zachem and Lori Wurtz were all

13   truthful and Avanlee Okragly needs psychological and/or psychiatric help.

14              **Avanlee's father best describes her personality**
15   **16. After that day, the period of no communication resumed for a total of 11**
16   **months**. . . she asked to meet me her and go to lunch.
17   17. I met her and AMO for lunch thinking that it was just going to be a pleasant lunch
18   together, but **she verbally attacked me. . . She embarrassed me in public, saying**
19   **the F word in front of everyone more than once. I told her that I did not want her**
20   **using her baby as a pawn to hurt me and keep him from**
21   **me.**
22   **29. "I will not allow her to be dishonest, manipulate, or disrespect my wife and me**
23   **when it comes to this matter with my grandchild. In the past, I have tried to believe**
24   **that she would change as she grew older, but it is now clear to me that this is who**
25   **she is. I can't let it come between myself and AMO".**
26
27   Avanlee' withholds A.M.O.K. hostage from her own father for months as punishment,

28   then forces him to visit at his ex-wives house, where he doesn't feel safe, same facts as

29   Sebastian, who's forced to pick up A.M.O.K. at the mothers' house, by court order.

30   There is credible evidence of domestic abuse, hospitalization and/or treatment by

31   Avanlee's mother, Ms. Tracy for domestic abuse against family members.

32              **LEGAL ANALYSIS BRIEF**

33   Under Mont. Civ. P. Rule 35, when a party's mental or physical condition is "in

34   controversy," another party may request that the court order an examination. In the

35   instant case, there are five (5) sworn affidavits, overwhelming substantial evidence,

8

1    documenting and detailing Appellee Avanlee Okragly narcissistic behavior and mental

2    health issues, abuse, holding the minor child hostage from his father, Sebastian, and

3    both grandfather's through lies and manipulation.  Rule 35 is warranted. Avanlee needs

4    an independent evaluation for serious mental illness issues for the protection of the

5    child. Appellant has shown good cause, detailing Avanlee Okragly's mental illness

6    issues at issue and the center of this case, including **new allegations against Avanlee**

7    **and her own mother, Ms. Tracy, who was hospitalized/treated for domestic abuse**

8    **against her own family**.  Avanlee's false allegations without any evidence began when

9    Avanlee perjured herself in the July 2022 petitioner for custody, continues lying in her

10   September 12th OOP's and October 31st testimony. The only reason she has been able

11   to continue her abuse, is Judge Harris's protection of his protégés, Katie Heller.

12   *Stewart v. Rice*, 2013 MT 55, ¶ 31, 369 Mont. 203, 296 P.3d 1174, has little relevance.
13   However.  "[A] compelled medical exam is the most intrusive and, therefore, the most
14   limited discovery tool." Simms, 2003 MT 89, ¶ 29 (citing *Schlagenhauf v. Holder*, 379
15   U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)). Accordingly, this Court prescribes a
16   strict balancing test before a defendant's demand for a Rule 35 medical examination
17   can be granted. In Montana, the request for an ordered independent medical
18   examination must be weighed against the right to privacy provided for at Article II,
19   Section 10 of the Montana Constitution and the right to safety, health and happiness
20   provided for at Article II, Section 3 of the Montana Constitution. Montana Rule of Civil
21   Procedure 35 states in relevant part: When the mental or physical condition . . . of a
22   party . . . is in controversy, the court . .may order the party to submit to a physical or
23   mental examination . . .. The order may be made only on motion for good cause shown .
24   . . Mont. R. Civ. P. 35(a).

25      Appellant's motion is based on good cause, based on newly discovered evidence

26   and video recording demonstrating that Avanlee's mental health is/has been center of

27   case, at issue. Avanlee's false *ex-parte* emails to Judge Kolar in violation of Keitel's due

28   process constitutional rights to a fair hearing, as well as Judge Harris' quashing her

29   subpoena duces tecum. Avanlee's pathological lying, filing false and fraudulent sworn

1   statements to law enforcement, when she knew they were false, including false

2   allegations of threats of bodily harm to her and the minor child (see September 2, 2023,

3   without any evidence and false police reports raised serious mental health issues about

4   Avanlee, all warranting  a Rule 35 evaluation.  Keitel's allegations are similar to

5   Avanlee's father, Bryan Okragly's sworn affidavit, and the affidavit of Sebastian Keitel

6   and 3 others, all describing Avanlee's mental illness.

7                                                   **<u>CONCLUSION</u>**

8           In light of the overwhelming substantial evidence, sworn affidavits detailing Avanlee

9   Okragly's narcissistic behavior, mental health issues, screaming obscenities at her

10   father Bryan Okragly, holding the minor child hostage from her father, Sebastian and his

11   family, to prevent bolding.  I request that this Judge Fehr, immediately order a Rule 35

12   Independent Evaluation of Avanlee to protect the safety of the minor child, and vacate

13   all orders signed by Judge Harris against Sebastian Keitel based on fraud.

14                                       **CERTIFICATE OF SERVICE**

15   This is to certify that on this 12th day of August  2024, a true copy of the foregoing was
16   duly served via filing with the Clerk of Court, Yellowstone District Court, DC-
17   caseFiling@yellowstonecountymt.gov, Judge Donald Harris via <u>Donald.Harris@mt.gov</u>
18   and email service  to all counsel of record Joseph Raffiani, <u>joe@raffianilaw.com,</u>

19                                             **<u>EXHIBIT "1"</u>**
20                                 **Bryan Okragly's Affidavit-Petition**
21
22           **Third-Party Petitioner's Affidavit in Support of Petition to Establish**
23                          **Grandparent Visitation with Minor Child**
24

FILED
03/08/2024
Terry Halpin
CLERK
Yellowstone County District Cour
STATE OF MONTANA
By: Ronda Duncan
DR-56-2022-0000627-PP
Harris, Donald
140.00

Lyndon Scheveck
Scheveck & Salminen Law, PLLC.
3225 1st Ave N
Billings, MT 59101
lyndon@schevecklaw.com
(406) 894-2121

Attorney for Bryan Okragly

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| **IN RE THE PARENTING OF:** | Case No.: DR-56-2022-627 |
| **A.M.O.,** | |
| **A Minor Child,** | Judge: Donald Harris |
| **AVANLEE CHRISTINE OKRAGLY,** | |
| Petitioner, | **THIRD-PARTY PETITIONER'S RULE 24, M.R.CIV.P., MOTION TO INTERVENE AND BRIEF IN SUPPORT** |
| -vs- | |
| **SEBASTIAN ALEXANDER KEITEL,** | |
| Respondent. | |

**COMES NOW,** the Third-Party Petitioner, Bryan Okragly, acting by and through his attorney of record, Lyndon Scheveck, and respectfully moves this Court, pursuant to Rule 24(a), M.R.Civ.P., for an order allowing him to intervene in this action as a third-party petitioner. This *Motion* is supported by a brief set forth below, which states the grounds for intervention. This motion is also accompanied by the proposed *Petition* and *Affidavit*, which sets forth the claim for which intervention is sought.

## INTRODUCTION

Bryan Okragly, as a grandparent, is seeking grandparent-grandchild contact, and is entitled to intervention of right under Rule 24(a), M.R.Civ.P. Okrgly's *Petition*, which sets out his claim to grandparent-grandchild contact, is attached hereto as Exhibit A.

## FACTUAL BACKGROUND

Bryan Okragly is a maternal grandparent of AMO. Avanlee Okragly, Petitioner, is Bryan Okragly's natural daughter. From when Avonlee was in Jr high to today a pattern

has emerged. If Bryan told her "no", she has a fit and cuts off communication with him. These periods of her not communicating with Bryan lasted anywhere from 2 weeks to eleven (11) months.  When Avanlee would choose to come back into Bryan's life, it would be when she needed something from him. Most often it was money.  This cutting off communication by Avanlee has happened approximately 6 to 8 times over the course of her life from junior high to today.

When Avanlee moved back to Billings from New York City while pregnant with AMO, she asked Bryan if her baby shower could be hosted at his residence he shares with his wife, Kim. Bryan and Kim agreed, and Kim prepared the house and food for the baby shower on a Saturday after working all day the Friday before. In order to prepare for the baby shower, Kim requested the house be vacant so she could focus on preparations. This upset Avanlee and after the baby shower concluded Saturday, Avanlee ended communication with Bryan.

Shortly after the baby shower, AMO was born and Avanlee communicated by phone with Bryan.  Bryan, Kim, and some of Bryan's family went to the hospital to meet AMO.  After this Avanlee and Bryan met for lunch, which did not go amicably.  Avanlee ended up causing a scene at the restaurant using profanities and when she and AMO left the restaurant, Avanlee did not communicate with Bryan for the following eleven (11) months.

Bryan, Avanlee and AMO's contact resumed and Avanlee gave Bryan a list of what needed to be purchased to have while AMO was at his house visiting.  All of the items, including a car seat, diapers, stroller, wipes, etc., were purchased in anticipation of having visitation with AMO.  Bryan and Kim occasionally babysat AMO and were able to begin forming their bond with him.

Toward the end of January 2024, Bryan hosted a gathering of family at his residence including Avanlee and AMO. Avanlee became disrespectful toward Bryan and his wife again during this event. Avanlee again cut off communication with Bryan because the gathering did not include dinner, although there was plenty of food for everyone and AMO at the gathering.  Avanlee also removed Bryan from a family chat wherein he would receive daily photos and videos of AMO.  After a few days Bryan attempted to resume communication with Avanlee, which Avanlee eventually responded to.  Bryan asked if he could babysit AMO during Superbowl. Avanlee responded that if Bryan wanted to see AMO going forward, that he would have to do so at his ex-wife's

home.

Bryan has established a loving and bonded relationship with AMO.  Bryan firmly believes that it is in the best interests of AMO to have continuing grandparent-grandchild contact.  Bryan also realizes that in order to secure consistent contact with AMO, he will need a Court Order to do so.

## DISCUSSION

### I.  Standard for Intervention.

Intervention is governed by Rule 24, M.R.Civ.P. Rule 24 provides for types of intervention, intervention of right and permissive intervention. *Id.* This rule is a "discretionary judicial efficiency rule used to avoid delay, circuity, and multiplicity of suits." *Grenfell v. Duffy* (1982), 198 Mont. 90, 95, 643 P.2d 1184, 1187.

Rule 24(a), M.R.Civ.P., provides:

> (a)  Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1)  is given an unconditional right to intervene by statute; or
> (2)  claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless the existing parties adequately represent that interest.
> *Rule 24(a), M.R.Civ.P.*

Absent an unconditional right to intervene by statute, "an application for intervention as a matter of right must: (1) be timely; (2) show an interest in the subject matter of the action; (3) show that the protection of the interest may be impaired by the disposition of the action; and (4) show that the interest is not adequately represented by an existing party. *Jas, Inc. v. Eisele*, 2014 MT 112, ¶ 26, 374 Mont. 533, 323 P.3d 891, citing *Estate of Schwenke v. Becktold* (1992), 252 Mont. 127, 131, 827 P.2d 808, 811.

Rule 24 (b) provides (in relevant part):

> (b) Permissive Intervention.
> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by statue; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.
> *Rule 24(b), M.R.Civ.P.*

Rule 24 (c) requires any motion to intervene to be served on the parties as required

by Rule 5, to state the grounds for intervention, and be accompanied by a pleading that sets out the claim for which intervention is sought.

## II. The Motion to Intervene is Timely.

A "motion to intervene must be timely regardless of whether intervention is sought as or right under 24(a) or my permission under 24(b)." *Schwenke*, 252 Mont. At 133, 827 P.2d at 812. Timeliness "is determined from the particular circumstances of the action." *Connell v. State Dept. of Social and Rehab. Serv.*, 2003 MT 361, 1f 21, 319 Mont. 69, 81 P.3d 1279. While the Montana Supreme Court has noted that Rule 24 provides no criteria for determining when a motion to intervene is timely, it has looked to the following factors:

> (1)    The length of time the intervenor knew or should have known of its interest in the case before moving to intervene;
> (2)    The prejudice to the other parties, if intervention is granted, resulting from the intervenor's delay in making the motion to intervene;
> (3)    The prejudice to the intervenor if the motion is denied; and
> (4)    Any unusual circumstances mitigating for or against a determination that the application is timely.
> *In re the Adoption of CCLB*, 2001 MT 66,1f 24, 305 Mont. 22, 22 P.3d 646.

This Motion is timely. Bryan has moved swiftly to file the present *Motion*. There is no prejudice to the other parties as:

(1) Bryan was previously allowed to have regular visitation with AMO, and it was recently restricted by Avanlee and now includes unnecessary terms under which visitation can occur.

(2) The amount of visitation sought by Bryan does not prejudice either parent as Bryan only wishes to maintain a continuous bond and relationship with AMO as a grandparent would normally expect to receive.

(3) Bryan would be prejudiced if his intervention is denied in that Avanlee will likely only allow visitation when she needs something and will not allow regular visitation, which is not in the child's best interests.

(4) The only circumstances causing Bryan to intervene at this point, is Avanlee's inconsistent agreements to visitation without merit. Bryan had no reason to believe he was going to repeatedly be denied visitation or required to have restricted visitation with AMO.

The Court should find the present *Motion* timely.

**III.  Bryan Okragly Has an Intervention of Right.**

Bryan Okragly has an intervention of right under both subsections (1) and (2) above.

**A.  Unconditional Right to Intervene by Statute.**

Bryan Okragly has an unconditional right under §40-9-102, MCA to file a petition seeking grandparent-grandchild contact. Pursuant to §40-9-102, MCA, grandparents may seek reasonable right to have contact with their grandchildren:

> (4)  Grandparent-grandchild contact granted under this section over the objections of a fit parent may be granted only upon a finding by the court, based upon clear and convincing evidence, that the contact with the grandparent would be in the best interest of the child and that the presumption in favor of the parent's wishes has been rebutted. *§40-9-102(4), MCA.*

As provided by subsection 4 above, a Court may grant a grandparent visitation rights even if the parent(s) object, by simply showing that grandparent-grandchild contact would be in the best interests of the child.  The Third-Party Petitioner intends to file an *Affidavit* (Exhibit B), stating that it is in the child's best interests for him to have contact with AMO.

**B.  Unconditional Right by Interest.**

Bryan Okragly has an interest in the transaction, which is the subject of this action, namely visitation in the best interest of AMO.  Disposing of this intervening action made by the grandparent impairs his ability to protect his interests in visitation with AMO by rendering him without a forum to advance his rights granted by §40-9-102, MCA. None of the existing parties adequately represent his interests.

**IV.  Permissive Intervention.**

§40-4-211 (5), MCA, grants Bryan Okragly, at the least, a conditional right to intervene. His claim for grandparent-grandchild contact shares the common questions of law and fact with the present action, namely those involved in the best interests of the child standard. The Court should exercise its discretion to allow intervention and avoid delay and multiplicity of cases if Bryan Okragly is required to file a separate action.

/

/

/

## CONCLUSION

**WHEREFORE,** the Third-Party Petitioner, Bryan Okragly, requests a hearing be set on the matter, so that the Court may decide what is in the best interest of the minor child regarding the intervention in this matter by a maternal grandparent.

DATED this 7 day of March 2024.

Lyndon Scheveck
Attorney for Bryan Okragly

Bryan Okragly

## CERTIFICATE OF SERVICE

The undersigned certifies on this 5 day of March 2024, a true and correct copy of the foregoing Motion and Brief in Support was served electronically and by mail upon the following:

Joseph Raffiani, Attorney for Petitioner
303 N. Broadway, Ste. 705
Billings, MT 59101

Caitlin Pabst, Attorney for Respondent
113 E Oak St, Ste. 2d
Bozeman, MT 59715

Lyndon Scheveck
Attorney for Bryan Okragly

1  Lyndon Scheveck
   Scheveck & Salminen Law, PLLC.
2  3225 1st Ave N
   Billings, MT 59101
3  lyndon@schevecklaw.com
   (406) 894-2121
4
   Attorney for Third-Party Petitioner
5

6
                MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
7                          YELLOWSTONE COUNTY

8

9  **IN RE THE PARENTING OF:**          Case No.: DR-56-2022-627

10 **A.M.O.,**

11 **A Minor Child,**                   Judge: Donald Harris

12 **AVANLEE CHRISTINE OKRAGLY,**
                                        **THIRD-PARTY PETITIONER'S**
13 Petitioner,                          **PETITION TO ESTABLISH**
                                        **GRANDPARENT VISITATION WITH**
14 -vs-                                 **MINOR CHILD**

15 **SEBASTIAN ALEXANDER KEITEL,**

16

17 Respondent.

18

19 **BRYAN M. OKRAGLY,**

20 Third-Party Petitioner,

21

22     **COMES NOW** the Third-Party Petitioner, Brian M. Okragly, acting by and through his

23 attorney of record, Lyndon Scheveck, and hereby petitions this Court to establish visitation rights

24 with the minor child AMO, pursuant to §40-9-102, MCA.  Filed herewith is the Affidavit of the

25
   Third-Party Petitioner in support of his *Motion*.
26

27                          **BACKGROUND**

28     Avanlee Okragly, Petitioner, is Bryan Okragly's natural daughter. Bryan Okragly is

1 | P a g e

a maternal grandparent of AMO.

From when Avonlee was in Jr high to today a pattern has emerged. If Bryan told her "No", she has a fit and cuts off communication with him. These periods of her not communicating with Bryan lasted anywhere from 2 weeks to eleven (11) months. When Avanlee would choose to come back into Bryan's life, it would be when she needed something from him. Most often it was money. This cutting off communication by Avanlee happened approximately 6 to 8 times over the course of her life from junior high to today. When Avanlee moved back to Billings from New York City while pregnant with AMO, she asked Bryan if her baby shower could be hosted at his residence he shares with his wife, Kim. Bryan and Kim agreed, and Kim prepared the house and food for the baby shower on a Saturday after working all day the Friday before. In order to prepare for the baby shower, Kim requested the house be vacant so she could focus on preparations. This upset Avanlee and after the baby shower concluded Saturday, Avanlee ended communication with Bryan.

Shortly after the baby shower, AMO was born and Avanlee communicated by phone with Bryan. Bryan, Kim, and some of Bryan's family went to the hospital to meet AMO. After this Avanlee and Bryan met for lunch, which did not go amicably. Avanlee ended up causing a scene at the restaurant using profanities and when she and AMO left the restaurant, Avanlee did not communicate with Bryan for the following eleven (11) months.

Bryan, Avanlee and AMO's contact resumed and Avanlee gave Bryan a list of what needed to be purchased to have while AMO was at his house visiting. All of the items, including a car seat, diapers, stroller, wipes, etc., were purchased in anticipation of having visitation with AMO. Bryan and Kim occasionally babysat AMO and were able to begin forming their bond with him.

Toward the end of January 2024, Bryan hosted a gathering of family at his residence including Avanlee and AMO. Avanlee became disrespectful toward Bryan and his wife again during this event. Avanlee again cut off communication with Bryan because the gathering did not include dinner, although there was plenty of food for everyone and AMO at the gathering. Avanlee also removed Bryan from a family chat wherein he would receive daily photos and videos of AMO. After a few days Bryan attempted to resume communication with Avanlee, which Avanlee eventually responded to. Bryan asked if he could babysit AMO during Superbowl. Avanlee responded that if Bryan wanted to see AMO going forward, that he would have to do so at his ex-wife's home.

Bryan has established a loving and bonded relationship with AMO. Bryan firmly believes that it is in the best interests of AMO to have frequent grandparent-grandchild contact. Bryan also realizes that in order to secure consistent contact with AMO, he will need a Court Order to do so.

### BRIEF IN SUPPORT

The Third-Party Petitioner, a maternal grandparent, seeks to have contact and visitation with the minor child, AMO, age 20 months.  Pursuant to §40-9-102 (4), MCA, a grandparent may seek reasonable right to have contact with their grandchild(ren):

> (4)   Grandparent-grandchild contact granted under this section over the objections of a fit parent may be granted only upon a finding by the court, based upon clear and convincing evidence, that the contact with the grandparent would be in the best interest of the child and that the presumption in favor of the parent's wishes has been rebutted.

As provided by subsection 4 above, a Court may grant a grandparent visitation rights even if the parent(s) object, by simply showing that grandparent-grandchild contact would be in the best interests of the children. The Third-Party Petitioner has filed an Affidavit herewith, stating that it is in the child's best interests for him to have contact with AMO.

### CONCLUSION

**WHEREFORE,** the Third-Party Petitioner requests a hearing be set on the matter, so that the Court may decide what is in the best interest of the minor child regarding the visitation of the paternal grandparent.

DATED this 7 day of March 2024.

Lyndon Scheveck
Scheveck & Salminen Law Firm, PLLC
Attorney for Third-Party Petitioner

Bryan Okragly
Third-Party Petitioner

## CERTIFICATE OF SERVICE

The undersigned certifies on this 3 day of March 2024, a true and correct copy of the foregoing Petition and Brief in Support was served electronically and by mail upon the following:

Joseph Raffiani, Attorney for Petitioner
303 N. Broadway, Ste. 705
Billings, MT 59101

Caitlin Pabst, Attorney for Respondent
113 E Oak St, Ste. 2d
Bozeman, MT 59715

Lyndon Scheveck
Attorney for Third-Party Petitioner

1   Lyndon Scheveck
    Scheveck & Salminen Law, PLLC.
2   3225 1st Ave N
    Billings, MT 59101
3   lyndon@schevecklaw.com
4   (406) 894-2121

5   Attorney for Third-Party Petitioner

6

7           MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
8                        YELLOWSTONE COUNTY

9

10  **IN RE THE PARENTING OF:**          Case No.: DR-56-2022-627

11  **A.M.O.,**

12  **A Minor Child,**                    Judge: Donald Harris

13  **AVANLEE CHRISTINE OKRAGLY,**

14          Petitioner,                   **THIRD-PARTY PETITIONER'S**
                                          **AFFIDAVIT IN SUPPORT OF PETITION**
15          -vs-                          **TO ESTABLISH GRANDPARENT**
                                          **VISITATION WITH MINOR CHILD**
16  **SEBASTIAN ALEXANDER KEITEL,**

17

18          Respondent.

19

20  **BRYAN M. OKRAGLY,**

21          Third-Party Petitioner,

22

23

24  STATE OF MONTANA          )
                              : ss.
25  County of Yellowstone     )

26          I, Bryan M. Okragly, being first duly sworn, upon oath, deposes and says:

27

28  THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT
    VISITATION WITH MINOR CHILD - 1

                                                        **EXHIBIT**
                                                  tabbies*      B

1. I Third-Party Petitioner in the above action.

2. I am the natural father of the Petitioner, Avanlee Christine Okragly.

3. I am a maternal grandparent of AMO, who was born in June of 2022.

4. It is unknown if the Petitioner or Respondent objects to my Petition to Establish Grandparent Visitation. I anticipate the Petitioner objects as she has restricted my time with my grandson because she did not get what she wanted from me recently.

5. My daughter, the Petitioner, Avanlee, is now 33 years old.

6. From when Avanlee was in Jr high to today a pattern has emerged. If I told her "No", she has a fit and cuts off communication with me.

7. These periods of her not communicating with me lasted anywhere from two weeks to 11 months. This cutting off communication by Avanlee happened approximately 6 to 8 times over the course of her life from junior high to today.

8. It seems to me that when she would choose to come back into my life, it would be when she needed something from me. Most often it was money.

9. Often times when she would ask me for money, she would be dishonest and say she needed it for a particular thing. Later, I would find out it was for something totally different.

10. For instance, one time she asked for money for rent and ended up spending it on a summer in Montauk. Another time she said she needed money for a doctor to treat a nasal infection. She ended up spending it on something else.

11. After she got pregnant, she wanted to borrow money for legal action against the baby's father, Respondent Keitel. When I told her no, she was rude to me and abruptly got up and left the restaurant. Later, I felt sympathy, and I ended up giving her money as a loan. I told her it was not to fight Keitel, but it was for the baby's needs. I told Avanlee that I felt she should do everything she could to allow AMO to have a relationship with his father, povided he was found to be fit.

12. Avanlee decided to move back from New York City towards the end of her pregnancy. She asked me if she and her mother could host a baby shower at our house. I told her that she would have to ask my wife, Kim. She never asked Kim, I asked Kim and Kim agreed with one caveat. Kim had to work all day Friday out of the house, and then get the house and the 10-foot charcuterie board ready for the party. Kim wanted the house to herself Friday night to

THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT VISITATION WITH MINOR CHILD - 2

prepare. Kim asked that all the girls spend the night at their mother's Friday night. Avanlee would not agree to that. She questioned several times why it would be necessary to have Kim have the house to herself. I had plans to take all three girls to dinner that evening. Avanlee came over to our house a few days before and was talking about her sister spending the night at our house the night before the baby shower. Kim told Avanlee, "I would like to have the house to myself Friday night because I will have a lot of prep to do for the party. Your dad will take you guys out to eat that evening while I prepare. You and your siblings are welcome to spend any other night for the entire weekend, but Friday night I would like to have to myself to prepare for the party." 30 to 35 women were invited.

13.      Avanlee got extremely annoyed, she took me into the bedroom. She swore and pitched a disrespectful fit in the privacy of the bedroom away from Kim. We continued to hold our boundary, and no one spent the night that night. I ended up canceling taking the girls to dinner because Avanlee was continuing to be so disrespectful. I decided that because of Avanlee's disrespect I could not take the girls out for dinner that night and doing so would reward her bad behavior.

14.      The baby shower went forward as planned. Avanlee left our house and started a period of no communication. She felt she was owed an apology. Because of her disrespect, I held her accountable and told her that she owed Kim and me an apology. When she was ready to apologize, our door was open we would love to sit down and solve the issue.

15.      Soon thereafter AMO was born. Even though Avanlee was not speaking to me, I called and talked to her on the phone and told her we would come up and see the baby at the hospital. Kim and I met my dad, his wife, my mom, my sister and we all went up to the hospital to see the baby.

16.      After that day, the period of no communication resumed for a total of 11 months. She did finally come to my front door. We never really got an apology, but we did try to hash it out and we put the past behind us, and begin our relationship with her again. When she left our house that day, she asked to meet me her and go to lunch.

17.      I met her and AMO for lunch thinking that it was just going to be a pleasant lunch together, but she verbally attacked me. Bringing up the whole situation that I thought we solved the day before at my house. She embarrassed me in public, saying the F word in front of

THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT VISITATION WITH MINOR CHILD - 3

everyone more than once. I told her that I did not want her using her baby as a pawn to hurt me and keep him from me.

18.     I was very hurt and upset. But I decided to just drop it and put it behind us so that I could have a relationship with my grandson.

19.     After the 11 month silent treatment ended, we began a relationship with Avanlee and AMO. She sent us an email with a list of all the things that we should buy to have on hand while AMO was at our house. These things included a car seat, diapers, stroller, wipes, everything pertaining to caring for our grandson. We went out and bought those items and would occasionally babysit AMO. Avanlee would bring him over sometimes to visit as well.

20.     Typically, I would see AMO once a week to once every other week. The relationship seemed to be going well and we enjoyed having AMO and bonding with him.

21.     At the end of January, my sister Courtney, her husband, Jamie, and my mother came to town from Missouri. The night before they left town we invited them to over to our house for appetizers to enjoy an evening together. We invited Avanlee and AMO to join us as well.

22.     The day of the family get together Avanlee asked me if she could come at 3:30 and set up her work computer on our table and work until the get-together began. I asked Kim and Kim said that she was working. Kim was working from home that day and she didn't want Avanlee to come until six, and I was also working and would not be home until later than 3:30.

23.     When Avanlee arrived at our house at 6 o'clock, she obviously was upset. She began to complain and act disrespectfully. She asked where dinner was; stated AMO was hungry, that AMO hadn't eaten yet, and she thought there was going to be dinner. We had plenty of food, and we always have food on hand specifically for AMO. Kim asked her if she would like a drink or some appetizers. Courtney and Jamie had brought three bottles of wine with them to go along with our appetizers. When Avanlee saw an empty bottle in the trash, she acted mad and grabbed a second bottle of wine, shoved it at Kim and demanded "open this!" Courtney proceeded to take the wine from Kim and open it and pour Avanlee a huge glass. In the meantime, I took AMO and went out to the garage to show him his truck and get out more toys. Avanlee sat down with her wine and Jamie and Courtney started a conversation with her. Within a minute or two Avanlee got up to go to the garage to speak with me privately. She told me, "We

THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT VISITATION WITH MINOR CHILD - 4

need to talk alone!" I told her to stop being disrespectful, and that if she was hungry, there were plenty of appetizers and we had plenty of food for AMO if he wanted to sit down and eat with us. She refused, went into the house, scooped up AMO, and said she was leaving.

24.    Again, she again cut off communication. She also took me out of the family group chat where I would get daily photos and videos of AMO. A few days later, I decided to text her and ask her if she would like me to babysit AMO, she was welcome to drop him off. She did not respond for quite some time.  When she did respond, she said that she would be spending that day with AMO alone.

25.    The next day was the Superbowl. I asked her again if she would like to bring AMO over because I was free. She ended up responding by telling me that if I want to see AMO from here forward, I will have to come to my ex-wife's house to do so.

26.    I feel that I cannot build a relationship like the one I envision with my grandchild by occasionally imposing on my ex-wife and her husband to see him. I would like to be able to see him one on one, at my house so that we can build a loving relationship.  I want to do things with him like teach him how to ride a bike and take him to the zoo and just do the things grandparents do with their grandchildren. I do not believe that I can build this kind of relationship at my ex-wife's house. Additionally, it is uncomfortable for Kim to have to go to my ex-wife's house to see AMO.

27.    I don't think it's fair that we are subjected to these rules in order to see AMO.

28.    I have come to realize that in order to see my grandchild on a consistent basis for the rest of his childhood. I have to get a grandparent visitation plan in place. If I don't go to court and get a plan in place, whenever Avanlee decides she does not want me to see him, I will likely miss years of my grandson's life.

29.    I will not allow her to be dishonest, manipulate, or disrespect my wife and me when it comes to this matter with my grandchild. In the past, I have tried to believe that she would change as she grew older, but it is now clear to me that this is who she is.  I can't let it come between myself and AMO.

30.    Avenlee punishes me with cutting off contact when I tell her no or when she does not get her way.  I can't let her hinder my relationship with AMO.

THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT VISITATION WITH MINOR CHILD - 5

31.     I would like to enjoy time with my grandson every other Sunday from noon to 4:30pm and propose we meet at the Cracker Barrel to exchange AMO for my visits. When AMO turns 4, I would like to have a visit every other Wednesday from 4:30pm-7pm for supper.

32.     I would like to have an additional visit with AMO near holidays. I am aware AMO's parents will have him for the major holidays, I would just like one day near the holiday to celebrate with him and give him his gifts or take him on a fun adventure. Specifically, any day around Memorial Day weekend, Labor Day weekend, Christmas and AMO's birthday.

33.     I would like to have 5 days of Summer to vacation with AMO June 5-10 or July 5-10, each year.

34.     I believe it is in my grandson's best interest to have some visitation time with me.

FURTHER AFFIANT SAYETH NAUGHT.

DATED _7th_ day of March 2024.

_____
Bryan Okragly, Third-Party Petitioner

This instrument was signed and acknowledged before me on the _7th_ day of March 2024, by Bryan Okragly.

JESSIE ELLISON
NOTARIAL
SEAL
STATE OF MONTANA

JESSIE ELLISON
NOTARY PUBLIC for the
State of Montana
Residing at Laurel, Montana
My Commission Expires
February 8, 2026

_____
Notary Public for the State of Montana

**CERTIFICATE OF SERVICE**

The undersigned certifies on this _X_ day of March 2024, a true and correct copy of the foregoing Petition and Brief in Support was served electronically and by mail upon the following:

Joseph Raffiani, Attorney for Petitioner
303 N. Broadway, Ste. 705
Billings, MT 59101

Caitlin Pabst, Attorney for Respondent
113 E Oak St, Ste. 2d
Bozeman, MT 59715

_____
Lyndon Scheveck
Attorney for Third-Party Petitioner

THIRD-PARTY PETITIONER'S AFFIDAVIT IN SUPPORT OF PETITION TO ESTABLISH GRANDPARENT VISITATION WITH MINOR CHILD - 6

# CERTIFICATE OF SERVICE

I, Lyndon Scheveck, hereby certify that I have served true and accurate copies of the foregoing Motion - Motion to Intervene to the following on 03-08-2024:

Caitlin Terese Pabst (Attorney)
113 E. Oak Street
Suite 2D
Bozeman MT 59715
Representing: Sebastian Alexander Keitel
Service Method: eService

Steven E. Goodson (Attorney)
113 E. Oak Street
Suite 2D
Bozeman MT 59715
Representing: Sebastian Alexander Keitel
Service Method: eService

Nathan Andrew Smith (Attorney)
113 E Oak St. Suite 2d
Bozeman MT 59715
Representing: Sebastian Alexander Keitel
Service Method: eService

Joseph M. Raffiani (Attorney)
PO Box 3394
303 N Broadway Suite 705
Billings MT 59101
Representing: Avanlee Christine Okragly
Service Method: eService

Donald L Harris (District Court Judge)
P O Box 35027
Billiings MT
Service Method: eService
E-mail Address: Donald.Harris@mt.gov

Electronically signed by Jessie Ellison on behalf of Lyndon Scheveck
Dated: 03-08-2024

**EXHIBIT "4"**

Frederick J. Keitel, III
P.O. Box 3243
Palm Beach, FL 33480
Pro Se Respondent/Appellant
(561) 310-6864
rickkeitel@aol.com

# MONTANA THIRTEENTH JUDICIAL DISTRICT COURT

## COUNTY OF YELLOWSTONE

---

**AVANLEE OKRAGLY**

    Petitioner/Appellee.

**JUDGE JESSICA T. FEHR**

**CAUSE NO. DV-23-1231**

vs.

**FREDERICK J. KEITEL**

    Respondent/Appellant.

---

**APPELLANT FREDERICK J. KEITEL, III, SWORN AFFIDAVIT AND REPLY IN SUPPORT OF APPELLANT'S AMENDED MOTION TO DISMISS FOR MISCONDUCT BY JUDGE SHELIA KOLAR, DANELLE MILLIGAN, BILLINGS MUNICIPAL COURT CLERK AND OTHERS INCLUDING JUDGE DONALD HARRIS AND YELLOWSTONE DISTRICT COURT CLERK'S OFFICE AND RESPONSE TO CROSS MOTION TO DECLARE RESPONDENT VEXATIOUS LITIGANT, AND BRIEF IN SUPPORT**

**STATE OF FLORIDA**
**COUNTY OF SUMTER**

BEFORE ME, the undersigned authority, this day, personally appeared, Frederick J. Keitel, III, to be known to be the person herein, or who produced passport as identification and who, after being duly sworn, deposes and states the following.

1

1    My name is Frederick J. Keitel, III. I am over the age of 21 years, competent to make

2    this sworn statement and I have personal knowledge of all the facts and opinions

3    contained in herein.

4    On September 7, 2022, I flew to Billings Montana to see my grandson, born June 26,

5    2022.

6    Unexpectedly, I received a "fuck you letter" from Avanlee Okragly's lawyer Katie Heller

7    that stated that Avanlee wanted Sebastian to give up all rights to the newborn minor

8    child, that my son hadn't even seen, being held hostage as a pawn, against her own

9    father, the child's maternal grandfather.

10   Avanlee was also suing my son Sebastian Keitel for child support using the New York

11   Courts to get larger child support payments.

12   I also received emails and a call from Avanlee's father, the maternal grandfather, Bryan

13   Michael Okragly, indicating Avanlee was mentally unstable, using the child as a pawn

14   against him for money and that I should go to court to enforce my rights.

15   Avanlee refused to allow her father visitation, because she was mad at him.

16   On September 25, 2023, I was approached by Avanlee Okragly, who walked by me in

17   Judge Harris' courtroom during a break in the hearing involving my son Sebastian

18   Avanlee threatened me.

19   Avanlee whispered as she walked by, that Kolar and Heller are going to get me. . ."

20   Avanlee's threats were meant to and did cause fear in me

21   On September 25, 2023 I was in Montana to testify for Sebastian.

22   On September 25, 2023, I was unaware that Avanlee had filed Order of protection

23   against me.

24   On September 25, 2023, I was unaware that there was a summon and order of

25   protection outstanding signed by Judge Shelia Kolar had filed Order of protection

26   against me.

27   On September 25, 2023, it was the first time I heard the name Kolar, and I was unaware

28   of and never heard of Judge Shelia Kolar

29   On September 25, 2023, I thought Avanlee's threats were related to Frontier law firm

30   attorney's and Katie Heller running for Billings Municipal Court.

1   Its impossible to believe that Avanlee and/or Judge Harris never mentioned or

2   questioned me during my testimony September 25, 2023 about the order of protection

3   filed against me.

4   September 28, or 29th, 2023 I received a call and spoke with a Palm Beach County

5   Sheriff Deputy who stated he had a summon in Palm Beach County for me.

6   While he refused to disclose what it was for, I fingered it was concerning one of my

7   cases in Florida.

8   It was difficult to hear, I told him I would call him back, I was on my way back from

9   Montana, would be in Orlando, Florida then I would be in Tampa, Florida at UF Health,

10   Moffitt Cancer Center, and Tampa General Hospital for cancer surgery.

11   I called the Deputy back on September 29th, 30th and October 2nd, 2023 and left voice

12   messages, when he didn't answer.

13   I was unaware that the deputy was on vacation or leave for 10 days until he returned my

14   calls on October 10, 2023.

15   I have attached as exhibit "__", his voicemail recorded on my phone stating that he

16   knew I was in Tampa or in the Hospital undergoing cancer surgeries.

17   It was not until a week after I was served on October 18th, that I realized Kolar, was

18   Judge Shelia Kolar, a mentor to Katie Heller and municipal Court Judge who signed the

19   Order of Protection.

20   I realized that the order of protection was in Billings Municipal Court and requested it be

21   moved to Yellowstone County District Court.

22   I was told my oral request was rejected.

23   I spoke with Danelle Milligan, Judge Kolar's clerk of court, order of protection. explained

24   my medical condition,

25   She failed to inform me that she had over 30 ex parte communications with Avanlee

26   Okragly shared with Judge Kolar.

27   I had multiple surgeries for cancer on my eye in early October and had a patch on my

28   eye while I was recovering.

29   It was the 7th procedure on my eyes in less than 2 years.

30   On October 26, 2023 I filed a motion to reschedule the hearing 30 page = pages with

31   exhibits, demonstrating that Avanlee Okragly lied and produced substantial evidence.

1   My motion was denied, my exhibits were never considered and never transferred to the

2   District Court with the Certification of Transfer of Document from Municipal Court, Filing

3   # 1.00, 11/16/202.

4   On October 30, 2023 I was unable to make my flight to Billings, Montana, due to rapid

5   heart rate, and breathing problem related to my lung cancer.

6   In February 2023, eight (8) months earlier, I had my second *cardioversion* in two years

7   for heart problems.

8   I explained to Danelle Milligan, that I missed my flight, reason why and requested a

9   continuance or that I appear via ZOOM.

10   Ms. Milligan informed me that Judge Kolar required that I only appear in person

11   As of October 30, 2023, I was unaware that Avanlee sent written emails stating I was

12   hiding out in Montana to avoid service, that I was dangerous, I was nuts and deputies

13   needed to escort me out of the courtroom on 9/25/2023, are all false without any basis

14   in truth.

15   Avanlee also warned Ms. Milligan that Judge Kolar would need additional security,

16   which was passed onto Judge Kolar.

17   I have previously testified that Avanlee is mentally disturbed and a pathological liar.

18   Ms. Milligan stated in her testimony, that Judge Kolar required I appear in person only.

19   I have read the transcript of the 10/31/23 hearing in March when it was transcribed, and

20   was stocked that Avanlee-Danelle Milligan exchanged over 30 ex parte email

21   communications shared with Judge Kolar prior to October 31, 2023, including that I was

22   hiding out in Montana evading service of process o

23   I have read the transcript of the 10/31/23 hearing in March when it was transcribed, and

24   was stocked that Avanlee-Danelle Milligan exchanged over 30 ex parte emails

25   communications shared with Judge Kolar prior to October 31, 2023, including that I was

26   dangerous, had to be escorted out of the courtroom September 25, 2023, and that

27   Judge Kolar needed more security in the courtroom

28   I was also shocked to hear that Ms. Milligan shared those emails with Judge Kolar,

29   without anyone informing me of the false and fraudulent allegations, totally untrue.

30   It was not until a week after I was served, that I realized Kolar, was Judge Shelia Kolar,

31   a mentor to Katie Heller and municipal Court Judge who signed the Order of Protection.

1  I was isolated, because I had multiple surgeries for cancer effecting my eye in early

2  October and was recovering.

3  On December 14, 2023, I had surgery for lung cancer.

4  I had chemotherapy, Immunotherapy, and Radiation from January through July 2024

5  and have been recovering.

6  I was denied both the September 25, 2023 and October 31, 2023 audio recording-

7  transcripts of the hearing for 4-6 months in a successful attempt to interfere with my

8  appeals and Rule 59 & 60 motions.

9  On February 27, 2024, after 5 months and multiple motions, Judge Harris finally signed

10  an Order to Release September 25, 2023 Audio Recording after the transcript and

11  audio recording was withheld under the direction of Judge Donald Harris, to

12  Yellowstone District Clerk's office, Grace Kightlinger and others to withhold the 9/25/23

13  transcript to interfere with my Order of Protection Hearing October 31, 2023, my three

14  (3) appeals, Motions under Montana R, Civ. P. Rule 59 & 60, and my son, Sebastian

15  Keitel's motions, appeals and visitation issues.

16  Only Judge Harris had the power, control and judicial authority to interfere with and

17  withhold the transcript and audio recording.

18  Grace Kightlinger stated it was impossible to transcribe the 9/25/2023 audio recording,

19  yet the Bozeman Montana court reporter had no trouble transcribing the 9/25/23 audio

20  recording after she received it in mid-March 2024, [] after the Court Ordered time to file

21  it in appeals, and Cause No. DR 56-2023-1224.

22  Judge Harris and the Yellowstone District Court Clerk's office made sure to send the

23  order via U.S. Mail, so I wouldn't receive it in time for the March 1, 2024 Court Ordered

24  deadline for filing my brief, causing me to file another motion for extension March 1,

25  2024

26  The substantial uncontroverted evidence is that someone interfered with, withheld the

27  audio recordings, so I couldn't produce the 9/25/2023 an October 31, 2023 transcripts

28  timely for any appeals.

29  Judge Harris and Judge Kolar had the incentive, authority, ability and reason to withhold

30  the audio recordings, so no transcripts could be timely filed in all my cases, motions and

31  my son, Sebastian Keitel's cases.

1   Judge Harris and Judge Kolar had the incentive, authority, ability and reason discredit

2   me and help Katie Heller and Avanlee Okragly.

3   If Judge Jessica Fehr reads the motions, pleadings, reviews the evidence, the 7/14/23

4   video's, the 9/2/23 FaceTime Video [March 29, 2023 doorbell ring video excluded by

5   Judge Harris, April 3, 2023, because it exonerated Sebastian Keitel.

6   The doorbell ring video, together with Avanlee's self-incriminating testimony September

7   12, 2023, introduction of a 1 minute 30 second doorbell ring video recorded June 30,

8   2023, is further evidence of perjury, tampering with evidence, Obstruction, and

9   suborning perjury.

10   Avanlee and Katie Heller conspired with and tampered with physical evidence,

11   obstruction of justice, perjury and suborning perjury on 4/3/23 before Judge Harris.

12   On September 25, 2023 Avanlee testimony before Judge Harris was self-incriminated,

13   and evidence incriminating herself and Katie Heller which caused Judge Harris to object

14   on Avanlee's behalf, then stop any cross examination of Avanlee to prevent additional

15   perjury and evidence of criminal conduct

16   I have never seen a judge, Judge Harris objecting to direct questions of Avanlee, to

17   prevent her from testifying, to prevent further incriminating testimony to protect her and

18   Katie Heller on 9/25/234

19   On September 25, 2023, I watched as Judge Harris lied, covered up criminal conduct,

20   obstructed justice and the with administration of justice to protect Avanlee, so not to

21   further incriminate Katie Heller.

22

23   **I have person al knowledge of all facts that on July 14, 2023 Petitioner/Appellee's**

24   **Avanlee Okragly denial of visitation and filing false statement to police, in**

25   **violation of MCA 45-7-202, MCA 45-7-205, Perjury MCA 45-7-201\ and I listened in**

26   **on all phone calls via speaker phone.**

27   Sebastian Keitel ("Sebastian"), Lori Wurtz, (driver) and Rick Keitel ("Rick") drove to

28   Avanlee's house for court ordered visitation of AMOK at

29   4:00 pm.

30   At 4:00 pm, Avanlee didn't answer front door, no one is home, even though Avanlee

31   was aware of visitation and has doorbell ring video on her iPhone)

1    4:01 pm Sebastian calls Avanlee, no answer, leaves message I'm at the house to pick

2    up Adam.

3    4:03 pm Sebastian makes a second calls to Avanlee's phone again to check on location

4    of Adams for pick up. No Answer.

5    4:04 pm Sebastian calls the police

6    Sebastian has a copy of court ordered visitation schedule for police and requests officer

7    assistance for a report, child isn't at pick up location, no one's answering door, clear

8    interfere with visitation.

9    Sebastian requests written report of violation of court ordered visitation, as required by

10    Judge Harris as proof violation-interference.

11    Sebastian, his driver Lori Wurtz, and Rick Keitel go down the street (1/4 miles) and wait

12    at the only entrance to her street and house.

13    4:20 pm Avanlee text message to Sebastian:

14               *"We are running late on our way home the pool.*

15               *We will be home by 5 pm or I can drop him on my way home"*

16

17    4:22 Sebastian notifies Avanlee that he's waiting down the road from her house.

18    4:42 pm Avanlee drives by and shouts to Sebastian in front of Rick and Lori Wurtz, all

19    standing outside the car, "follow me to pick up AMOK".

20    4:45 pm video:  Rick walks up to the house to pick up Adam (30 feet away) as

21    Sebastian and Lori Wurtz are standing outside the car listening and recording Rick.

22    4:45 pm Avanlee speaks as she opens the door:

23    Avanlee: "Sebastian can come to the door and get AMOK; I'm not going to hand him to

24    you"

25    <u>RICK:</u> "I'm here to pick up Adam, ok"

26    <u>AVANLEE:</u> "Goodbye" as she slams the door in Rick's face

27    4:45 pm, Video taken by Sebastian (with Lori) shows the police car appears,

28    The police officer talks with Sebastian, who has the visitation schedule, and the officer

29    states that if Avanlee doesn't comply, you'll have to go to court,

30    The Officer and Sebastian go to front door.

31    Avanlee will only let the officer in, talks for 3-5 minutes,

1   Police officer comes out takes Sebastian's complaint dated 7/14/23 at 4:04 pm.

2   The officer says no visitation, talks with Sebastian and says you must leave.

3   Unknown to me, at the time, the Police officer takes Avanlee's false statements in a

4   complaint dated 4:59 pm, stating she fears for her safety.

5   Despite Avanlee's text message to Sebastian to pick up his son, AMOK, and her telling

6   me, that Sebastian must come to the front door to pick up AMOK at 4:45 pm, once

7   Avanlee recognized Sebastian had the police confirm her interference with visitation,

8   Avanlee files a false and fraudulent statement and complaint without any evidence or

9   merit. Avanlee

10  Sebastian complaint was filed, for refusal of court ordered visitation by Avanlee [since

11  police report is required by Judge Harris as proof of interference as per 10/2/23

12  Transcript].

13  Avanlee complaint states threats, she fears for her life falsely stating that there is a

14  court order that Rick Keitel is not allowed to be with the child, which is false

15  Avanlee, as testified to by her father Bryan Okragly, in his March 8, 2024 affidavit

16  recognizes Avanlee is manipulative, dishonest, liars who holds AMOK hostage from him

17  for money.

18  This Court needs to compare Avanlee's interference and rejection of court ordered

19  visitation schedule, with Bryan Okragly (Avanlee's father) motion-Third Party Petitioner's

20  [Bryan Okragly-maternal-grandfather] Rule 24, M.R.Civ.P., Motion to Intervene and

21  affidavit for visitation, stating that Avanlee uses Adam as a pawn.

22  I have testified in multiple sworn statements, that Avanlee is a narcissistic, pathological

23  liar with mentally ill and control issues, if she doesn't get her way, then she results to

24  pathological lying, see her father Bryan Okragly's sworn affidavit (March 8, 2024) and

25  sworn affidavit of Sebastian, his fiancée Ashley Zachem and Lori Wurtz,  who all have

26  firsthand personal knowledge of Avanlee's threats, anger, screaming threats and

27  tantrums and repeated denial of court order visitation schedule since January 2023.

28  Avanlee's false and fraudulent complaints, false order of protection is her narcissism

29  way to manipulate and control custody, because her lawyer Katie Heller is/was Judge

30  Harris' protégée and once I raised issues of Heller's suborning perjury in my April 10,

1   2023 letter to Judge Harris, he did everything possible legal or illegal to protect her after
2   she declared her run of Billings Municipal Court Judge, also in April 2023.
3   In August 2023, Avanlee refused Sebastian's requests for vacation time under the court
4   ordered visitation schedule.
5   In mid-August 2023, Avanlee fled Montana to avoid service by Yellowstone Sheriff's
6   Officers.
7   Mid-August, Avanlee fled to New York with AMOK, refused to give Sebastian any
8   information required by court ordered visitation order.
9   Fearing she would be held in contempt of court, Avanlee on September 2, 2023 sent the
10  following emails to Sebastian:

11  *From: Avanlee Christine avanlee@avanleecare.com;  Date: Sat, __Sep 2, 2023__ at 8:39*
12  *AM; Subject: Re: New York Address + Itinerary*
13  *To: Sebastian Keitel <skcards1525@gmail.com> CC: Katie Heller*
14  *<kheller@frontierlawfirm.com>*

15       *Rick,*

16       *"You just called me on Sebastian's phone and you are now emailing me through*
17       *Sebastian's email again.*

18       *"I will not be responding to any communication. Stop contacting me."*

19  Fortunately, I was able to just obtain a lost video of the 9/2/2023 FaceTime video
20  recording between Sebastian and Avanlee.

21  I was not in Montana on September 2, 2023

22  I have never spoken with Avanlee via telephone

23  I have never used Sebastian's iPhone.

24  I have never used Sebastian's computer

25  The only conversation I have ever had with Avanlee was November 23, 2021, and July
26  14, 2023 when I said, "I'm here to pick up Adam, ok", and it was recording.

27  On September 2, 2023 I was in Sumter County Florida, 2,400 miles from Billings,
28  staying at the Waterfront Hotel recovering from a lung infection.

1  I have given Katie Heller uncontroverted proof of my whereabout and telephone
2  records, showing that I never spoke with or called Sebastian on September 2, 2023

3  Upon information and belief, Avanlee and Katie Heller conspired to false accuse me, so
4  I would give a written denial of their allegations and attempt to use my denial as
5  communications with Heller and Avanlee.

6  On September 12, 2023 Katie Heller drafted an Order of Protection, stating the
7  following:

8  *"9/2/23"*

9      *"Saturday September 2nd I was contacted by his son, Sebastian Keitel via*
10     *FaceTime call. I answered the FaceTime call the camera was covered so I could*
11     *not see anyone and two men were yelling at me threatening my safety.  I believe*
12     *Rick Keitel was with him.  Frederick Keitel will not stop contacting me through his*
13     *son, via his email and phone. (see attachment)."*

14  Avanlee Okragly lied about every issue in her statement to Judge Kolar to get a OOP
15  with the help of Katie Heller, who used her influence with Judge Kolar her mentor
16  including:

17  That I impersonated law enforcement

18  That I worked with the FBI

19  That I was in Montana on September 2, 2023

20  That I was with Sebastian in Montana, September 2, 2023

21  That I threatened Avanlee on September 2, 2023

22  That Sebastian and I threatened Avanlee with bodily harm

23  That according to Avanlee's sworn testimony, October 2, 2023, Cause No. DR 22-627,
24  that I threatened Avanlee, stating: "He's going to take my baby"

25  That Avanlee stated I" He's obsessed with AMOK

1   That I am afraid my son is going to [be] physically abuse him"

2   Avanlee is a pathological liar and narcissistic

3   Avanlee is mental disturbed,

4   I just recently acquired the legally recorded,   video recording of the 9/2/2023 FaceTime
5   video recording between Sebastian and Avanlee, the same call that Avanlee used for
6   her sworn statement 9/2/2023

7   I just recently acquired the video recording of the 9/2/2023 FaceTime video recording
8   between Sebastian and Avanlee, the same call that Avanlee used in her sworn
9   testimony on October 2, 2023 and October 31, 2023

10   The same FaceTime recording in which Avanlee sworn that she had been threatened,
11   ***two men were yelling at me threatening my safety***.

12   The newly discovered video of the FaceTime call, is uncontroverted substantial
13   evidence that Avanlee lied, filed two (2) false Statement to Judge Kolar, Billings
14   Municipal Court, and Judge Harris Yellowstone District Court Judge on the same day,
15   September 12, 2023 in. her application for Order of Protection, stating she feared for
16   her life and the life of her child, AMOK.

17   The newly discovered video of the FaceTime call is the best evidence of what happened
18   on September 2, 2023.

19   There was no shouting.

20   There were no threats.

21   There was no threat to Avanlee's safety.

22   I have read Avanlee's October 2, 2023 testimony in front of Judge Harris.

23   Avanlee lied about each allegation.

24   I have read Avanlee's testimony before Judge Kolar, October 31, 2023, and Avanlee
25   lied about me threatening her on September 2, 2023.

1  Both 10/2/23 and 10/31/23 transcripts, (audio recordings) withheld from me for 4-6

2  months, is   uncontroverted, undisputed substantial evidence that Avanlee lied in her

3  sworn statement September 12th, and that she further committed perjury and false

4  swearing in violation of MCA 45-7-201, 45-7-202, 45-7-205.

5

6  On September 2, 2023 Avanlee's made False and Fraudulent Allegations against

7  Sebastian Keitel and Rick Keitel using Interstate Communications to make false threats

8  of bodily harm.

9

10  The video recording of the 9/2/2023 FaceTime call, in which Avanlee produce a xerox

11  copy of her phone records, referred to as Avanlee's evidence is uncontroverted

12  evidence by me that there was no threats, there was no shouting, Avanlee lied to use

13  the false allegations in her false and fraudulent order(s) of protection and statement to

14  law enforcement and Judge Harris against Sebastian Cause No. DR 23-627

15  Yellowstone District Court; and Judge Kolar Rick in Billings Municipal Court, Cause No

16  CV-225-2023-1224-OP on September 12, 2023.

17

18  Avanlee's actions, demeanor and response in the recorded video FaceTime call is

19  undisputed proof that Avanlee is a pathological liar, who will say or do anything,

20  including continuously file false statement to law enforcement in violation of Montana

21  Code Ann., to get an advantage in the custody issue, so she can extort more money

22  than $5,000.00 monthly support she currently gets from Sebastian.

23  Avanlee's father Bryan Okragly has filed an affidavit stating Avanlee uses AMOK as a

24  pawn, refused visitation from her own father for 11 months because he wouldn't give

25  her more money, while he would like court ordered visitation schedule.

26  I read Bryan Okragly's affidavit, in which he testifies that Avanlee met her father (with

27  AMOK) at a restaurant to hash out differences, and Avanlee started screaming at her

28  father in public repeatedly using the "Fuck" word to embarrass and humiliate her father

29  in public.

1    I have read Mr. Raffiani's motions in this case, Cause No. DV 23-1231 and Cause No.

2    DR 23-1224 before Judge Harris, and I filed a motion to Disqualify Joseph M. Raffiani

3    for Lying and Fraud on the court.

4    Mr. Raffiani falsely conflates and attributes Judge Harris' comment against Sebastian

5    Keitel, in Sebastian's OOP, and then falsely projects those onto me to intentionally lie

6    and misrepresent the truth, without any reference to transcripts quotes or pages and

7    line as evidence.

8    I have first-hand personal knowledge of Avanlee's father testimony March 8, 2024, the

9    maternal grandfather's heartbreaking affidavit, of Avanlee's long-term dishonesty,

10   manipulations, narcissistic behavior and the affidavits and testimony of Sebastian, his

11   fiancés, Ashely Zachem, Lori Wurtz, Sebastian's driver [who had first-hand knowledge

12   of all Sebastian's phone calls with Avanlee, attempted pick up of AMOK], and who was

13   threatened by Avanlee.

14   Judge Harris ignored everyone's sworn testimony, because it didn't fit his narrative, and

15   a finding against Avanlee, would confirm allegations of suborning perjury, conspiracy

16   and other criminal conduct by Katie Heller alleged in sworn affidavits and testimony,

17   affidavit and testimony, call raising serious questions about Avanlee' mental health,

18   vindictiveness, retaliation and pathological liar, and threats against Sebastian and

19   everyone.

20   Judge Harris issued Order RE; Pending Motions on July 2, 2024 to interfere with and

21   obstruct the Yellowstone District Court Clerk's signed subpoenas for deposition duces

22   tecum of Avanlee, Katie Heller, Danelle Milligan and Shelia Kolar [in her non-judicial

23   capacity] to prevent the truth.

24   **_"9/2/23"_**

25       *"Saturday September 2nd I was contacted by his son, Sebastian Keitel via*

26       *FaceTime call. I answered the FaceTime call the camera was covered so I could*

27       *not see anyone and two men were yelling at me threatening my safety.  I believe*

28       *Rick Keitel was with him.  Frederick Keitel will not stop contacting me through his*

29       *son, via his email and phone. (see attachment)."*

13

The FaceTime video recording 9/2/2023 [just discovered] and Avanlee's October 2, 2023 testimony in front of Judge Harris is uncontroverted, undisputed substantial evidence that she lied, she committed perjury and false swearing in violation of MCA 45-7-201, 45-7-202, 45-7-205.

**September 2, 2023 False and Fraudulent Allegations against Sebastian Keitel and Rick Keitel Using Interstate Communications making Threats of Bodily Harm to Avanlee**

The video recording of the 9/2/2023 FaceTime call referred to as Avanlee's evidence is uncontroverted evidence by Sebastian (and Rick Keitel) that there was no threats, there was no shouting, Avanlee lied to use the false allegations in her false and fraudulent order(s) of protection and statement to law enforcement and Judge Harris against Sebastian Cause No. DR 23-627 Yellowstone District Court; and Judge Kolar Rick in Billings Municipal Court, Cause No CV-225-2023-1224-OP on September 12, 2023.

Avanlee's actions, demeanor and response in the recorded video FaceTime call is undisputed proof that Avanlee is a pathological liar, who will say or do anything to file false statement to law enforcement in violation of Montana Code Ann.

Quotes:

Avanlee used AMOK as a pawn, refused visitation from her own father for 11 months because he wouldn't give her money.

Avanlee met her father (with AMOK) at a restaurant to hash out differences, and Avanlee started screaming at her father, repeatedly using the "Fuck" word to embarrass and huminite her father in public.

Mr. Raffiani falsely conflates and attributes Judge Harris' comment against Sebastian, Sebastian's OOP, not Rick who on October 2, 2023 was preparing for cancer surgery in Tampa Florida, 2,400 miles from Billings.

However,  if you read Avanlee's father, the maternal grandfather's heartbreaking affidavit, of Avanlee's long-term dishonesty, manipulations, and narcissistic behavior

14

1    and the affidavit and testimony of Sebastian, his fiancés, Ashely Zachem, Lori Wurtz,

2    Sebastian's driver with first-hand knowledge of all phone calls, attempted pick up of

3    AMOK who was threatened by Avanlee, and Rick Keitel's affidavit and testimony, call

4    raising serious questions about Avanlee' mental health, vindictiveness, retaliation and

5    pathological liar, and threats against Sebastian and everyone.

6    Judge Harris issued Order RE; Pending Motions on July 2, 2024 to interfere with and

7    obstruct the Yellowstone District Court Clerk's signed subpoenas for deposition duces

8    tecum of Avanlee, Katie Heller, Danelle Milligan and Shelia Kolar [in her non-judicial

9    capacity] to prevent the truth.

10   Judge Fehr needs to review all the evidence and Motion to Disqualify Joseph M.

11   Raffiani as Counsel for Petitioner for Lying Fraud on the Court [6/7/24] and Appellant's

12   Motion for Rule 35 Independent Evaluation of Avanlee Okragly and Brief in Support

13   [7/1/24], that explains the false and fraudulent allegations by Avanlee and Mr. Raffiani,

14   for actual examples of their outright lying to mislead Judge Harris and Judge Fehr.

15   That the police came to my home [7/14/23] and filed a report on Fredrick Keitel because

16   he became aggressive with law enforcement . . ." [Judge Fehr has the two (2) video

17   recording showing the police came to help Sebastian on 7/14/23 get court ordered

18   visitation. Avanlee never called the police, Judge Fehr has uncontroverted proof that

19   Avanlee encouraged Sebastian to show up on 7/14/23, until the police were there to

20   record her refusal to be home at 4:00 pm for visitation, and only signed the report until

21   Sebastian had the proof Judge Harris said was required to demonstrate interference

22   with visitation.

23   Not only didn't I harass Avanlee's family in 2022, as per her sworn petition for custody,

24   July 2022. but Bryan Okragly agreed with me, send me emails and encouraged me to

25   go to court to fight for visitation,

26   Once I accused Avanlee and Katie Heller of tampering with evidence, obstruction,

27   perjury suborning perjury on April 10, 2023, Judge Harris did everything dishonest to

28   prejudice this case against Sebastian because he advised Heller to run for Billings

1     Municipal Court Judge, was her mentor for 3-4 years, and refused to allow the truth to

2     get in the way,

3             RESPONSE TO CROSS MOTION TO DECLARE RESPONDENT VEXATIOUS

4                    LITIGANT, AND BRIEF IN SUPPORT

5     Judge Fehr needs to review all the affidavits, especially Bryan Okragly's affidavit

6     Judge Fehr needs to review the affidavits of Sebastian Keitel, Ashley Zachem and Lori

7     Wurtz, all witnesses with firsthand knowledge of Avanlee's mental instability, anger and

8     threats to interfere with visitation on multiple occasions attached to Sebastian Keitel's

9     Motion to Dismiss and Vacate, 9/25/2023 in Cause No. DR 22-627

10    Judge Fehr needs to review The Motion for Rule 35 against Avanlee Okragly

11    Judge Fehr needs to review the Motion to Disqualify Joseph M. Raffina for Lying and

12    Fraud on the Court.

13    The substantial compelling evidence is that Avanlee continuously lied, tampered with

14    evidence, obstructed justice and perjured herself with the help of her high school friends

15    Katie Heller and Sebastian's former lawyer Scott Stockdale, who had a sexual

16    relationship with Avanlee.

17    Avanlee has/had multiple opportunities to deny her undisclosed sexual relationship with

18    Mr. Stockdale and refused to do so.

19    Mr. Stockdale was fired after he sabotaged Sebastian case beginning January 9, 2023.

20    Sebastian Keitel's Motion to Dismiss and Vacate Order of Protection filed September

21    25, 2023 outlines substantial evidence against Mr. Stockdale and other with one

22    scrivener's error, (made by me), I was not in Montana on September 2, 2023, I was in

23    Florida recovering from a lung infection.

24

25

26

1

2

3          FREDERICK J. KEITEL, III

4    STATE OF FLORIDA

5    COUNTY OF SUMTER

6

7          Before me, the undersigned authority, personally appeared Frederick J. Keitel,

8    III, who produced a passport as identification and who being duly sworn deposes and

9    says that the Affidavit hereto is true and correct to the best of my knowledge,

10   information and belief.

11         SWORN TO AND SUBSCRIBED before me this __9__ day of August 2024.

12

13   _____

14   NOTARY PUBLIC, State of Florida

15   At Large

16

17   _Lisa  Graddy_____

18   Print Name

19

20   ___HH 094439_____

21   Commission No.

22

23   My Commission expires:   2/17/25

24

25         LISA M. GRADDY
           Commission # HH 094439
26         Expires February 17, 2025
           Bonded Thru Budget Notary Services

27

**EXHIBIT "5"**

Frederick J. Keitel, III
P.O. Box 3243
Palm Beach, FL 33480
(561) 310-6864
rickkeitel@aol.com

August 9, 2024

Via email to
maharris@mt.gov

Hon. Jessica Fehr
Chief Judge
Yellowstone District Court Judge
Yellowstone District Court
217 N. 27th Street,
Billing, MT 59107

   RE: (1) Cause No. DV 56-2023 -1231,  (2) my previous request for a hearing, (3) my lawfully signed, filed  and served Subpoena duces tecum and deponents motions to quash and (4) newly discovered of video recording(s), FaceTime video, proving  that Avanlee and Others, continuously lied, committed perjury MCA 45-7-201 on multiple occasions, filed false and fraudulent orders of protection, False swearing MCA 45-7-202; False Report to Law Enforcement Authorities MCA 45-7-205, and Perjury MCA 45-7-201, including July 14, September 2, 7th and 12th, 25th, October 2 and 31, 2023.

Dear Judge Fehr

   I just received Donald Harris' motion to quash his non-judicial capacity subpoena and am requesting that you wait until either a scheduled hearing, or until Thursday, September 19, 2024 until 4:00 pm to give me a chance to respond to the various motions to quash.

   While I'm entitled to more time pursuant to M. R. Civ. P., I don't want this court to make a rush decision, violate my constitutional, rights to due process without the facts, just to prevent the depositions, which I agree to extend until after an expediated hearing in the next 2 weeks.  However, I would like the court to have each deponent turn over the requested, subpoenaed documents 5 days prior to the expedited hearing.

   What I want to avoid is another violation of my due process and violation of my civil rights under the American Disabilities Act, whereby Ms. Okragly send and had 30 ex

1

parte communications with Judge Kolar's court, sent emails, text messages telephone calls to the court, (as well as Judge Harris) and has others phoning in to violate my rights to a fair hearing.

Ms. Okragly emailed Judge Kolar's clerk of court, who delivered ex parte communications to her beginning late September 2023, prior to me being served October 18, 2023:

"This guy is nuts" (exhibit "2-1")). "He's a very dangerous" (exhibit "2 – 2), There is court orders against him that Rick Keitel cannot be unattended with A.M.O.K." (exhibit "2-4");
Rick is hiding in Bozeman, Rick will not come to the door and will hide but they can surely try" (exhibit 2-7).
"Rick had to escorted out of court the last time"
"Can they arrest him or have him removed" (exhibit 2-6).

Judge Kolar's Clerk of OOP Danelle Milligan in one of her multiple responses, states:
   **"I have advised the judge . . . if she wants additional security".**

There is absolutely no creditable evidence of any of Avanlee's false allegations (withheld from me until late January 2024, three months after the hearing).

Judge Fehr, you have my sworn affidavit, (1) transcripts in which I inform Judge Harris during a from 9/25/25 hearing, that I'm having surgery the week, October 2, 2023, (2) evidence no one ever mentioned there was a summon for me  and no one ever mentioned that there was an order of protection sign against me 9/12/23, even while during my 9/25/23 testimony before Judge Harris.

Due to my disabilities for 6th & 7th cancer operations on October 4, 2023, and my breathing, heart disease and lung cancer, I was unable to travel 12-14 hours on October 31, 2023.  Judge Kolar violated my due process rights, and civil rights  under the American Disabilities Act, because I was unable to travel unable to travel for the hearing, Judge Kolar refused my normal requests, motion for continuance  to postponed the hearing for 1 -2 weeks, and Judge Kolar's clerk of court, order of protection, Danelle Milligan notified me in writing that Judge Kolar refused to allow me via Zoom, and "you

2

must appear in person" [also see the clerk's notation 10/31/23 required to appear in person]. Why would two different clerks send me an email and make a notation that I must appear in person, if I didn't request to appear via ZOOM?

October 31, 2023 <u>Judge Kolar:</u>

> "I believe he's evading service and trying to delay this proceeding, uh, because – and Danelle, you're going to have to testify to this". . ."I will put you under oath. And there's some notes that you kept because we would try to find him". "He would tell us where he supposedly was. Law enforcement, sheriff's deputies and Florida, the (unintelligible) residence, he wasn't there" (T.p. 5, L. 12-14).

Judge Kolar relied on petitioner Avanlee's false 30+ ex parte communication that Rick Keitel is dangerous and hiding out in Montana, when he was recovering from cancer surgeries, and previously notified Judge Harris (and Avanlee) in court 9/25/23 that he was having surgery week of 10/2/23 (see 9/25/23 transcript, p 91)

Unfortunately for Judge Kolar, the Palm Beach Sheriff's Deputy ("PBSD") 10/10/2023 left a voicemail on my phone, (turned over to you and Judge Harris) proving that Judge Kolar was disingenuous at best and deliberately lying and suborning Danelle Milligan's testimony:

> **UNIDENTIFIED MALE VOICE: Hey, Mr. Keitel, how you doing? I got your message. I know you're not, uh -- you're not in Palm Beach, so I guess you're in Tampa or in the hospital. I can't recall. . . when you told me you weren't here, uh, you need to go to the County of (unintelligible) now to pick -- pick that paperwork up (unintelligible)". (End of voicemail.)**

Judge Kolar refused to reschedule a hearing in violation of my due process rights and mu civil rights under the American Disabilities Act, when I was unable to trave due to multiple cancers operations, heart condition identified under the ADA and explained to Ms. Milligan.   Judge Kolar:

3

"I did tell my staff that it -- and Danelle, we have to get these dates right. But when *he did ask for the continuance because he had medical (unintelligible), I declined his motion to continue . . . because it is in between a surgery and something else.* (T.p.4, L. 17-23).

I testified on September 25th before Judge Harris (Avanlee and Sebastian Keitel) and infirm all, who all knew I was having surgery the week of October 2, 2023 for two operations on my eye 6th & 7th procedure for cancer (see transcript, p. 91).

Judge Kolar's refusal to allow RK to appear via ZOOM, due to his health

"He's hoping to get the paperwork today. He wants to know if there's a phone number in which he can call in to the Court to make an appearance".

The Witness [Danelle Milligan]: I called back and left a voicemail stating that it was not possible for me to call in for an appearance as they have to be served with the paperwork (unintelligible) unless approved ahead of time by the Judge to appear via Zoom (10/31/23 transcript,

The Court: So he was aware of Zoom and knew that there was a Zoom ability, correct?

The Witness Danelle Milligan: **If it's approved**.

Judge Kolar attempting to justify her refusal to allow me to appear via ZOOM.

The Court: "I want to be very clear that this respondent never asked for Zoom even though Zoom existed because he asked at some point or you told him he could for some other hearing he wanted to appear. You said it had to be requested, but he never requested Zoom whatsoever even this morning". (T.p. 38, L. 2-7)

I, Rick Keitel requested to appear via ZOOM in multiple telephone conversations October 26th, October 27th and October 30, 2023 with Ms. Milligan who informed me in writing, you must appear in person for an October 31st hearing9see Milligan's emails and clerk of court notation, must appear in person).

### Newly Discovered Video Recording, Text Messages, FaceTime Video and Bryan Okragly's Affidavit are Uncontroverted Proof Ms. Okragly's Perjury, False Swearing Filing False Orders of Protection

Ms. Okragly perjured testimony, as to threats to bodily harm by Sebastian Keitel and Rick Keitel in her 2 separate orders of protection and testimony on October 2 and October 31, 2023 based on a fraudulent email:

4

From: Avanlee Christine avanlee@avanleecare.com
Date: Sat, Sep 2, 2023 at 8:39 AM
Subject: Re: New York Address + Itinerary
To: Sebastian Keitel <skcards1525@gmail.com> CC: Katie Heller
<kheller@frontierlawfirm.com>

Rick,

"You just called me on Sebastian's phone and you are now emailing me through
Sebastian's email again.

"I will not be responding to any communication. Stop contacting me."

"9/2/23"

"Saturday September 2nd I was contacted by his son, Sebastian Keitel via
FaceTime call. I answered the FaceTime call the camera was covered so I could
not see anyone and two men were yelling at me threatening my safety.  I believe
Rick Keitel was with him.  Fredrick Keitel will not stop contacting me through his
son, via his email and phone. (see attachment)."

In both of Petitioner's Sworn Petition for Temporary Order of Protection against me
and my son Sebastian, Ms. Heller drafted Ms. Okragly's false allegations, knew were
false and filed in separate Courts,  Billings Municipal Court against me [and Yellowstone
District Court against Sebastian], as retaliation for my criminal complaint against them
July 2023, and as an excuse after the FBI ordered Ms. Okragly to return the minor child,
AMOK to Montana and after Ms. Keller, Paul Chaon and Avanlee conspired to and did
giver intentional false and fraudulent information to a FBI agent, in violation of !* U.S.C.
1001.

The attachment referred to in Ms. Okragly false allegations is no evidence, it was her
screenshot of her FaceTime call to Sebastian which showed nothing was a screenshot
but was intended as evidence of threats to her safety

Unfortunately for Avanlee, the real evidence, best evidence, uncontroverted
evidence is listening to the actual FaceTime call, so Judge Fehr can determine for
herself, that Avanlee is a lair, a pathological liar who used her false allegations and false
swearing to get Katie Heller's  buddy, Shelia Kolar to sign the false and fraudulent order
of protection in Billings Municipal Court,  while Katie Heller's mentor, her rabbi,  Donald
Harris signed an almost identical order of protection against Sebastian Keitel in

5

Yellowstone District Court for making threats against the safety of Avanlee and her minor son AMOK, all based on false and fraudulent sworn statement.

> 9/2/23 ". . . two men were yelling at me   threatening my safety".
>
> 9/12/23 "I am terrified for my safety and the safety of my son . . I am a single mom`. I am very scared. I need protection and help right now"
> "I am afraid for my life and the life of my son's life'.
>
>
> October 2, 2023, transcript, p..9 & 11. L, Ms. Okragly:
>
>
> A; " . . . And he started to shout at me. It was clearly not a call for AMOK-
>
> A: "I heard another male voice". A: I was being I was avoiding service. That they were going to have me arrested".
>
> A: "That I was avoiding service.  I was going- they were – he was going to have me arrested and brought back to Mon tan in Cuffs" [T.p.10, L. 4-8]
>
> A: I was in New York
>
> A: I am met with biweekly threats they're going to take my son from me.
>
> Q: Okay, so you're talking about court filings?'
>
> A.  The Court filings, yes". [p.15, L.17-23]
> B.

Rick Keitel was in Florida, 2,400 miles away recovering from a lung infection, and previously provided hotel records and document to Katie heller denying the allegations September 3, 2023.  My phone records from September 2, 2023, previously filed before Judges Fehr and Harris prove I made no calls September 2nd, while recovering.

Ms. Okragly makes no allegations of physical threats, sexual misconduct of sexual harassment (T.p. 18. L.3-10)

> Q: And you don't make any allegations of verbal abuse?
>
> A: No, I did. On that call That FaceTime call.
>
> A: He told me that I was avoiding service, that they were going to take AMOK, and that they were going to bring me back in handcuffs" (10/2/23 p. 18., L. 25).
>
>
> Q: So, your issue is with Rick Keitel, Sebastian's father"

A: "oh, no. The issue is with Sebastian and his father plays a role in this"?
10/2/23 T.p.24, L.10-12).

Q: "Ms. Okragly, have you been put in reasonable apprehension of bodily harm?

A: "Yes, we have. We already filed an Order of Protection in March of-

Q: "And you dismissed that action, correct?'.

A: "Yes"

Ms. Okragly felt comfortable continuously lying in from of Judge Harris, because as Ms. Heller's mentor, he wouldn't allow any charges against Ms. Okragly to piggy-back onto Ms. Heller before the November 7, 2023 election for Billings Municipal Court Judge.

Judge Fehr, and this Court has Ms. Okragly's self-incriminating testimony October 2, and October 31, 2023, April 10, 2023 letter to Judge Donald Harris accusing Ms. Okragly and Ms. Heller tampering with evidence, obstruction, perjury and suborning perjury.  That's why Ms. Okragly dismissed the order of protection filed March 19, 2023, but only after the April 3, 2023 hearing and perjury.

### July 14, 2023, Multiple Video, Avanlee Text messages and Sworn Affidavits to Prove Avanlee lied and filed a false and fraudulent Report.

All evidence was previously filed Judge Fehr to prove that Ms. Okragly is a pathological liar with mental health issues requiring immediate investigation, including her lying July 14, 2023 after the police showed up to facilitate and protect Sebastian's during Sebastian's court ordered visitation schedule.

Judge Fehr, look at the demeanor, of Ms. Okragly on the video, and you'll see that her only fear, is that the police will report her for interfering with court ordered visitation. Look at her "tough broad" attitude, 4 feet away throes open the door, not a fear in the world.

March 29 tampering with physical evidence doorbell ring video by Okragly & Heller
April 3, 2023 perjury and suborning perjury re: doorbell ring video by Okragly & Heller

7

July 14, 2023 denial court order visitation
July 14, 2023 false swearing
July 14, 2023 filing fraudulent police report (4 video's, text messages)
July 14, 2023.   3:57 pm video Rick pick up of AMOK
July 14, 2023.   4:00 pm video Sebastian pick up of AMOK
July 14, 2023   4:20 pm text messages
July 14, 2023.   4:40 pm come to house to pick up AMOK
July 14, 2023.   4:45 pm video Rick pick up of AMOK  (no fear by Avanlee)

July 14, 2023.   4:46 pm video of Rick walking back to Sebastian as police respond to Sebastian complaint filed at 4:04 pm for refusing to comply with visitation [Judge Harris requires proof of failure to comply with visitation, (not he said, she said)]

Judge Fehr, you have all the evidence, including Respondent/Appellant's Frederick J. Keitel, III's Motion and Sworn Affidavit and Reply in Support of Appellant's Motion to Dismiss for Misconduct by Judge Shelia Kolar, Danelle Milligan, Billings Municipal Court Clerk and Others, including Judge Donald Harris and Yellowstone District Court Clerk's Office and Response to Appellee's Cross Motion. The Court also has multiple exhibits, including a flash drive with 3 or 4 video recordings of July 14 and FaceTime September 2, 2023, as well as voicemail from 10/10/23 Palm Beach Sheriff's Deputy that was filed and delivered your Chambers and copies to counsel on August 9, 2023 [see August 9, 2023 Letter to Judge Fehr requesting a hearing date].

I'm making an additional requested to my August 9th letter, for a hearing date in writing and previous telephone to your JA.  Please set a date for a ZOOM hearing. Due to my lung cancer and severe breathing problem, I can't travel the 12-14 hours one way to Billings.

I have also included exhibits and delivered a flash drive with 3 video recordings of July 14 and September 2, 2023, as well as voicemail from 10/10/23 Palm Beach Sheriff's Deputy to the clerk and your Chambers today.

The best evidence, uncontroverted evidence, is the September 7, 2023 FaceTime Video recording, and Ms. Okragly perjured testimony September, 25, October 2, and October 31, 2023.

8

The video doesn't lie, it confirms Ms. Okragly's perjured testimony of material facts, she knew was false that she was threatened with bodily harm and her safety, that she would be handcuffed and transported back to Montana, and that it was Sebastian and Rick Keitel who threatened her.

When you see the multiple video, hear her voice, look at her demeanor, read the text messages about pick up the minor child, AMOK, it's uncontroverted she has no fear, her statements that she fears for her life and the life of her son from Sebastian Keitel and Rick Keitel is bullshit, and she a deeply disturbed  woman and pathological liar as sworn to by her own father, Bryan Okragly [March 7, 2024], Sebastian Keitel, Lori Wurtz and myself in numerous affidavits the Motion for Rule 35.

Bryan Okragly testified that she's dishonest, manipulative and uses the minor child as a pawn for money.

Judge Fehr, consider when the last time you were at dinner with your father, he refused to give you money, so you stood up in a public restaurant and started screaming at him using the "FUCK" continuously, to embarrass and huminite him in front of the minor child [see Bryan Okragly's sworn affidavit 3/7/24, attached to Motion for Rule 35].

Ms. Heller and Ms. Okragly filed the Petitioner's Sworn Petition for Temporary Order of Protection and Request for Hearing against me and my son Sebastian on September 12, 2023, five (5) days after Ms. Heller was accused of lying to a Special Agent of the FBI, and nine (9) days after I sent an email with evidence denying every using Sebastian's phone or computer, and that I was in Florida staying at the Waterfront Hotel, Sumter County, Florida waiting for  doctor's appointments  2,000 miles from Montana.

Not only was it impossible for me to Facetime Ms. Okragly from Sebastian's phone or computer, but I have attached my hotel bills as proof that I was in Florida, while my son was in Montana.  Ms. Okragly was in New York, where she fled to avoid service of process by Yellowstone Sheriff's Deputies for multiple criminal complaints, including Interference with parent-child contact CMA 45-5-631.

9

Judge Harris, Katie Heller, Paul Chaon, Avanlee Okragly and others who including those who intentionally withheld September 25 and October 31, 2023 transcripts, audio recordings and documents from me, as long as 6 months until March 2024, to interference with my appeals are all hoping that you will cover-up and clean up their fraud and make it go away. It's always the crime, then the cover-up that bring investigations criminal charges.  A formal complaint is being refiled with Scott Twito, Yellowstone County Attorney tomorrow and federal lawsuit will be filed as soon as the depositions are completed.

Please let me know via email, if you will schedule a ZOOM hearing on my current and previously requests for hearings, and whether you will agree to continue the depositions under until at least next week, or you rule on the depositions, so I may present additional evidence at the hearing.

I have previously filed the email from Ms. Heller, Paul Chaon and Ms. Okragly with exhibits, including Virtual Summons from the New York Court, dated June 20, 2023 proving that they repeatedly intentionally conspired to lie to a federal agent in violation of 18 U.S. Code 1001.

Thank you, and I apologize for any mistakes in trying to rush this letter out before the court rules without a hearing.

*/s/Frederick J. Keitel, III*
Frederick J. Keitel, III, pro se

cc: via email
Judges Fehr and Harris (kanderson7@mt.gov)
Joseph Raffiani
Jessica McKee



**<u>EXHIBIT "6"</u>**

Frederick J. Keitel, III
P.O. Box 3243
Palm Beach, FL 33480
(561) 310-6864
rickkeitel@aol.com

November 4, 2024

Jessica McKee
City of Billings Deputy Attorney
Yellowstone County
217 N 27th Street, Billings, MT 59101
mckeej@yellowstonecountymt.gov

Mellissa A. Williams
Deputy Yellowstone County Attorney
Yellowstone County Courthouse
P.O. Box 35025
Billings, MT, 59107-5025
(406) 2566-2831
mwilliams@yellowstonecountymt.gov

Audrey Mann
Justice Court Senior Clerk, Civil Division
Yellowstone County Justice Court
217 N 27th Street, Billings, MT 59101
406-256-2897
amann@yellowstonecountymt.gov

Dear Ladies

Re: Filing of False and Fraudulent Temporary Ex Parte Order and Notice of Hearing
Avanlee Christine Okragly v Ashley Grace Zachem: CV-910-2024-0004493-OP.

    I have an interest in this litigation due to Ms. Okragly's filling of the false sworn
statements and petition for orders of protections as a direct retaliation for my filing
numerous criminal allegations, legally issued court subpoenas for Ms. Okragly's sworn
deposition and Rule 35 Motion for Independent Mental Examination in Cause No. DV
56-2023-1231, Yellowstone District Court, Judge Fehr.

    I have only seen the Temporary Ex Parte Order and Notice of Hearing in which the
Court orders: THE COURT FINDS from the Petition that:

1

1. The court has jurisdiction over the parties and subject matter.
2. The Petitioner and/or Protected Persons is/are in danger of harm.
.3 A Temporary Order of Protection is necessary to protect the same.
4. The Petitioner filed the petition without an attorney.
5. The Respondent did not receive notice of the hearing. The Court acted without notice to Respondent as harm may result to Petitioner and/or Protected Persons if a Temporary
Order of Protection is not immediately issued.
6. The Respondent's alleged conduct constitutes stalking.

I have attached a July 14, 2023 video, and a September 2, 2023 FaceTime video in which Ms. Okragly filed false sworn statements, police reports and petition(s)  for Orders of Protection based on fraud, false swearing, and perjury, claiming in the petition and in testimony Sept 25, Oct 2, and Oct 31, 2023 that Ms. Okragly fears for her life and the life of the minor child due to threats to her safety by Sebastian Keitel and Rick Keitel.

The videos have been filed with the Yellowstone District Court Clerk's Office and sent to Judges Fehr and Judge Harris to prove beyond a reasonable doubt that Ms. Okragly is a pathological liar, who committed perjury, fraud, false swearing, and tampered with physical evidence as retaliation. [Judge Harris refuses to view the video, and Judge Fehr has never set a hearing date, despite multiple request.

I have also attached an October 4, 2024 video in which Ms. Okragly filed a false and fraudulent sworn statement and sworn petition based on fraud, false swearing and perjury.  [If the videos are to large to send (1-2 minutes each, I'll email then separately].

Ms. McKee, as you know from Ms. Okragly's own father's sworn affidavit, March 17, 2024, Bryan Okragly raises serious questions about his daughter's mental health, pathological lying, using her minor son as a hostage and pawn to extort money, keeping his grandchild from him for other 11 months. [see, Bryan Okragly sworn affidavit and affidavit of Sebastian Keitel, Rick Keitel, Ashley Zachem and Lori Wurtz].  Bryan Okragly explains how Avanlee in front of her one-year-old son, is screaming yelling the "FUCK word" at her own father, in a public restaurant, because he won't give in give her

money, while she's collecting $5,000. month in child support and fees, while living with her mother and stepfather.

Ms. McKee, as you are aware, there is currently a Motion for Rule 35 Independent Mental Examination filed and pending before Judge Fehr, Cause No. DV 56-2023-1231, for over 3 months.

I have previously filed written complaints on December 13, 2023, but was delayed due to my stage four lung cancer, and months of chemotherapy, immunotherapy, radiation. I recently filed another formal complaint, (attached) notified the County and City of Billings of pending lawsuit pursuant to Montana R. Civ. P.

<div align="center">

FREDERICK J. KEITEL, III
P.O. Box 3243
Palm Beach, FL
33480
(561) 310-6864
rickkeitel@aol.com

October 25, 2024

</div>

Via email:
countyattorney@yellowstonecounty.gov
Scott D. Twito
Yellowstone County Attorney
217 N. 27th Street,
Billings, MT 59101

Via email: maharris@mt.gov
Jessica Fehr
Chief Judge
Yellowstone District Court
217 N. 27th Street,
Billings, MT 59101

Via email: mckeej@billimngmt.gov
Jessica McKee
City of Billings Deputy Attorney
Billings, MT 59101

<div align="center">3</div>

**SWORN AFFIDAVIT OF FREDERICK J. KEITEL, III, IN SUPPORT OF CRIMINAL CHARGES
AGAINST KATIE HELLER AND AVANLEE OKRAGLY**

STATE OF FLORIDA
COUNTY OF SUMTER

BEFORE ME, the undersigned authority, this day, personally appeared, Frederick J.
Ketel, III, to be known to be the person herein, or who produced passport as
identification and who, after being duly sworn, deposes and states the following.
My name is Frederick J. Keitel, III, I am over the age of 21 years, competent to make
this sworn statement and I have personal knowledge of all the facts and opinions
contained in herein.

Please accept this letter as a formal complaint for multiple felony counts of criminal violation under
Montana Code Annotation and Title 18 U.S. Code against Katie Heller, Paul Chaon and Avanlee
Okragly based on recently discovered evidence, included September 2, 2023 FaceTime, multiple
videos from July 14, 2023, March 29, 2023 and October 4, 2024.

I'm requesting the Yellowstone County Attorney Office move for an Expediated Dismissal and to
Vacate all claims in Yellowstone District Court, Cause No DR 56-2023-1224 and Billings Municipal
Court Cause No. CV-925-2023-224-OP against Frederick Keitel and Cause No. DR 2022-627
against Sebastian Keitel including restraining order and orders of protection based on  false and
fraudulent sworn statements and petitions for orders of protection, perjury, tampering with physical
evidence, conspiracy and filing false sworn statements and petitions for order(s) of protection and
Conspiracy by Katie Heller, Avanlee Okragly, Paul Chaon and others.

Please accept this letter as a formal complaint for multiple count of criminal violation under
Montana Code Annotation and Title 18 U.S. Code against the following people:

**Katie Heller**: April 3, 2023 Suborning perjury and Conspiracy to commit Perjury § 45-4-102;
Conspiracy to file False Reports to Peace Officers § 45-7-205; September 7, 2023 Making False
Statements to a Federal Agent, Special Agent of the FBI 18 U.S.C § 1001, Conspiracy to Commit
Offense or to Defraud United States §18 U.S.C. 371;

**Paul Chaon**: September 7, 2023, Making False Statements to a Federal Agent, Special Agent of the
FBI,18 U.S.C § 1001 and Conspiracy to Commit Offense or to Defraud United States §18 U.S.C.
371;

**Avanlee Okragly**: for Perjury § 45-7-201 False Swearing § 45-7-202, Conspiracy to commit Perjury
§ 45-4-102; False Reports to Peace Officers § 45-7-205; Unsworn falsification to Authorities §45-7-
203;  Making False Statements to a Federal Agent,  Special Agent of the FBI 18 U.S.C § 1001,

4

Conspiracy to Commit Offense or to Defraud United States §18 U.S.C. 371; Tamper with and destroying physical evidence §45-7-207; Obstruction §45-7-303.

As you know, Judge Kolar violated my due process rights and civil rights in violation of the American Disabilities Act, on October 31, 2023 when I was unable to travel to Montana to testify, she denied my requests for appearance via ZOOM, and instead relied on over 30 ex parte secret emails, between Judge Kolar, Judge Kolar's clerk of court, Danelle Milligan and Ms. Okragly (and Katie Heller who nefariously was representing Ms. Okragly and drafted false sworn statements and petitions for order of protection, while under investigation by the Yellowstone County Attorney's Office Complaint No. 23-715547.

As you know, Judge Donald Harris in his non-judicial capacity and judicial capacity has done everything possible to cover up criminal allegations against Katie Heller, his protégés including lying to a federal official, FBI special agent during telephones calls and email on September 7, 2023, in violation of 18 U.S.C 1001.

Someone in either the Yellowstone County Attorney's Office (who tried to prevent me from filing the initial complaint July 2023, or the Yellowstone County Sheriff's office who cleansed, scrubbed the evidence from the investigation file I received, including video).

I have been previously warned that both the County of Yellowstone and City of Billings would do everything possible to retaliate against me for my allegations of corruption, in an attempt to silence me, prevent me and discredit me as a material witness in any federal or state investigation, including but not limited to the Civil Rights investigation by the U.S. Department of Justice.

I would like a telephone call or ZOOM conference to give additional sworn testimony regarding Ms. Okragly false complaints and orders of protection.

Please let me know when either Mr. Twito, Ms. Williams, and/or Ms. Mckee will respond.

Thank you.

5

*/s/Frederick J. ("Rick") Keitel, III*

cc: Scott Twito, Yellowstone County Attorney, via email
    Hon. Jessica Fehr, Chief Judge, Yellowstone County District Court, via email

**EXHIBIT "7"**



**EXHIBIT "8"**

IN THE Yellowstone County Justice COURT, STATE OF MONTANA
COUNTY OF YELLOWSTONE

Avanlee OKragly,

    Petitioner,

v.

Ashley Zachem

    Respondent.

Cause No. CV-910-2024-4493.

SWORN PETITION FOR
TEMPORARY
ORDER OF PROTECTION
AND REQUEST FOR HEARING

The law requires that Respondent be given a copy of this completed form and all attachments.

1. **Request for Temporary Order of Protection.** Under oath and as provided by Mont. Code Ann. § 40-15-201, I request that the Court issue a Temporary Order of Protection against Respondent. I believe I am in danger of harm if the court does not issue a Temporary Order of Protection immediately.

2. **Protected Person/s.** I am seeking an Order of Protection for *(check all that apply)*:
   ☒ Myself
   ☒ The following minor child/ren: **USE INITIALS ONLY**

| Child/ren | Age | How child is related to: You | Respondent | Who does child live with? |
|-----------|-----|------------------------------|------------|---------------------------|
| A.M.O. | 2 | Child | | Avanlee OKragly |
| | | | | |
| | | | | |
| | | | | |

RECEIVED BY
CITY OF BILLINGS:
MUNICIPAL COURT:
2024 OCT -7 A 9:39

Petition for Temporary Order of Protection and Request for Hearing
AGO Form OVS 3 - Revised 02/11

3. **Residence.** I live or am staying in the City of _Billings_,
County of _Yellowstone_, State of _Montana_.
The Respondent lives in the City of _Palm Beach_,
County of _Palm Beach County_, State of _Florida_.
The abuse happened in the City of _Billings_,
County of _Yellowstone_, State of _Montana_.
*(Check all that apply).*

☒ The Respondent does not live with me.
☐ I live with the Respondent at _____
☐ I have left a residence where I lived with the Respondent. I want to return:
    ☐ to live at that residence
    ☐ to get personal belongings
    ☐ other *(describe)*: _____
☐ A business is run from the home.
    Type of business *(describe)*: _____
    The business is run by: ☐ me   ☐ Respondent   ☐ both me and Respondent

4. **Relationship.** *(Please check all that apply to the relationship between the Respondent (the person you want restrained) and you or the person(s) for whom you are seeking protection)*

I (or the person I want protected) have/has a relationship with Respondent as follows:
    ☐ We are married
    ☐ We were married, but are now separated
    ☐ We are divorced
    ☐ We are currently dating or having an ongoing intimate relationship
    ☐ We live together
    ☐ We have lived together in the past
    ☐ We have a child and/or children together
    ☐ I am a family member or a former family member of Respondent. Respondent is my:
        ☐ Mother ☐ Father ☐ Sister ☐ Brother ☐ Son ☐ Daughter
        ☐ Aunt ☐ Uncle ☐ Cousin ☐ Niece ☐ Nephew
        ☐ Sister-in-Law ☐ Brother-in-Law ☐ Father-in-Law ☐ Mother-in-Law
        ☐ Other: Please Explain: _____
    ☐ We dated or had an ongoing intimate relationship in the past
    ☒ We have no relationship

If no relationship, please explain how you know the Respondent: Ashley Zachem is the girlfriend of the Father of my child.

If a dating relationship, please describe:

Nature of relationship_____

Length of time of the dating relationship _____

How often saw each other _____

Time since relationship ended _____

☒ Victim of Sexual Assault (Stalking) Other: *(describe how you know Respondent)*

Ashley Zachem has been Stalking me with Fredrick Keitel whom I have a 20-year order of protection against.

☒ I am the parent, guardian or other person supervising the welfare of a child less than 16 years of age and request that Respondent, who is a person over 18 years of age and who has no legal right of supervision or control over the child, to stop contacting the child because I believe that the contact is not in the child's best interests as set forth in MCA § 45-5-622 (4).

5. **Information about the violence.** Please explain what the Respondent did to you (and/or the person you want protected). Be specific. Write down places and dates as well as you can remember. It does not matter when the abuse happened or whether you reported it to the police. But you must tell the judge why you are afraid now.
**(USE INITIALS ONLY FOR MINORS)**

A. RECENT ABUSE

Date of the most recent abuse: Oct. 4th, 2024

Who was there? Ashley Zachem

Where did it take place? My home. 4424 Bowman Dr. Billings, MT 59101

What did the Respondent do or say that made you (and/or the person you want protected) afraid? Ashley has been told to not come to our home & would not leave until law enforcement intervened. Ashley blocked our driveway by sitting in a vehicle for 1.5 hours recording our home.

Did the Respondent use or threaten to use a gun or other weapon?

☐ Yes ☒ No. If yes, list how: _____

_____

_____

**(USE INITIALS ONLY FOR MINORS)**

Describe, in detail, what happened and any injuries. Explain why you (and/or the person you want protected) are afraid now:

Please See attached affidavit

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did the police come? ☐ Yes   ☐ No If yes, what is the police incident number?

_____

Petition for Temporary Order of Protection and Request for Hearing
AGO Form OVS 3 - Revised 02/11

Page 4 of 9

**B.  PAST ABUSE**

In this section, describe any past abuse and explain what happened in those situations.
Be sure to explain when the abuse occurred, where it happened, and who was there.
**(USE INITIALS ONLY FOR MINORS)**

Please See attached affidavit.

___

☐  Check here if you need more space to write.  Attach a sheet of 8 ½ x 11 paper and write:
"Explanation of What Happened" at the top.  Do **NOT** use the back of this form.

Past

I am seeking a permanent order of protection against Ashley Zachem for both myself and my minor child, A.M.O. For over two years, Ms. Zachem has engaged in persistent harassment, threats, and illegal recording of phone conversations without my knowledge or consent. She has provided these recordings to Fredrick Keitel, a permanently disbarred attorney, against whom this Billings Municipal Court issued a 20-year protection order (CV-925-2023-0000224-OP) covering both me and my child.

During the past two years, Ms. Zachem has engaged in a pattern of severe harassment, stalking, and intimidation against me, my family, and my child, A.M.O. We reside with my mother and stepfather in Yellowstone County. Despite repeated requests since May of 2023 to stay off our property, Ms. Zachem has repeatedly come onto the property, filming our home in the driveway. (see exhibit)

Over the last year, Ms. Zachem has escalated her actions, repeatedly trespassing on our property and even hiding in the backseat of her fiancé's vehicle to stalk and intimidate us and make false accusations of child abuse against me and my mother, which Ms. Zachem submitted to Child Protective Services.

In a separate instance, less than a year ago, Ms. Zachem and her fiancé, Sebastian Keitel, filed affidavits in Gallatin County seeking a restraining order against me. This was part of a failed attempt to transfer custody of my child to a different jurisdiction and obtain an OOP. Ashley even requested the court remove my son from my custody. Ashley Zachem's affidavit, believed to be written by Fredrick Keitel, falsely accused me of various criminal acts, including vandalism, burglary, assault, and theft. Despite these serious allegations, Ms. Zachem continues to return to our home, contradicting her own claims of fear and abuse. (see exhibit).

Not once in any of Ms. Zachem's affidavits or filings has she provided any evidence to any court to support her claims.

**August 16th, 2023**, Ms. Zachem filed a police report against me with the Gallatin County Police Department, falsely claiming that I was in Bozeman, peering into the windows of her home and having her followed. To my knowledge, Ms. Zachem has never lived in Montana. Not only was I not in Bozeman at the time, but I also have no idea where Ms. Zachem resides. This baseless accusation is just another instance in the ongoing multi-jurisdictional harassment I've been subjected to.

**November 1st, 2023**, Ms. Zachem was provided with a copy of the 20-year protection order (CV-925-2023-0000224-OP)issued against Fredrick Keitel, by my counsel in Bozeman, Christopher Gillette. (see attached)

Current

**August of 2024**, my attorney, Joe Raffiani, representing me against Fredrick Keitel, received evidence of my personal phone conversations that were illegally recorded recorded by Ms. Zachem, that she provided to Fredrick Keitel.

**August 17th, 2024,** I provided the Billings Police Department with the illegally recorded calls, which subsequently made a report and recommendation to the City Attorney's Office for further investigation into Ms. Zachem's involvement with Mr. Keitel is harassing me indirectly.

**October 4th, 2024,** Ms. Zachem arrived at my home at 6:00 PM, blocking our driveway, prohibiting anyone from being able to leave in an SUV for over an hour and a half, during which time she filmed our house. Despite repeated requests for her to leave, she refused to do so until law enforcement intervened. Ashley then threatened to file additional restraining orders against my family members who live in the home.

I am deeply concerned for the safety of both myself and my son due to Ms. Zachem's fabricated claims of witnessing abuse and assault, none of which have ever occurred. I fear that if she continues to have access to us, my son's safety could be in serious jeopardy. Ms. Zachem has played a central role in a long-running campaign of making repeated legal filings against me in multi-jurisdictions, with the clear intent of harassing me and harming my minor child.

As a single mother, this has led to over $200,000 in legal fees in less than two years since she and her fiancé's family entered our lives.

As the CEO of a healthcare technology startup in Montana, both my employees and investors have been negatively impacted by Ms. Zachem's false claims and defamatory affidavits. These baseless accusations, including claims of physical abuse, have been cited in 21 different legal filings by Frederick Keitel. Ms. Zachem's affidavits have been used in fillings to abuse legal processes and harass me, submitting complaints to the Attorney General's office, the U.S. Senate, and through bar complaints against my former legal counsel.

Her behavior shows no signs of stopping.

**On October 4th, 2024** she made additional threats at our home to file for temporary orders of protection (TOPs), even as she continued to attempt to come onto our property. This ongoing harassment highlights her clear intent to harm me and my family. Ashley has a proven track record of making multi jurisdictional filings with the sole purpose to harass me and is now threatening to do it again.

I have the right to live free from harassment, stalking, and intimidation. Ms. Zachem's blatant disregard for the law and existing protection orders makes it clear that both my son and I are in urgent need of further protection. Ms. Zachem has knowingly acted as a third-party "harasser" for Fredrick Keitel, continuing his efforts to harm both my well-being and that of my son.

I believe she poses a flight risk, and if she gains access to my son, she may attempt to take him or cause us physical harm. For our safety, I am requesting a permanent order of protection prohibiting Ms. Zachem from coming near me and my minor child, A.M.O., ▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓

**6. Firearms** *(Check all that apply)*

To the best of your knowledge, does Respondent currently possess firearms?

☐ No   ☐ Yes

If yes, where are the firearms located? _I dont know._

**7. Other Court Cases involving yourself and the Respondent.** *(Check all that apply).*

☐ No other court cases exist between me and the Respondent.

☐ A divorce, legal separation or custody case (parenting plan) between me (and/or the person I want protected) and Respondent has been filed in _____ County, State of _____

Is the family law case listed above still pending? ☐ Yes ☐ No

Did the Court issue a parenting plan? ☐ Yes ☐ No

☐ A criminal charge of _____ was ☐ filed against me or ☐ filed against the Respondent in _____ Court in _____ County, State of _____

☒ List any other cases between you (and/or the person you want protected) or Respondent are or have been involved in: _Ashley Zachem filed an order of Protection against me in Gallatin County last year with her boyfriend in an attempt to transfer custody of my son. It was denied._

**I ask the Court to Order the Following: (USE INITIALS ONLY FOR MINORS)**

1. ☒ Respondent shall not commit or threaten to commit acts of violence, against me (and/or the person I want protected) and the following people including family members:
   _A.M.O._

2. ☒ Respondent shall not assault, threaten, abuse, follow, stalk harass, annoy, disturb the peace of, telephone, email, contact, or otherwise communicate, directly or indirectly, with me (or the person I want protected), and the following family members, other victims of the abuse, or witnesses to the abuse:
   _A.M.O._

3. ☒ Respondent shall not take the following child/ren out of this County or State:
   _A.M.O._

4. ☑ *(List the distance, up to 1500 feet, that you want Respondent to stay away from you and/or the person you want protected and the places you check below).* **Please include names and physical addresses for all places listed below (daycare providers, schools, and business name of your place of employment).**

Respondent shall stay at least _1500_ feet from:

☑ Me (Petitioner) Avanlee Okragly

☑ Minor child/ren **(USE INITIALS ONLY)** A.M.O.
_____ 4424 Bowman Drive Billings, MT 59106 _____

☑ My home (if you want the location of your home to be secret, do not list)
Avanlee Care Inc.

☑ My job or workplace: 913 W 13th Street, New York, NY 10013

☑ My vehicle: Black Ford Pick-up 3BB2545D 2019

☐ The child/ren's school and/or child care: 4424 Bowman Drive
Billings MT

☑ Other places (describe): Faith Chapel where we attend Sunday School.
517 Shilo Rd. Billings 59106

5. ☐ Respondent used or threatened me with firearms. Respondent shall not possess these firearms *(describe):* _____

6. ☐ Respondent shall not take, hide, sell, damage or dispose of property belonging to me (and/or the person who I want protected) or Respondent or both of us.

7. ☐ Respondent shall give me (or the person I want protected) possession or use of the following items (items may include the residence, automobile and other essential personal property no matter who owns it): _____
_____
_____

8. ☐ I (and/or the person I want protected) need a peace officer to help get possession of the property listed in Number 7, or I request that a peace officer come with Respondent when picking up his/her property or belongings.

9. ☐ The Court should order Respondent to complete violence counseling, which may include alcohol or chemical dependency counseling or treatment, if appropriate.

10. ☑ The Court should order the following to provide for the safety and welfare of me and/or the person I want protected, and family: Mental Health Evaluation of Ms. Zachem.

11. Parenting of Child/ren

**Note:** Justice and City and Municipal Courts can protect minor children by listing them on the Order of Protection. Although these courts can provide short term visitation plans, they cannot make parenting plans. If you need a parenting plan, you need to file an action in your local District or Tribal Court.

*(Choose one)*

☒ Parenting of children does not apply in this case.

☐ The protections I have asked for in Paragraph 2 will keep Respondent away from the children. Therefore a visitation schedule is unnecessary.

☐ I want the children listed in Appendix A to have parenting time with Respondent. I am attaching Appendix A that says what visitation schedule I want. *(Fill in and attach Appendix A).*

12. Other Relief: The Court should order other protection as it deems just and proper.

_____

_____

**I SWEAR UNDER OATH OR AFFIRM I HAVE READ THIS APPLICATION, OR HAVE HAD IT READ TO ME, AND THE FACTS STATED IN THIS APPLICATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. I ALSO UNDERSTAND THAT PROVIDING FALSE INFORMATION IS A CRIME.**

Date: _____ 10·7·24     Signed: _____
                                              Petitioner

**JUDGE'S SIGNATURE**

STATE OF MONTANA          )
                         : ss.
County of Yellowstone)

SUBSCRIBED AND SWORN to before me this ___ day of _____, 20____.

_____
Municipal Court Judge

The petition for an order of Protection is Denied on this _____ day of _____, 20_____

_____
Municipal Court Judge

Petition for Temporary Order of Protection and Request for Hearing
AGO Form OVS 3 - Revised 02/11                                    Page 8 of 9

## APPENDIX A

In this form, you will tell the Judge how the temporary visitation will take place under safe and peaceful conditions. You must have a very good reason before the Judge will deny the Respondent visitation. The visitation schedule will be temporary. For permanent parenting arrangements, you must file an action with your local District or Tribal Court.

Parenting schedules generally include:

- visits that take place on a regular basis;
- visits that vary in length depending on the ages and needs of the children.

Children *(List all children, whether or not you have asked that they be protected by the Order of Protection):*

| Children | Date of Birth | How child is related to You    Respondent | | Who does child live with? | State(s) where child lived in the last 6 months? |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CHECK the visitation option that you want.

☐ I request the following visitation schedule:

_____
_____
_____
_____
_____

☐ Supervised visits *(List why, and supervised by whom):* _____

_____
_____
_____

☐ Neutral drop off and pick up location: _____
☐ Transportation provided by: _____
☐ I request the Respondent have no visitation with the children because: _____

_____
_____
_____

**EXHIBIT "9"**

On Oct 25, 2024, at 1:52 PM, RICK KEITEL <rickkeitel@aol.com> wrote:

Mr. Twito
Please find my criminal complaint against Katie Heller and Avanlee Okragly.
I have a FaceTime video, and multiple other videos to prove beyond a reasonable doubt, that Ms. Heller and Ms. Okragly conspired with each other and others to file false and fraudulent petitions for Order of Protect on September 12, 2023. against Sebastian Keitel and myself.
Due to lung cancer and 2 surgeries for cancer last October, I was unable to attend a hearing October 31, 2023.  As my affidavit will detail, Judge Kolar refused to continue the hearing for 1-2 weeks and refused to allow me to appear via ZOOM, after 30+ ex pare communications with Ms. Okragly (and I believe her lawyer Ms. Heller).
As the FaceTime video and other videos will demonstrate Ms. Okragly perjured herself on September 25, October 2nd and October 31, 2023 before both Judges Harris and Kolar.
I'm, requesting that you personally, and your senior deputies expedite the complaint and get back to me for all the evidence, testimony, transcript due to my health condition. Also please refer to my December 14, 2023 letter addressed to you.
I will provide the notarized signature page separately due to a computer glitch.

Thank you
Rick Keitel
(561) 310-6864


<10-25-FINAL-YC Atty.pdf>
<On July 13 and July 14, 2023 .docx>


<10-25-24 Notes filed .docx>

<10-25-24-Notes-filed .docx>

<7-1-Rule 35 copy.pdf>

---

On Oct 25, 2024, at 1:52 PM, RICK KEITEL <rickkeitel@aol.com> wrote:

Mr. Twito
Please find my criminal complaint against Katie Heller and Avanlee Okragly.
I have a FaceTime video, and multiple other videos to prove beyond a reasonable doubt, that Ms. Heller and Ms. Okragly conspired with each other and others to file false and fraudulent petitions for Order of Protect on September 12, 2023. against Sebastian Keitel and myself.
Due to lung cancer and 2 surgeries for cancer last October, I was unable to attend a hearing October 31, 2023.  As my affidavit will detail, Judge Kolar refused to continue the hearing for 1-2 weeks and refused to allow me to appear via ZOOM, after 30+ ex pare communications with Ms. Okragly (and I believe her lawyer Ms. Heller).
As the FaceTime video and other videos will demonstrate Ms.
Okragly perjured herself on September 25, October 2nd and October 31, 2023 before both Judges Harris and Kolar.

I'm, requesting that you personally, and your senior deputies expedite the complaint and get back to me for all the evidence, testimony, transcript due to my health condition. Also please refer to my December 14, 2023 letter addressed to you.
I will provide the notarized signature page separately due to a computer glitch.

Thank you
Rick Keitel
(561) 310-6864

<10-25-FINAL-YC Atty.pdf>
<On July 13 and July 14, 2023 .docx>

&lt;10-25-24-Notes-filed .docx&gt;

&lt;7-1-Rule 35 copy.pdf&gt;

**<u>EXHIBIT "10"</u>**



Avanlee Christine <avanlee@avanleecare.com>

## Fwd: Follow-Up Okragly v. Keitel

Katie Heller <kheller@frontierlawfirm.com>
To: Avanlee Christine <avanlee@avanleecare.com>

Sat, Sep 9, 2023 at 1:13 PM

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**From:** Katie Heller
**Sent:** Thursday, September 7, 2023 1:30:07 PM
**To:** ctcialella@fbi.gov <ctcialella@fbi.gov>
**Cc:** Paul Chaon <pchaon@frontierlawfirm.com>
**Subject:** Follow-Up Okragly v. Keitel

Good Afternoon Agent Cialella,

Thank you for taking the time to speak with me and Paul today regarding this matter.  I have included in this email several communications between Avanlee and Sebastian regarding scheduling parenting time in New York.  Sebastian was informed that Avanlee is staying at her apartment in New York (which he has previously personally been to), Sebastian had also previously requested to exercise parenting time in New York.  There had additionally been phones calls prior to the Order of Protection in regards to arranging travel accordingly.  As stated this case is extremely complicated.  Avanlee's specific address is ████████████  She will be back in town this coming week and intends to follow Court order.  I would also note that both Sebastian and Avanlee have a current pending case in New York with a hearing scheduled for September 19th.

As requested, please let us know the names of the individuals you speak to or spoke with at the Yellowstone County Attorney's Office and the Billings Police Department.

Please let me know if there is any additional information you require.

Sincerely,

*Katie Heller*
Attorney, Frontier Law Firm
406-616-3377
PO BOX 2157
Billings, MT 59103
www.frontierlawfirm.com

PLEASE UPDATE YOUR CONTACT LIST TO REFLECT THIS CHANGE - MY NEW EMAIL IS
KHELLER@FRONTIERLAWFIRM.COM.

This message, including any attachments, may contain confidential information protected by the attorney-client privilege or work product doctrine. If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately. Thank you.

File#: 315700 (F-02859-22/23A)      4-1a (8/2010)   Page 1 of 2

F.C.A.§§413, 424-a, 426, 427, 433, Art. 5-B

**FAMILY COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| In the Matter of an Article 4 Support (IV-D) Proceeding | **File #:**  315700 |
| | **Docket #:**  F-02859-22/23A |
| **Avanlee Okragly (Petitioner)** | **CSMS #:**  PC54356Z1 |
| | |
| Sebastian A. Keitel (Respondent) | |

**SUMMONS – SUPPORT**
**(VIRTUAL)**

**NOTICE:** YOUR FAILURE TO APPEAR IN PERSON OR VIRTUALLY MAY RESULT IN SUSPENSION OF YOUR DRIVING PRIVILEGES; STATE-ISSUED PROFESSIONAL, OCCUPATIONAL AND BUSINESS LICENSES; AND RECREATIONAL AND SPORTING LICENSES AND PERMITS.[1] FURTHER, YOUR FAILURE TO APPEAR WILL RESULT IN THE ENTRY OF AN ORDER ON DEFAULT UNLESS SERVICE HAS BEEN MADE BY MAIL ALONE, IN WHICH EVENT NO DEFAULT MAY BE ENTERED WITHOUT PROOF SATISFACTORY TO THE COURT THAT YOU HAVE RECEIVED ACTUAL NOTICE OF THE COMMENCEMENT OF THIS PROCEEDING. YOU ARE FURTHER ADVISED THAT, UPON YOUR APPEARANCE ON THE RETURN DATE OF THIS SUMMONS, YOU MUST PROVIDE PROOF OF YOUR INCOME AND ASSETS AND A TEMPORARY OR PERMANENT ORDER OF SUPPORT WILL BE ISSUED. YOU HAVE A RIGHT TO BRING A LAWYER WITH YOU, IF YOU CHOOSE.

To:    Avanlee Okragly                     Matthew C. Kesten
       ** Confidential **                  444 MADISON AVE FL 6
                                           NEW YORK, NY 10022-6903


       Sebastian A. Keitel
       ** Confidential **

A petition under Article 4 of the Family Court Act has been filed with this Court.

**YOU ARE HEREBY SUMMONED** to appear **VIRTUALLY** before this Court on:

| | |
|---|---|
| Date/Time/Part: | **September 19, 2023 at 12:40 PM in Part 21** |
| Purpose: | **First Appearance** |
| Presiding: | **Amanda Norejko, Support Magistrate** |

to answer the attached petition and to be dealt with in accordance with the Family Court Act.

Virtual appearances may be held via video or phone. To update your contact information, e-mail or call the court and provide your name, phone, e-mail address, docket number(s), and date/time of court appearance.

Court E-mail: ManhattanFamilyCourt@nycourts.gov or Court Phone #: (646) 386-5200

File#: 315700 (F-02859-22/23A)      4-1a (8/2010)   Page 2 of 2

If you have documents that you would like to send to the Court, at least 5 days prior to the Court date please submit through our Electronic Document Delivery System (EDDS) https://iappscontent.courts.state.ny.us/NYSCEF/live/edds.htm or e-mail to: ManhattanFamilyCourt@nycourts.gov

**FOR VIDEO, CLICK ON THE FOLLOWING LINK:**
https://notify.nycourts.gov/meet/0v4c81

**FOR PHONE, CALL THE TOLL-FREE NUMBER AND ENTER THE MEETING ID**
Phone: (347) 378-4143   Meeting ID: 276441544#

For information on how to install/use Microsoft Teams to participate in virtual court proceedings, visit: https://nycourts.gov/appear.

**If you fail to appear as directed, a warrant may be issued for your arrest.**

You must provide the court with proof of your income and assets by September 19, 2023 on the attached form provided for that purpose. You are required to attach a current and representative paycheck stub and most recently filed state and federal income tax returns to said form, including a copy of the W-2 wage and tax statement(s) submitted with the returns.

You may be required to furnish past and present income tax returns; employer statements; proof of health insurance available; pay stubs; corporate, business or partnership books and records; corporate and business tax returns; and receipts for expenses or such other measures of verification as the Court determines appropriate.

**Dated:** June 20, 2023                              Juan R. Paez, Clerk of Court

**NOTICE:** FAMILY COURT ACT §154(C) PROVIDES THAT PETITIONS BROUGHT PURSUANT TO ARTICLES 4, 5, 6, 8 AND 10 OF THE FAMILY COURT ACT, IN WHICH AN ORDER OF PROTECTION IS SOUGHT OR IN WHICH A VIOLATION OF AN ORDER OF PROTECTION IS ALLEGED, MAY BE SERVED OUTSIDE THE STATE OF NEW YORK UPON A RESPONDENT WHO IS NOT A RESIDENT OR DOMICILIARY OF THE STATE OF NEW YORK.  IF NO OTHER GROUNDS FOR OBTAINING PERSONAL JURISDICTION OVER THE RESPONDENT EXIST ASIDE FROM THE APPLICATION OF THIS PROVISION, THE EXERCISE OF PERSONAL JURISDICTION OVER THE RESPONDENT IS LIMITED TO THE ISSUE OF THE REQUEST FOR, OR ALLEGED VIOLATION OF, THE ORDER OF PROTECTION.  WHERE THE RESPONDENT HAS BEEN SERVED WITH THIS SUMMONS AND PETITION AND DOES NOT APPEAR, THE FAMILY COURT MAY PROCEED TO A HEARING WITH RESPECT TO ISSUANCE OR ENFORCEMENT OF THE ORDER OF PROTECTION.

---

[1] Pursuant to Section 433 of the Family Court Act, you may qualify to testify by telephone, audio-visual means or other electronic means if you reside in a county in New York State not contiguous to the Family Court in which the matter will be heard, if you are incarcerated and do not expect to be released within a reasonable period of time after the scheduled date or if you will suffer an undue hardship by appearing in court.  The five counties of New York City are treated as one county for purposes of this section.  If you wish to request permission, you must submit Form 4-24/5-16/UIFSA-10, which you may obtain from Family Court or on the internet at www.nycourts.gov.

---------- Forwarded message ----------
From: **Matthew C. Kesten** <mkesten@ssrga.com>
Date: Fri, Jun 30, 2023 at 10:18 AM
Subject: Okragly v. Keitel - File # 315700 / Docket #
F-02859-22/23A
To: Sebastian Keitel <skcards1525@gmail.com>

Good morning Mr. Keitel,

Attached for service upon you are copies of a Summons and Petition filed
by Avanlee with the NY Family Court seeking an award of counsel fees
that she incurred in connection with the paternity/support proceeding that
you initiated in New York.

Please note that the new matter has been assigned to Support Magistrate
Amanda Norejko and that the first appearance in the matter (to be
conducted virtually – the link for which is identified in the summons) is
**September 19, 2023 at 12:40 p.m.**  I would suggest that you retain an
attorney to represent you in the matter.

Please feel free to contact me, or to have your attorney do so, if you have
any questions about the proceeding.

Matthew C. Kesten
mkesten@ssrga.com
Direct: 212-743-7029
444 Madison Avenue, New York, NY 10022
Phone: 212-743-7000 | Fax: 212-743-7001
www.ssrga.com

9/11/23, 12:09 PM                                    Avanlee Care Inc Mail - Fwd: Follow-Up Okragly v. Keitel

 **Avanlee**                                   Avanlee Christine <avanlee@avanleecare.com>

---

## Fwd: Follow-Up Okragly v. Keitel

Katie Heller <kheller@frontierlawfirm.com>                        Sat, Sep 9, 2023 at 1:13 PM
To: Avanlee Christine <avanlee@avanleecare.com>

---

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**From:** Katie Heller
**Sent:** Thursday, September 7, 2023 1:30:07 PM
**To:** ctcialella@fbi.gov <ctcialella@fbi.gov>
**Cc:** Paul Chaon <pchaon@frontierlawfirm.com>
**Subject:** Follow-Up Okragly v. Keitel

Good Afternoon Agent Cialella,

Thank you for taking the time to speak with me and Paul today regarding this matter.  I have included in this email several communications between Avanlee and Sebastian regarding scheduling parenting time in New York.  Sebastian was informed that Avanlee is staying at her apartment in New York (which he has previously personally been to), Sebastian had also previously requested to exercise parenting time in New York.  There had additionally been phones calls prior to the Order of Protection in regards to arranging travel accordingly.  As stated this case is extremely complicated.  Avanlee's specific address is ████████████  She will be back in town this coming week and intends to follow Court order.  I would also note that both Sebastian and Avanlee have a current pending case in New York with a hearing scheduled for September 19th.

As requested, please let us know the names of the individuals you speak to or spoke with at the Yellowstone County Attorney's Office and the Billings Police Department.

Please let me know if there is any additional information you require.

Sincerely,

*Katie Heller*
Attorney, Frontier Law Firm
406-616-3377
PO BOX 2157
Billings, MT 59103
www.frontierlawfirm.com

PLEASE UPDATE YOUR CONTACT LIST TO REFLECT THIS CHANGE - MY NEW EMAIL IS
KHELLER@FRONTIERLAWFIRM.COM.

This message, including any attachments, may contain confidential information protected by the attorney-client privilege or work product doctrine. If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this email in error, please destroy it and notify me immediately. Thank you.

*EXHIBIT "3"*

---------- Forwarded message ----------
From: **Matthew C. Kesten** <mkesten@ssrga.com>
Date: Fri, Jun 30, 2023 at 10:18 AM
Subject: Okragly v. Keitel - File # 315700 / Docket #
F-02859-22/23A
To: Sebastian Keitel <skcards1525@gmail.com>


Good morning Mr. Keitel,

Attached for service upon you are copies of a Summons and Petition filed
by Avanlee with the NY Family Court seeking an award of counsel fees
that she incurred in connection with the paternity/support proceeding that
you initiated in New York.

Please note that the new matter has been assigned to Support Magistrate
Amanda Norejko and that the first appearance in the matter (to be
conducted virtually – the link for which is identified in the summons) is
**September 19, 2023 at 12:40 p.m.**  I would suggest that you retain an
attorney to represent you in the matter.

Please feel free to contact me, or to have your attorney do so, if you have
any questions about the proceeding.




Matthew C. Kesten
mkesten@ssrga.com
Direct: 212-743-7029
444 Madison Avenue, New York, NY 10022
Phone: 212-743-7000 | Fax: 212-743-7001
www.ssrga.com